# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| ALBERT L. FISHER, M.D., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) CIVIL ACTION No. |
| vs. | ) |
| | ) |
| AURORA HEALTH CARE, INC., | ) |
| | ) |
|     Defendant. | ) |
| _____ | ) |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Albert L. Fisher, M.D. ("Fisher" or "Plaintiff"), by and through his counsel, seeks damages and injunctive relief as follows:

## Nature of the Action

1. Plaintiff Fisher brings this action to end anticompetitive conduct by Defendant Aurora Health Care, Inc. ("Aurora" or "Defendant"), in the area of Oshkosh, Wisconsin. In violation of the Sherman Act, Aurora has intentionally excluded independent physicians from its medical staff by imposing unjustified, nearly impossible conditions on them and arranging with others to ensure that those conditions cannot be met. Aurora has engaged in an unlawful group boycott of independent physicians, which prevents patients from utilizing their services. Moreover, Aurora's hospital in the greater Oshkosh area is an essential facility under the Sherman Act with respect to patients taken to its emergency room and admitted, and Aurora has unlawfully denied access by Plaintiff and other

independent physicians to this essential facility.

2. Defendant's conduct has also been a breach of its contractual obligations to Plaintiff Fisher and has tortiously interfered with Fisher's prospective medical services for patients. In addition, Defendant has failed to honor its quantum meruit obligation for services Plaintiff Fisher rendered at Defendant's facility in Oshkosh.

## The Parties

3. Plaintiff Fisher is a physician licensed in Wisconsin who specializes in family practice. He practices in Oshkosh, Wisconsin, located in Winnebago County.

4. Defendant Aurora is a Wisconsin corporation having its principal office at 750 W. Virginia St., Milwaukee, Wisconsin. Defendant is registered under Section 501(c)(3) of the Internal Revenue Code.

## Jurisdiction

5. This action arises under Section 4 of the Clayton Act, 15 U.S.C. § 15, to recover treble the amount of damages incurred by Plaintiff as a result of the violations by Defendant of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1-2, and under Section 16 of the Clayton Act, 15 U.S.C. § 26, to secure equitable relief against a continuation of the violations. Interstate commerce for medical services is substantially affected by Defendant's anticompetitive conduct alleged herein. This court has subject matter jurisdiction over this case under 28 U.S.C. §§ 1331 and 1337(a).

6. Supplemental jurisdiction over Plaintiff's additional claims under state law exists under 28 U.S.C. § 1367 for breach of contract, tortious interference with prospective economic advantage, and quantum meruit. Plaintiff's state law claims are intertwined and so related to his federal claims that they form part of the same case or controversy.

## Venue

7. Venue is proper in the United States District Court for the Eastern District of Wisconsin under 15 U.S.C. § 22 and 28 U.S.C. § 1391. All parties reside in this district, the events giving rise to the claims occurred here, and each party transacts business within this district.

## Allegations Relevant to All Counts

8. Plaintiff Fisher is a family practice physician in independent private practice, serving Oshkosh since 1985.

9. Aurora owns and operates a hospital in the area of Oshkosh, Winnebago County, Wisconsin.

10. Plaintiff Fisher joined the medical staff of Aurora at its Oshkosh facility in about 2005 based on the assurance that when he is not "on call" to see patients immediately, then his patients would be admitted by the physician for unassigned patients who is "on call" (available to be called by a hospital to provide immediate care).

11. This arrangement had always worked well, and not caused any hardships.

3

12. For many decades professional courtesy has included the willingness of physicians to provide call coverage for each other.

13. In 2010, Defendant Aurora began requiring unreasonable 24-hour, 7-days-a-week (24/7) continuous call coverage by independent physicians, including Plaintiff.

14. Defendant withholds from independent physicians, including Plaintiff, customary call coverage provided to Defendant's own employees.

15. Defendant informed Plaintiff by letter dated September 2, 2011, that he would not be allowed to apply for renewal of his medical staff privileges unless he agree to 24/7 call coverage, without exception for illness or travel, or provide equivalent alternate coverage by a physician who is on the medical staff at Aurora.

16. The physicians employed by Aurora refuse to provide call coverage for independent physicians, including Plaintiff.

17. Physicians at Theda Clark Medical Center are not employed by Aurora but, in furtherance of their agreement and understanding with Aurora, likewise refuse to provide call coverage for independent physicians, including Plaintiff.

18. Dr. Kirtida Ringwala had been available to serve as backup call coverage for Plaintiff Fisher, but in 2011 Defendant Aurora used a similar tactic to force her off of the medical staff.

19. Specifically, Defendant Aurora insisted that Ringwala provide 24/7 call coverage and unreasonably refused to accept Plaintiff Fisher as her backup

call, even though Fisher was then a full member of the medical staff at Aurora.

20. Aurora thereby coerced Ringwala to resign from the medical staff, which then prevented her from serving as backup call for Plaintiff Fisher.

21. By letter dated October 12, 2010, the American Academy of Family Physicians ("AAFP") informed John S. Feeney, Chief Administrative Officer at Aurora, of how its policy of requiring 24/7 call coverage by Plaintiff Fisher was unreasonable and contrary to good practices and federal law. The AAFP again informed Aurora by letter dated October 3, 2011, addressed to its Chief Administrative Office Jeffrey Bard.

22. Plaintiff Fisher applied for renewal of his medical staff privileges in February 2012, and his application was complete and satisfactory in every appropriate way.

23. But Defendant Aurora refused to consider Plaintiff's application because of its unjustified requirement that Plaintiff ensure 24/7 call coverage, without exception.

24. As a result, Defendant refused to process Plaintiff's application and thereby eliminated another independent physician from its staff.

25. This systematic elimination of independent physicians by Aurora denies patients, who are taken to Aurora, their right to obtain care and second opinions by Plaintiff Fisher and other independent physicians.

**Background on Aurora**

26. Aurora, as a 501(c)(3) organization exempt from taxation, has an

5

Case 1:13-cv-00152-WCG    Filed 02/13/13    Page 5 of 16    Document 1

obligation to serve the public good.

27. Contrary to its obligation to serve the public good, Defendant Aurora makes decisions based on the self-enrichment of its executives.

28. Specifically, Defendant Aurora has acted in the self-interest of its executives by interfering with the ability of Winnebago County residents who are hospitalized at Aurora to be seen by their own independent physicians.

29. Defendant Aurora has acted in the self-interest of its executives by systematically eliminating independent physicians from its medical staff.

30. Defendant Aurora has engaged in this practice in order to increase its control over medical decisions made at the Aurora hospital at Oshkosh, and thereby maximize revenue and the executive compensation based on it.

31. On its most recent publicly available IRS Form 990, Aurora shows how profitable its denial of access by patients to independent physicians has been: it has accumulated and retained more than $2 billion in net assets, largely for the benefit of its own executives. (Aurora Form 990, 2010, p.1)

32. As a few illustrative examples, Aurora executives have given themselves these prodigious compensation packages:

| Aurora Executive | Compensation by Aurora |
| --- | --- |
| Donald J. Nestor, former executive | $8,142,378 (2009) |
| Nick Turkel, President | $2,410,471 (2009) |
| John Konkel, Board of Directors | $1,385,899 (2010) |

(Aurora Form 990, 2010, Part VII, Sec. A, p.3; Aurora Form 990, 2009, Part VII)

33. In addition, five insider physicians at Aurora took home a total of more than $10 million in 2010. (Aurora Form 990, 2010, Part VII, Sec. A, p.5)

34. This massive level of self-enrichment at Aurora is enhanced by its exclusion of independent physicians, including Plaintiff Fisher, who might sometimes refer patients to competitors of the Aurora employees, or transfer the patients to other hospitals as appropriate.

35. As a result of Defendant Aurora's elimination of independent physicians from its medical staff, Winnebago County residents taken by ambulance to Aurora are often denied the ability to be seen and treated by their own physician, including Plaintiff Fisher.

36. As a further result of Defendant's elimination of independent physicians from its medical staff, referrals of the care of patients in Aurora are almost exclusively made to other Aurora employees, rather than to independent physicians who may provide better care.

### The Relevant Market

37. The relevant product or service market consists of providing hospital-based family practice medical services.

38. The relevant geographic market is the metropolitan area of Oshkosh, Wisconsin.

39. Defendant controls a dominant hospital in this market, having roughly 40% of the market share.

40. Defendant has systematically excluded independent physicians from the relevant market by imposing unjustified conditions on them.

41. Defendant restraints trade by requiring unreasonable 24-hour, 7-days-a-week (24/7) continuous call coverage by independent physicians, including Plaintiff, without allowing Defendant's employees to cover for them as they cover for non-independent physicians.

42. Defendant's exclusion of independent physicians, including Plaintiff, from the relevant market has enabled Defendant to attain monopolistic control over the market to the detriment of patient choice and competition.

43. Defendant has acted in concert with physicians at Theda Clark Medical Center in refusing to provide traditional courtesies of back-up call coverage to physicians who are not part of their group.

### FIRST CLAIM FOR RELIEF
### (FOR RESTRAINT OF TRADE UNDER SECTION 1
### OF THE SHERMAN ACT)

44. Plaintiff incorporates herein all statements and allegations contained in this Complaint.

45. The exclusion by Defendant of Plaintiff from roughly 40% of the relevant market is harmful to consumers of medical services in Oshkosh who become, often involuntarily, patients at Aurora.

46. Defendant acted in concert to restrain trade by imposing an unjustified backup call requirement on Plaintiff.

47. Defendant induced the physicians at Theda Clark Medical Center

into not extending a common professional courtesy of providing occasional backup call for Plaintiff.

48. Defendant coerced Dr. Ringwala into not being able to provide backup call for Plaintiff.

49. Defendant's action was undertaken with a common design and understanding to exclude independent physicians, including Plaintiff, from the relevant market, thereby constituting an unlawful agreement under Section 1 of the Sherman Act.

50. Defendant's action injured competition by causing anticompetitive effects within the relevant market for the services provided by Plaintiff.

51. Defendant's action has reduced the availability of independent physicians in the relevant market, to the detriment of patients.

52. Defendant's concerted actions imposed, and continue to impose, an unreasonable restraint of trade.

53. Defendant's concerted action to exclude Plaintiff is a *per se* violation of antitrust laws because it is plainly anticompetitive, like a group boycott of a supplier; Defendant's foregoing actions tend to restrict competition and decrease output with respect to family practice services in the relevant market.

54. In the alternative, Defendant's concerted actions are unlawful pursuant to the rule of reason, by unreasonably excluding competition without any pro-competitive justification.

55. The purpose and the effect of the exclusion of Plaintiff from the

relevant market are anticompetitive, limiting patients' choice of physicians.

56. By excluding Plaintiff from the relevant market, Defendant's boycott reduced competition in providing family practice services at hospitals in the Oshkosh area.

57. Defendant thereby unreasonably restricted the ability of Plaintiff to provide services in the relevant product and geographic market.

58. Defendant's concerted actions have been a direct and proximate cause of Plaintiff's losing revenue from the services that Plaintiff would have provided to patients if he had not been excluded.

59. Defendant has market power within the meaning of the Sherman Act.

60. Defendant has violated Section 1 of the Sherman Act by virtue of its foregoing conduct.

61. Plaintiff has lost market share and patient volume as a direct result of Defendant's violation.

62. This exclusion of Plaintiff from the relevant market has reduced the quality and quantity of services available for patients, and reduced the overall output of family practice physicians for patients in this market.

63. Patients are highly unlikely to sue for the loss in the quality and quantity of these services, and there is no potential for duplicative recovery or complex apportionment of damages.

64. Plaintiff seeks treble damages, plus attorneys' fees, for the damages

proximately caused by Defendant's foregoing actions.

65. Defendant's actions were wanton and willful, and accordingly Plaintiff seeks punitive damages.

66. Plaintiff seeks an injunction against Defendant to prevent recurrence of its restraint of trade as alleged above.

67. Plaintiff seeks an injunction ordering Defendant to grant the application that Plaintiff filed for medical staff privileges at Aurora.

## SECOND CLAIM FOR RELIEF
### (FOR VIOLATION OF ESSENTIAL FACILITIES DOCTRINE UNDER SECTION 2 OF THE SHERMAN ACT)

68. Plaintiff Fisher incorporates herein all statements and allegations contained in this Complaint.

69. Defendant is a monopolist in the relevant market.

70. Defendant's hospital at Oshkosh is an essential facility with respect to patients who are taken there in an emergency or required to be treated there by their insurance plan.

71. Defendant controls this essential facility.

72. Plaintiff is unable practically or reasonably to duplicate this facility.

73. Defendant has denied Plaintiff the use of this facility, in order to restrict competition by Plaintiff to provide services to patients admitted to the facility.

74. Defendant has erected a barrier to entry by requiring unreasonable 24/7 call coverage by independent physicians who apply to the facility.

11

75. Defendant has further increased this barrier to entry by denying an independent physician (Ringwala), who did provide back-up call coverage for others, her right to use Plaintiff for back-up call coverage, thereby making it impossible for her to remain on Defendant's staff and provide back-up call coverage for others.

76. It is feasible for Defendant to provide its facility to Plaintiff as it had been doing for years.

77. Defendant has violated Section 2 of the Sherman Act by virtue of its foregoing conduct.

78. Plaintiff seeks treble damages, plus attorneys' fees, for the damages proximately caused by Defendant's foregoing actions.

79. Defendant's actions were wanton and willful, and accordingly Plaintiff seeks punitive damages.

80. Plaintiff seeks an injunction ordering Defendant to grant the application that Plaintiff filed for medical staff privileges at Aurora.

### THIRD CLAIM FOR RELIEF
### (FOR BREACH OF CONTRACT)

81. Plaintiff Fisher incorporates herein all statements and allegations contained in this Complaint.

82. Defendant Aurora made a verbal contract with Plaintiff Fisher as part of his joining its medical staff in Oshkosh, with an offer by Aurora and an acceptance by Fisher, that when he is not "on call" to see patients immediately, his

patients would be admitted by the physician who is "on call" for unassigned patients.

83. For at least several years, Defendant honored this verbal contract with Plaintiff, which was consistent with longstanding practices and assurances.

84. Plaintiff fully performed all of his contractual obligations.

85. Defendant breached its contractual obligations by insisting that Plaintiff provide 24/7 call coverage, without backup call by Aurora employees or the physician who is "on call" for unassigned patients, and without exceptions.

86. Defendant's refusal to consider the renewal of medical staff privileges for Plaintiff in the absence of a guarantee by him of 24/7 call coverage was a breach of Defendant's contractual obligations.

87. Defendant's actions proximately caused injury in the form of lost revenue to Plaintiff.

88. Plaintiff seeks compensatory damages for the resultant injury.

### FOURTH CLAIM FOR RELIEF
### (FOR TORTIOUS INTERFERENCE WITH
### PROSPECTIVE ECONOMIC ADVANTAGE)

89. Plaintiff Fisher incorporates herein all statements and allegations contained in this Complaint.

90. Plaintiff had a valid and reasonable expectancy of prospective contractual relationships to provide services to his patients when they are hospitalized at Aurora.

91. Defendant had knowledge of Plaintiff's expectancy of these future

contractual relationships with patients hospitalized at Aurora.

92. Defendant interfered with and prevented these patients from entering into prospective contractual relations with Plaintiff by refusing to accept Plaintiff's application for renewal of his medical staff privileges.

93. Defendant acted intentionally in order to prevent Plaintiff from having these contractual relationships with his patients at Aurora.

94. In the alternative, Defendant acted in such a fashion and for such purpose that it knew this interference was certain to occur.

95. The foregoing interference with Plaintiff's prospective economic advantage has proximately caused Plaintiff to lose revenue.

96. Defendant's conduct was a substantial factor in producing the damages claimed by Plaintiff.

97. Defendant's actions were wanton and willful, and accordingly Plaintiff seeks punitive damages.

98. Plaintiff seeks injunctive relief ordering Defendant not to impose a 24/7 call requirement on Plaintiff and thereby refuse to accept his application for medical staff privileges.

### FIFTH CLAIM FOR RELIEF
### (FOR QUANTUM MERUIT)

99. Plaintiff Fisher incorporates herein all statements and allegations contained in this Complaint.

100. Plaintiff Fisher provided continuous, 24/7 call services to Aurora.

101. Aurora demanded that Plaintiff provide these valuable services to it by threatening Plaintiff with a summary suspension if he did not provide them, despite how Aurora exempted its own employed physicians from sharing call with other members of the department, including Plaintiff.

102. From August 19, 2011, through February 10, 2012, the extra call coverage provided by Plaintiff totaled 2879.52 hours.

103. At a reasonable hourly rate of only $105 per hour, the value of Plaintiff's extra call coverage totals $302,349.60.

104. In light of Aurora's subsequent refusal to consider an application by Plaintiff to its medical staff, it would be unjust for Aurora not to compensate Plaintiff for these services rendered.

105. Plaintiff reasonably expected compensation for these services if Aurora refused to allow his application for renewal of privileges.

106. On July 19, 2012, Plaintiff submitted a bill to Aurora administrator John Bard for the call services that Plaintiff provided Aurora beyond a customary level of every-third-day coverage.

107. Defendant Aurora has not paid on this invoice.

108. Plaintiff seeks compensation for these services that he rendered to Aurora.

## **Jury Demand**

109. Plaintiff requests a trial by jury for all issues triable by jury.

## Prayer for Relief

WHEREFORE, Plaintiff requests:

(i) that Defendant be enjoined from further anticompetitive conduct, as alleged herein;

(ii) that Defendant be ordered to place Plaintiff back on its medical staff without unreasonable conditions such as 24/7 call;

(iii) that Plaintiff recover compensatory damages from Defendant, including pay for the 24/7 call coverage he provided;

(iv) that Plaintiff recover treble damages and reasonable attorneys' fees from Defendant, pursuant to the First and Second Claims;

(v) that Plaintiff recover punitive damages from Defendant; and

(vi) that Plaintiff recover such other relief as the Court may deem appropriate.

Respectfully submitted,

/s/ Andrew L. Schlafly

Andrew L. Schlafly
Attorney at Law
New Jersey Bar No. 04066-2003
939 Old Chester Rd.
Far Hills, NJ 07931
Phone: (908) 719-8608
Fax: (908) 934-9207
Email: aschlafly@aol.com

ATTORNEY FOR PLAINTIFF

Dated: February 13, 2013