# AURORA MEDICAL CENTER OSHKOSH

## MEDICAL STAFF BYLAWS

Case 1:13-cv-00152-WCG   Filed 03/29/13   Page 1 of 93   Document 10-2

# OSHKOSH MEDICAL STAFF BYLAWS

DEFINITIONS ........................................................................................................... 1

ARTICLE 1.   PURPOSE AND RESPONSIBILITIES ........................................................ 6

    1.1    BYLAWS .................................................................................................... 6
    1.2    ORGANIZED MEDICAL STAFF ....................................................................... 6
    1.3    GOVERNING BODY ..................................................................................... 6

ARTICLE 2.   STAFF MEMBERSHIP AND CLINICAL PRIVILEGES ................................ 8

    2.1    GENERALLY ............................................................................................... 8
    2.2    PROVIDERS ELIGIBLE FOR STAFF MEMBERSHIP AND CLINICAL PRIVILEGES ........ 9
    2.3    QUALIFICATIONS FOR STAFF MEMBERSHIP AND/OR CLINICAL PRIVILEGES ..... 10
    2.4    OBTAINING AND SUBMITTING AN APPLICATION ........................................... 17
    2.5    REVIEW AND EVALUATION PROCESS ........................................................... 20
    2.6    NOTIFICATION OF STAFF MEMBERSHIP AND CLINICAL PRIVILEGING DECISIONS ... 23
    2.7    TEMPORARY, EMERGENCY, AND DISASTER PRIVILEGES .................................. 23
    2.8    ONGOING OBLIGATIONS ............................................................................ 26
    2.9    LEAVE OF ABSENCE; VOLUNTARY RESIGNATION ........................................... 30
    2.10    MEDICO-ADMINISTRATIVE APPOINTMENTS ................................................. 31
    2.11    CONTRACT TERMINATION .......................................................................... 31

ARTICLE 3.   STAFF CATEGORIES ............................................................................. 33

    3.1    GENERALLY ............................................................................................. 33
    3.2    ACTIVE MEDICAL STAFF ............................................................................ 33
    3.3    ASSOCIATE MEDICAL STAFF ....................................................................... 34
    3.4    COURTESY MEDICAL STAFF ....................................................................... 36
    3.5    TELEMEDICINE MEDICAL STAFF ................................................................. 37
    3.6    CONSULTING MEDICAL STAFF .................................................................... 38
    3.7    HONORARY MEDICAL STAFF ...................................................................... 38
    3.8    ADVANCED PRACTICE  PROFESSIONAL STAFF .............................................. 39
    3.9    CHANGE IN MEDICAL STAFF CATEGORY ..................................................... 40

ARTICLE 4.   CORRECTIVE ACTIONS ........................................................................ 41

    4.1    CORRECTIVE ACTION PROCESS ................................................................. 41
    4.2    SUMMARY SUSPENSION ........................................................................... 43
    4.3    AUTOMATIC SUSPENSION AND VOLUNTARY RELINQUISHMENT ...................... 44

ARTICLE 5.   HEARING AND APPELLATE REVIEW PROCEDURE ................................. 48

    5.1    GENERAL PROVISIONS .............................................................................. 48
    5.2    GROUNDS FOR A HEARING OR APPELLATE REVIEW ....................................... 48
    5.3    PRE-HEARING PROCESS ............................................................................ 50
    5.4    HEARING PROCEDURE .............................................................................. 53
    5.5    MEDICAL EXECUTIVE COMMITTEE/GOVERNING BODY REVIEW AND RECOMMENDATION ........ 55
    5.6    PRE-APPEAL PROCESS .............................................................................. 56
    5.7    APPELLATE REVIEW PROCEDURE ............................................................... 59
    5.8    FINAL DECISION BY GOVERNING BODY ...................................................... 61

ARTICLE 6.   MEDICAL EXECUTIVE COMMITTEE ...................................................... 62

    6.1    COMPOSITION ......................................................................................... 62
    6.2    DUTIES AND RESPONSIBILITIES ................................................................. 63

V.5 Oshkosh Medical Staff Bylaws ADOPTED 7-19-2011.DOC

  6.3  MEDICAL EXECUTIVE COMMITTEE MEETINGS .................................................................... 64

ARTICLE 7. ORGANIZED MEDICAL STAFF ............................................................................. 66

  7.1  COMPOSITION ...................................................................................................... 66
  7.2  DUTIES AND RESPONSIBILITIES .......................................................................... 66
  7.3  MEDICAL STAFF OFFICERS ................................................................................. 68
  7.4  MEDICAL STAFF MEETINGS ................................................................................ 72

ARTICLE 8. CLINICAL DEPARTMENTS .................................................................................. 74

  8.1  ORGANIZATION OF DEPARTMENTS AND SECTIONS .............................................. 74
  8.2  ASSIGNMENT TO DEPARTMENTS ......................................................................... 74
  8.3  CLINICAL CHAIRPERSONS ................................................................................... 75
  8.4  DEPARTMENTAL MEETINGS ................................................................................ 79

ARTICLE 9. MEDICAL STAFF COMMITTEES ......................................................................... 81

  9.1  FORMATION, COMPOSITION, AND DISSOLUTION .................................................. 81
  9.2  DUTIES AND RESPONSIBILITIES .......................................................................... 81
  9.3  MEDICAL STAFF COMMITTEE MEETINGS ........................................................... 81

ARTICLE 10. MEDICAL STAFF BYLAWS AND POLICIES ......................................................... 83

  10.1  MEDICAL STAFF BYLAWS .................................................................................. 83
  10.2  POLICIES GOVERNING MEDICAL PRACTICES ....................................................... 85
  10.3  DEPARTMENTAL POLICIES .................................................................................. 87
  10.4  HISTORY AND PHYSICAL EXAMINATIONS ........................................................... 87

ARTICLE 11. MISCELLANEOUS ............................................................................................. 89

  11.1  COMPLIANCE WITH LAWS AND REGULATIONS. ................................................... 89
  11.2  GOVERNING LAW. .............................................................................................. 89
  11.3  ELECTRONIC RECORD KEEPING. ......................................................................... 89
  11.4  HEADINGS. ......................................................................................................... 89
  11.5  IDENTIFICATION. ................................................................................................ 89
  11.6  SEVERABILITY. ................................................................................................... 90

V.5 Oshkosh Medical Staff Bylaws ADOPTED 7-19-2011.DOC

# DEFINITIONS

**"Act"** means the Health Care Quality Improvement Act of 1986.

**"Administrator"** means the individual appointed by the Governing Body to act on its behalf in the overall management of the Medical Center.

**"Adverse Action"** means an action or recommended action issued by the Medical Executive Committee or the Governing Body that entitles the affected Staff Member to hearing and appellate review rights as set forth in Section 5.2 of these Bylaws.

**"Adverse Action Notice"** means a Written Notice informing a Staff Member of an Adverse Action.

**"Advanced Practice Professional"** means an individual, other than a Practitioner, who is licensed and/or certified to render health care services independently or under the supervision of a Medical Staff Member, and who is authorized by the Medical Center to provide direct health care services at the Medical Center.

**"Appellate Review Request"** means a written request for an appellate review submitted in the manner set forth in these Bylaws by a Staff Member who is entitled to an appellate review under these Bylaws.

"**Applicant**" means a Practitioner or Advanced Practice Professional who completes and submits an Application for or has been granted the following at the Medical Center:

1. Appointment
2. Reappointment
3. Clinical Privileges (including initial, renewed, modified, temporary, disaster or emergency Privileges)
4. Modification of Medical Staff Category

"**Application**" means a written request for appointment, reappointment, modification of Medical Staff category, and/or Clinical Privileges (including initial, renewed, modified, and/or temporary Clinical Privileges).

**"Associated Details"** means procedural details associated with the basic steps of the processes described in Section 10.1 of these Bylaws.[1]

**"Certificate of Insurance"** means a current certificate of insurance evidencing professional malpractice insurance coverage with limits not less than those specified in Wis. Stat. ch. 655 or successor statutes thereto.

---

[1] JCS MS.01.01.01, EP 3 (March 2011).

Current as of July 19, 2011
V.5 Oshkosh Medical Staff Bylaws
ADOPTED 7-19-2011.DOC

Aurora Health Care

Page 1 of 90

Case 1:13-cv-00152-WCG    Filed 03/29/13    Page 4 of 93    Document 10-2

**"Chief of Staff"** means the individual elected by the Medical Staff as its chief administrative officer.

**"Clinical Assistant"** means an individual qualified by academic education and clinical experience or training to provide patient care services in a clinical or supportive role. Clinical Assistants provide services only under the supervision of an employing or sponsoring member of the Medical Staff. Clinical Assistants are not members of the Medical Staff or the Advanced Practice Professional Staff and are not granted Clinical Privileges. A Clinical Assistant is an individual, other than a Practitioner and Advanced Practice Professional, who is: (i) licensed and/or certified to render health care services under the supervision of a Medical Staff Member; (ii) employed by the supervising Medical Staff Member or a clinic in which the supervising Medical Staff Member practices; and (iii) authorized by the Medical Center to provide direct health care services at the Medical Center. The disciplines included in the Clinical Assistant category include, but are not limited to: Registered Nurses (RNs); Surgical Assistants; Cardiovascular Perfusionists; Pathologist Assistants; Radiology/Ultrasound Technicians; Research Scientists; and Surgical Technicians. For additional information, please reference the Medical Center's policy regarding Clinical Assistants.

**"Clinical Chairperson"** means the Chairperson of a Medical Staff Department.

**"Clinical Privileges"** or **"Privileges"** means permission granted by the Governing Body to appropriately licensed individuals to render specifically delineated professional, diagnostic, therapeutic, medical, surgical, dental, or podiatry services at the Medical Center.

**"CFR"** means the United States Code of Federal Regulations.

**"Credentials Verification Organization"** or **"CVO"** means a qualified organization with which the Medical Center has contracted to perform certain credentials verification services.

**"DEA"** means the United States Department of Justice Drug Enforcement Agency.

**"Delivery Date"** means the date upon which any Written Notice is deemed to have been delivered to a Staff Member. The Delivery Date for Written Notices shall be as follows:

| Method of Delivery | Delivery Date |
|---|---|
| Personal/Hand Delivery | Date of Delivery |
| Certified Mail, return receipt requested | Seventy-two (72) hours after deposit with the U. S. Postal Service, certified or registered with return receipt requested |
| Overnight Courier | Twenty-four (24) hours after deposit with a reputable overnight courier |
| Email | Date of Delivery |

Current as of July 19, 2011
V.5 Oshkosh Medical Staff Bylaws
ADOPTED 7-19-2011.DOC

Aurora Health Care

Page 2 of 90

Case 1:13-cv-00152-WCG   Filed 03/29/13   Page 5 of 93   Document 10-2

**"Dentist"** means an individual who has received a doctorate in dental surgery or doctorate in dental medicine degree and has a current, unrestricted license to practice dentistry in the State of Wisconsin.

**"Department"** means a clinical grouping of Staff Members in accordance with their specialty or major practice interest, as specified in these Bylaws.

**"Ex Officio"** means service as a member of a committee or other body by virtue of an office or a position held. Unless otherwise specified in these Bylaws, an Ex Officio member shall serve as a non-voting member.

**"Focused Professional Practice Evaluation" or "FPPE"** means a time-limited study, review, investigation, evaluation, or assessment of the training, experience, skill, professional conduct, qualifications, current competence, and/or clinical judgment or expertise of a particular Staff Member. Relevant information obtained from FPPE shall be integrated into performance improvement activities. The FPPE process is NOT part of the corrective action process. If corrective action is indicated, the corrective action procedures outlined in these Bylaws must be followed.

**"Governing Body"** means the Board of Directors of Aurora Medical Center of Oshkosh, Inc. or any group of individuals or committee that is delegated responsibility for acting on its behalf in matters regarding the Medical Staff and/or the Advanced Practice Professional Staff.

**"Hearing Request"** means a written request for a hearing submitted in the manner set forth in these Bylaws by a Staff Member who is entitled to a hearing under these Bylaws.

**"History and Physical" or "H&P"** means a medical history and physical examination that is performed to determine whether any aspect of the patient's overall condition or medical history would affect the planned course of the patient's treatment, such as a medication allergy or a new or existing condition that requires additional interventions to reduce risk to the patient. An H&P must be performed or approved by an individual who has been privileged to do so by the Medical Staff.[2]

**"Joint Commission Standard" or "JCS"** means a standard set forth by The Joint Commission.

**"Medical Center"** means Aurora Medical Center of Oshkosh, Inc., d/b/a Aurora Medical Center, located in, Oshkosh, Wisconsin. The Medical Center is a "health care entity" as defined in 42 U.S.C. § 11151(4)(A) and a "hospital" as defined in 42 U.S.C. § 11151(5).

**"Medical Director"** means a physician under contract with the Medical Center to assume overall responsibility for a particular service.

**"Medical Executive Committee"** means the executive committee of the Medical Staff.

---

[2] 42 C.F.R. § 482.22(c)(5)(i) (Interpretive Guidelines, effective October 17, 2008).

Current as of July 19, 2011
V.5 Oshkosh Medical Staff Bylaws
ADOPTED 7-19-2011.DOC

Aurora Health Care

Page 3 of 90

Case 1:13-cv-00152-WCG   Filed 03/29/13   Page 6 of 93   Document 10-2

**"Medical Staff"** means all Practitioners who have been appointed to the Active, Associate, Courtesy, Telemedicine, Consulting or Honorary Medical Staff by the Governing Body. The Medical Staff is a "professional review body" as that term is defined in 42 U.S.C. § 11151(11), and is an integral part of the Medical Center (not a separate legal entity).[3]

**"Medical Staff Services"** means the Medical Center's Medical Staff Office.

**"Medical Staff Year"** means the calendar year.

**"Modification Request"** means a written request for modification of an individual's Medical Staff Category and/or Clinical Privileges.

**"National Practitioner Data Bank"** or **"NPDB"** means the data bank established under the Act.

**"Ongoing Professional Practice Evaluation" or "OPPE"** means a continuous process in which certain data is evaluated to identify professional practice trends that impact quality of care and patient safety. OPPE activities may be assigned to a particular Department or committee under the direction of the Peer Review Committee. Relevant information obtained from OPPE shall be integrated into performance improvement activities. The OPPE process is NOT part of the corrective action process. If corrective action is indicated, the corrective action procedures outlined in these Bylaws must be followed.

**"Oral Surgeon"** means a Dentist who has successfully completed a postgraduate program in oral and maxillofacial surgery accredited by a nationally recognized accrediting body approved by the U.S. Department of Education who possess a current, unlimited license to practice dentistry in the State of Wisconsin.

**"Patient Encounter"** means, for the purpose of determining whether a Medical Staff Member "regularly admits" patients to the Medical Center, (a) an inpatient or outpatient admission of a patient during which the Medical Staff Member has direct, in-person contact with the patient; or (b) the performance of a procedure or diagnostic or therapeutic intervention for a Medical Center patient.

**"Physician"** means an appropriately licensed medical doctor (M.D.) or osteopathic physician (D.O.) who possesses a current, unlimited license to practice medicine in the State of Wisconsin.

**"Podiatrist"** means an individual who has received a Doctorate of Podiatric Medicine (DPM) and has a current, unrestricted license to practice podiatry in the State of Wisconsin.

**"Practitioner"** means a Physician, Podiatrist, Dentist, or Oral Surgeon.

**"Professional Review Action"** means any action or recommendation of a Professional Review Body which is taken or made in the conduct of Professional Review Activity, which is based on

---

[3] 42 C.F.R. § 482.12(a)(1); Wis. Admin. Code DHS § 124.12(4)(a)1. (2009).

Current as of July 19, 2011
V.5 Oshkosh Medical Staff Bylaws
ADOPTED 7-19-2011.DOC

 Aurora Health Care

Page 4 of 90

Case 1:13-cv-00152-WCG    Filed 03/29/13    Page 7 of 93    Document 10-2

the competence or professional conduct of a health care provider and which affects, or may affect such individual's Staff Membership and/or Clinical Privileges.[4]

**"Professional Review Activity"** means any activity which is undertaken to determine whether (a) a health care provider is eligible for Staff Membership or Clinical Privileges; (b) the scope or conditions of such Staff Membership or Clinical Privileges; or (c) if such Staff Membership or Clinical Privileges should be modified or terminated.[5]

**"Professional Review Body"** means the Governing Body, Medical Executive Committee, Credentials Committee, Peer Review Committee, any Hearing or Appellate Review Committee, any subcommittee or member of the forgoing, and any other committee or entity which, or individual who, conducts or assists the Medical Center in the performance of any Professional Review Activity and/or otherwise participates in a Professional Review Action.

**"Staff Member"** means a current appointee to the Active, Associate, Courtesy, Telemedicine or Consulting Medical Staff, or the Advanced Practice Professional Staff.

**"Staff Membership"** means appointment to the Active, Associate, Courtesy, Telemedicine or Consulting Medical Staff, or the Advanced Practice Professional Staff.

**"Telemedicine Service Organization"** or **"TSO"** means a Joint Commission-accredited ambulatory care organization that has contracted with the Medical Center to provide telemedicine services through a telemedicine link.[6]

**"Written Notice"** means a written notice that is delivered to the Staff Member via personal/hand delivery, or certified mail, return receipt requested to the Staff Member's last known residential or office address. Notwithstanding the above, for purposes of Medical Staff meetings, Department meetings, and Medical Staff committee meetings, the term "Written Notice" shall also include notice via email to the Staff Member's last known email address.

---

[4] 42 U.S.C. § 11151(9).
[5] 42 U.S.C. § 11151(10).
[6] JCS MS.13.01.01, EP 1 (Jan. 2009).


Case 1:13-cv-00152-WCG   Filed 03/29/13   Page 8 of 93   Document 10-2

# ARTICLE 1.  PURPOSE AND RESPONSIBILITIES

## 1.1    Bylaws

The purposes of these Bylaws are to: (1) create a system of rights and responsibilities between the organized Medical Staff and the Governing Body, and the organized Medical Staff and its members;[7] (2) describe the organization and structure of the Medical Staff; and (3) establish a mechanism for the organized Medical Staff to carry out its responsibilities and govern the professional activities of its members and other individuals with Clinical Privileges.[8]

## 1.2    Organized Medical Staff

The purposes and responsibilities of the Organized Medical Staff are set forth in Section 7.2.

## 1.3    GOVERNING BODY

The purposes and responsibilities of the Governing Body with regard to the Medical Staff are described in these Bylaws and the Policies Governing Medical Practices.[9]

### 1.3.1    Bylaws and Policies.
The Governing Body approves and upholds these Bylaws, the Policies Governing Medical Practices,  and other Medical Staff rules and regulations.[10]

### 1.3.2    Staff Membership and Clinical Privileges.
The Governing Body determines, in accordance with applicable law, which categories of providers are eligible candidates for Staff Membership;[11] appoints Staff Members after considering the recommendations of the Medical Executive Committee;[12] ensures that the criteria for Staff Membership and/or Clinical Privileges are in writing and include individual character, competence, training, experience, and judgment;[13] and ensures that under no circumstances is the accordance of Staff Membership or Clinical Privileges in the Medical Center dependent solely upon certification, fellowship, or membership in a specialty body or society.[14]

---

[7] JCS MS.01.01, Rationale (Jan. 2009).
[8] 42 C.F.R. § 482.12(a)(3); 42 C.F.R. § 482.22(c); JCS MS.01.01.01 (Jan. 2009).
[9] 42 C.F.R. § 482.12(a).
[10] 42 C.F.R. § 482.12(a)(3-4); Wis. Admin. Code DHS § 124.12(5)(a) (2009); JCS MS.01.01.01, EP 3 (Jan. 2009).
[11] 42 C.F.R. § 482.12(a)(1).
[12] 42 C.F.R. § 482.12(a)(2).
[13] 42 C.F.R. § 482.12(a)(6).
[14] 42 C.F.R. § 482.12(a)(7).

Current as of July 19, 2011
V.5 Oshkosh Medical Staff Bylaws
ADOPTED 7-19-2011.DOC

Aurora Health Care

Page 6 of 90

Case 1:13-cv-00152-WCG    Filed 03/29/13    Page 9 of 93    Document 10-2

**1.3.3  Communication with the Medical Staff**.

The Governing Body: (a) works with Medical Staff leaders to evaluate the Medical Center's performance in relation to its mission, vision, and goals;[15] (b) ensures that the Medical Staff is accountable to the Governing Body for the quality of care provided to patients;[16] and (c) provides the organized Medical Staff with the opportunity to participate in Medical Center governance, and the opportunity to be represented at Governing Body meetings, by one or more of its members, as selected by the organized Medical Staff.[17]

---

[15] JCS LD.01.03.01, EP 6 (Jan. 2009).
[16] 42 C.F.R. § 481.12(a)(5); Wis. Admin. Code DHS § 124.12(2)(a) (2009).
[17] JCS LD.01.03.01, EP 8, 9 (Jan. 2009).


Case 1:13-cv-00152-WCG   Filed 03/29/13   Page 10 of 93   Document 10-2

# ARTICLE 2.  STAFF MEMBERSHIP AND CLINICAL PRIVILEGES

## 2.1    Generally

**2.1.1    No Entitlement**.  No Applicant shall be entitled to Staff Membership or to the exercise of Clinical Privileges at the Medical Center merely by virtue of the fact that the Applicant: (a) is licensed to practice medicine, podiatry, or dentistry in this or in any other state; (b) is board certified or a member of any professional organization; or (c) had or currently has such privileges at another medical center.[18]  Individuals in administrative positions who desire Staff Membership or Clinical Privileges are subject to the same procedures as all other Applicants for Staff Membership or Clinical Privileges.

**2.1.2    No Discrimination**.
No Applicant who is otherwise qualified shall be denied Staff Membership and/or Clinical Privileges by reason of race, color, creed, age, sexual orientation, disability, gender, military status, or national origin, or other class protected by law, except as may be permitted by law.

**2.1.3    Exercise of Clinical Privileges; Certain Restrictions**.
Each Practitioner providing direct clinical services at the Medical Center, by virtue of Staff Membership or otherwise, shall, in connection with such practice and except as provided in Section 2.7, be entitled to exercise only those Clinical Privileges that are within the scope of such Practitioner's licensure, certification, education, training and experience, and specifically granted to the Practitioner upon recommendation by the Medical Executive Committee and approval of the Governing Body.  Certain Clinical Privileges may be subject to specific restrictions.

**2.1.4    Admitting and Prescribing Privileges**.
The privilege to admit patients to the Medical Center shall be specifically delineated. Prescribing privileges shall be limited to the classes of drugs granted to the Applicant by the DEA and may be further limited by the Medical Staff through the delineation of medication prescribing privileges based on the Applicant's scope of practice and current competence.

**2.1.5    Exclusive Contracts.**
The Governing Body may determine, in the interest of quality patient care and as a matter of policy, that certain Medical Center facilities, services, and coverages may be provided/used only on an exclusive basis in accordance with written contracts between the Medical Center and certain qualified Practitioners/entities.  The parties to any such contract may waive rights or privileges under these Bylaws.  In the event of any conflict between any such contract and these Bylaws, the contract terms shall prevail.

---

[18] 42 C.F.R. § 482.12(a)(7).

Current as of July 19, 2011
V.5 Oshkosh Medical Staff Bylaws
ADOPTED 7-19-2011.DOC

Aurora Health Care

Page 8 of 90

Case 1:13-cv-00152-WCG    Filed 03/29/13    Page 11 of 93    Document 10-2

**2.1.6 Duration of Appointment, Reappointment and Clinical Privileges**.
Initial appointment and reappointment and Clinical Privileges shall be granted for a specific period not to exceed two (2) years upon final approval of the Governing Body.[19]

**2.1.7 Ongoing Evaluation of Qualifications and Competence**.
Each Applicant's competence to perform Clinical Privileges shall be assessed and evaluated on an ongoing basis through the Medical Center's OPPE and FPPE processes (as further described in the Policies Governing Medical Practices). In addition, each Applicant must report any changes in the Applicant's qualifications in accordance with Section 2.8.7 of these Bylaws. If at any time, such information indicates that the Applicant is no longer competent to perform any or all of the Applicant's previously granted Clinical Privileges, such Clinical Privileges may be modified or terminated by the Governing Body, upon the recommendation of the Medical Executive Committee.[20]

## 2.2 Providers Eligible for Staff Membership and Clinical Privileges

**2.2.1 Eligible Providers**.
The following categories of health care providers are eligible for Staff Membership and/or Clinical Privileges:[21]

**Medical Staff**
- Medical Doctors (MDs)
- Doctors of Osteopathic Medicine (DOs)
- Dentists
- Oral Surgeons
- Doctors of Podiatric Medicine

**Advanced Practice Professional Staff**
- Advance Practice Nurses
  - Certified Registered Nurse Anesthetists (CRNAs)
  - Certified Nurse Midwives (CNMs)
  - Nurse Practitioners (NPs)
  - Clinical Nurse Specialists (CNSs)
- Physician Assistants (PAs)
- Licensed Clinical Social Workers (LCSWs)
- Psychologists (Ph.D or Psy.D.)
- Chiropractors

**2.2.2 Available Clinical Privileges**.
The Medical Center, in consultation with the Medical Staff, shall determine which Clinical Privileges it has the space, equipment, personnel, and other necessary resources

---

[19] 42 C.F.R. § 482.22(a)(1); Wis. Admin. Code DHS §§ 124.12(4)(a)2. & 124.12(4)(c)3. (2009); JCS MS.06.01.07, EP 8 (Jan. 2009).
[20] Wis. Admin. Code DHS § 124.12(4)(c)3. (2009); JCS MS.08.01.03 (Jan. 2009).
[21] 42 C.F.R. § 482.22(c)(2) (Interpretive Guidelines, dated October 17, 2008).


Case 1:13-cv-00152-WCG    Filed 03/29/13    Page 12 of 93    Document 10-2

to support.  No Applicant shall be granted Clinical Privileges if the Medical Center does not have the necessary resources to support such Clinical Privileges.[22]  Lists of the specific Clinical Privileges available to each category of provider listed above are maintained by Medical Staff Services.[23]

## 2.3    Qualifications for Staff Membership and/or Clinical Privileges

Only those Applicants who: continuously meet the qualifications, standards and requirements set forth in these Bylaws and associated Medical Staff and Medical Center policies (and provide documentation of the same) shall be eligible for Staff Membership and Clinical Privileges.[24]

Each Applicant shall have the burden of establishing that he or she is eligible for Staff Membership and Clinical Privileges and it is the sole responsibility of each Applicant to submit all of the information and supporting documentation requested by the Medical Staff on the forms and in the manner requested by the Medical Staff.  Except as set forth in Section 2.7 (Temporary, Emergency and Disaster Privileges) and Section 3.7 (Honorary Medical Staff), such information and supporting documentation shall include the items listed below.

### 2.3.1   Current Competence.
Each applicant must possess the individual character, current competence, training, skills, experience, judgment, background, and physical ability needed to perform requested Clinical Privileges and provide quality patient care.

### 2.3.2   Complete Application and Fee.
Each Applicant must submit a complete, legible, signed Application and any applicable Application fee (such Application fee shall be established and modified by the Administrator in consultation with the Medical Executive Committee).

### 2.3.3   License/Registration.[25]
Each Applicant must: (a) possess a current, unrestricted license to practice his/her profession in the State of Wisconsin; (b) provide a list of all current and past licenses and certifications (in any state); and (c) provide a list of any current or previous challenges to licensure or certification, or voluntary relinquishment of licensure or certification (in any state).  Medical Staff Services (or the CVO) shall confirm the status of each Applicant's license/registration through primary source verification prior to appointment, reappointment, modification of Clinical Privileges, and at the time of license expiration.[26]

---

[22] JCS MS.06.01.01 (Jan. 2009).
[23] 42 C.F.R. § 482.22(c)(2) (Interpretive Guidelines, dated October 17, 2008); Wis. Admin. Code DHS §§ 124.12(4)(c)5. & 124.12(5)(b)2. (2009).
[24] 42 C.F.R. § 482.22(c)(4);  Wis. Admin. Code DHS §§ 124.12(4)(c)1., 2. & 6. (2009); JCS MS.01.01.01, EP 7 (Jan. 2009); JCS MS.06.01.03, EP 6 (Jan. 2009); JCS MS.06.01.05, EP 8 (Jan. 2009); JCS MS.07.01.03, EP 1-4 (Jan. 2009).
[25] 42 C.F.R. § 482.11(c); 42 C.F.R. § 482.22(c)(3); JCS MS.06.01.05, EP 1, 9 (Jan. 2009).
[26] 42 C.F.R. § 482.11(c); 42 C.F.R. § 482.22(c)(4); Wis. Admin. Code DHS § 124.12(4)(c)3.; JCS MS.06.01.03, EP 6 (Jan. 2009); JCS MS.06.01.05, EP 1, 9 (Jan. 2009).

Current as of July 19, 2011
V.5 Oshkosh Medical Staff Bylaws
ADOPTED 7-19-2011.DOC

Aurora Health Care

Page 10 of 90

Case 1:13-cv-00152-WCG    Filed 03/29/13    Page 13 of 93    Document 10-2

**2.3.4**  **Board Status and Residency/Training Program**.

Each Applicant must provide, as requested, (a) copies of certificates or letters confirming completion of an approved residency/training program or other educational curriculum, as applicable; (b) copies of certificates or letters from the appropriate specialty board confirming board status (i.e., board eligibility, or board certification), as applicable; and (c) information regarding the Applicant's previous voluntary or involuntary termination of board certification, if any. Medical Staff Services (or the CVO) shall: (a) confirm each Applicant's residency and training through primary source verification prior to initial appointment and whenever the Applicant provides information regarding training programs completed after initial appointment; and (b) confirm each Applicant's board status through primary source verification prior to initial appointment and reappointment. Notwithstanding the foregoing, Medical Staff members who will not have clinical privileges need not be board certified or board eligible.

(a)  <u>Physicians</u>.  A Physician must: (i) have successfully completed a residency program approved by the Accreditation Council for Graduate Medical Education (ACGME), the American Osteopathic Association, the Royal College of Physicians and Surgeons of Canada, or the Medical Executive Committee; (ii) be board certified by a specialty board approved by the American Board of Medical Specialties, the Royal College of Physicians and Surgeons of Canada, the American Osteopathic Association, or the Medical Executive Committee, or be board eligible and receive board certification by the time of Physician's first reappointment Application following five (5) years of Staff Membership; and (iii) maintain board certification for the duration of the Physician's Staff Membership. Notwithstanding the above, the requirements of this Section 2.3.4(a) may be waived in accordance with the Temporary Waiver of Board Certification Requirement Policy. If a Physician allows his/her Board Certification to expire, the maximum time the Physician may be given to recertify is five (5) years.

(b)  <u>Podiatrists</u>.  A Podiatrist must: (i) have successfully completed a training program accredited by the Council on Podiatric Medical Education or approved by the Medical Executive Committee; (ii) be board certified by the American Board of Podiatric Surgery or a specialty board approved by the Medical Executive Committee; or be board eligible and receive board certification by the time of the Podiatrist's first reappointment Application following five (5) years of Staff Membership; and (iii) maintain board certification for the duration of the Podiatrist's Staff Membership. If a Podiatrist allows his/her Board Certification to expire, the maximum time the Podiatrist may be given to recertify is five (5) years.

(c)  <u>Dentists</u>.  A Dentist must: (i) have successfully completed a training program at a school of dentistry accredited by the American Dental Association or approved by the Medical Executive Committee; (ii) have successfully completed at least one year of a post-graduate program approved by the Commission on Dental Accreditation of the American Dental Association or the Medical Executive Committee; and (iii) demonstrate the performance of at least 10 inpatient procedures in a hospital setting during such post-graduate training (which training occurred in the last two years or during the last two years of practice).

Current as of July 19, 2011
V.5 Oshkosh Medical Staff Bylaws
ADOPTED 7-19-2011.DOC

Aurora Health Care

Page 11 of 90

Case 1:13-cv-00152-WCG   Filed 03/29/13   Page 14 of 93   Document 10-2

(d)  Oral and Maxillofacial Surgeons.  An Oral Surgeon must: (i) have successfully completed a post-graduate program residency program accredited by the Commission on Dental Accreditation of the American Dental Association or approved by the Medical Executive Committee; (ii) be board certified by the American Board of Oral and Maxillofacial Surgery or a specialty board approved by the Medical Executive Committee; or be board eligible and receive board certification by the time of the Oral Surgeon's first reappointment Application following five (5) years of Staff Membership; and (iii) maintain board certification for the duration of the Oral Surgeon's Staff Membership.  If an Oral Surgeon allows his/her Board Certification to expire, the maximum time the Oral Surgeon may be given to recertify is five (5) years.

(e)  Advanced Practice Professionals.  Advanced Practice Professionals must have successfully obtained certification from the appropriate professional organization, as applicable.

**2.3.5  Peer Recommendations.**

Peer recommendations are required for all Applicants seeking: (a) initial appointment and/or Clinical Privileges; (b) renewed Clinical Privileges if there is insufficient professional practice review data generated by the Medical Center to evaluate the Applicant's competence; and (c) modified Clinical Privileges if there is insufficient professional practice review data generated by the Medical Center to evaluate the Applicant's competence.[27]  Such an Applicant must provide the names and addresses of peers (individuals in the same professional discipline practicing in the same or similar field as the Applicant) who recently worked with the Applicant, directly observed the Applicant's professional performance over a reasonable period of time, and can and will provide reliable information regarding the Applicant's proficiency in the following six areas of general competencies:[28]

(a)  Patient Care.  Each Applicant is expected to provide patient care that is compassionate, appropriate, and effective for the promotion of health, prevention of illness, treatment of disease, and care at the end of life.

(b)  Medical/Clinical Knowledge.  Each Applicant is expected to demonstrate knowledge of established and evolving biomedical, clinical, and social sciences, and the application of such knowledge to patient care and the education of others.

(c)  Practice-Based Learning and Improvement.  Each Applicant is expected to be able to use scientific evidence and methods to investigate, evaluate, and improve patient care practices.

(d)  Interpersonal and Communication Skills.  Each Applicant is expected to demonstrate interpersonal and communication skills that enable the Applicant to establish and maintain professional relationships with patients, families, and other members of health care teams.

---

[27] JCS MS.07.01.03, EP 1, 2 (Jan. 2009).
[28] JCS MS.06.01.03, Introduction (Jan. 2009); JCS MS.07.01.03, EP 4 (Jan. 2009).

Current as of July 19, 2011
V.5 Oshkosh Medical Staff Bylaws
ADOPTED 7-19-2011.DOC

Aurora Health Care

Page 12 of 90

Case 1:13-cv-00152-WCG    Filed 03/29/13    Page 15 of 93    Document 10-2

(e)     Professionalism.  Each Applicant is expected to demonstrate behaviors that reflect a commitment to continuous professional development, ethical practice, an understanding and sensitivity to diversity, and a responsible attitude toward the Applicant's patients, profession, and society.

(f)     Systems-Based Practice.  Each Applicant is expected to demonstrate both an understanding of the contexts and systems in which health care is provided, and the ability to apply this knowledge to improve and optimize health care.

**2.3.6   Professional Practice Evaluation Data.**
Each Applicant must provide or permit access to professional practice evaluation data generated by the Medical Center and any other entity that currently privileges the Applicant, if available.

**2.3.7   No Sanctions or Exclusion.**
Each Applicant must be eligible for participation in the Medicare and Medicaid programs and may not (1) be currently excluded, suspended, debarred, or ineligible to participate in any health care program funded in whole or in part by the federal or state government; or (2) have been convicted of a criminal offense related to the provision of health care items or services and has not been reinstated in a health care program funded in whole or in part by the federal or state government after a period of exclusion, suspension, debarment, or ineligibility.  Medical Staff Services (or the CVO) shall confirm each Applicant's status through primary source verification prior to appointment and reappointment.

**2.3.8   DEA Registration.**
If the Applicant's practice will involve the prescription of controlled substances, the Applicant must possess a current, unrestricted DEA registration in each state in which the Applicant will prescribe medications.[29]  The Applicant, upon request, must provide a copy of his/her current DEA registration certificate, as well as previously successful or currently pending challenges to registration or voluntary or involuntary relinquishment of registration, if any.  Medical Staff Services (or the CVO) shall confirm each Applicant's DEA registration through primary source verification prior to appointment and reappointment and at time of expiration.

**2.3.9   Specified Pre-Conditions.**
The Governing Body may precondition appointment, reappointment, and/or the granting or continued exercise of Clinical Privileges upon the Applicant's agreement to comply with certain conditions or restrictions, including but not limited to, the Applicant's agreement to undergo mental or physical examinations, tests and/or other evaluations the Governing Body deems appropriate to evaluate and/or ensure that there is no change in the Applicant's qualifications and ability to exercise Clinical Privileges and provide quality care and supervision to Applicant's patients.

---

[29] 21 C.F.R. 1301.12 (b)(3).  When an Applicant practices in more than one State, he or she must obtain a separate registration for each State.  See Fed. Reg. December 1, 2006 (Vol. 71, No. 231) pages 69478-69480.

Current as of July 19, 2011
V.5 Oshkosh Medical Staff Bylaws
ADOPTED 7-19-2011.DOC

Aurora Health Care

Page 13 of 90

Case 1:13-cv-00152-WCG     Filed 03/29/13     Page 16 of 93     Document 10-2

**2.3.10  Signed Acknowledgement**.

Each Application must include the Applicant's specific, written acknowledgement that the Applicant:

(a)  Authorizes the release and exchange of all information necessary for the review and evaluation of services provided by or conduct of the Applicant;

(b)  Releases the Medical Center and its affiliates from acts performed in good faith in connection with the Application;

(c)  Acknowledges the Applicant's responsibility to promptly notify and provide information to the Administrator regarding any changes to the Applicant's qualifications;

(d)  Acknowledges that the Applicant has received and read copies of the Medical Staff Bylaws, the Policies Governing Medical Practices, and associated Medical Center policies, and agrees to be bound by and comply with the same;

(e)  Authorizes the posting of the Applicant's affiliation with the Medical Center on the Medical Center's website; and

(f)  Acknowledges that if the Applicant participates in research activities, the Applicant must perform such activities in accordance with applicable regulations and Medical Center policies, and must provide prior written notification of any research activities to the Medical Center's IRB.

**2.3.11  Current and Past Employment, Staff Membership, and Privileges**.[30]

(a)  Employment, Staff Memberships, and Privileges.  Each Applicant must provide contact names and addresses of institutions, organizations and entities with which: (1) the Applicant is currently employed, , has staff membership, or holds privileges; and (2) the Applicant was employed, had staff membership, or held privileges during the five (5) years prior to the Application date[31]; and

(b)  Termination and Limitations.  Any information regarding the voluntary or involuntary termination of the Applicant's employment, staff membership, or limitation, reduction, denial or loss of clinical privileges at any other institution, organization, or entity.[32]

For initial Applicants, primary source verification will be performed for: (1) current staff memberships and privileges (and, if desired, current employment); and (2) previous staff memberships and privileges (and, if desired, previous employment);  held by the Applicant during the five (5) years prior to the Application date.  Staff membership, privileges and employment held by an initial Applicant prior to the five (5) years preceding the Application date may be verified through primary source verification at the discretion of the Medical Staff.  For reappointment Applicants or Applicants seeking

---

[30] JCS MS.06.01.05, EP 9 (Jan. 2009).
[31] Wis. Admin. Code DHS § 124.12(4)(a)3. (2009).
[32] JCS MS.06.01.13, EP 3 (Jan. 2009).

Current as of July 19, 2011
V.5 Oshkosh Medical Staff Bylaws
ADOPTED 7-19-2011.DOC

 Aurora Health Care

Page 14 of 90

Case 1:13-cv-00152-WCG   Filed 03/29/13   Page 17 of 93   Document 10-2

additional privileges, primary source verification shall only be performed for the Applicant's current staff memberships and privileges (and, if desired, employment);.

**2.3.12 Absence of Criminal Background**.

Each initial Applicant (except Applicants to the Telemedicine Medical Staff), must complete a Background Disclosure Form and consent to and cooperate with the performance of a background check, the results of which do not prevent the Medical Center from extending Staff Membership or Clinical Privileges to the Applicant.[33] Medical Staff Services (or the CVO) will review the Background Information Disclosure form and complete the caregiver background check. Thereafter, Medical Staff Services will conduct an electronic background search for all reappointment Applicants (except reappointment Applicants to the Telemedicine Medical Staff) at least every four (4) years.[34]

**2.3.13 National Practitioner Data Bank Report**.[35]

Medical Staff Services (or the CVO) will obtain an NPDB report for all initial and reappointment/renewal Applicants, and all current Staff Members seeking modified Clinical Privileges. Such NPDB report must not contain information which would prevent the Medical Center from extending Staff Membership and Clinical Privileges to the Applicant.

**2.3.14 Telemedicine Services Agreement**.

Each Telemedicine Medical Staff Applicant must have, or be affiliated with a Telemedicine Service Organization (TSO) which has a current, written telemedicine service agreement with the Medical Center or an entity affiliated with the Medical Center. If the Applicant is affiliated with and has been granted privileges by a TSO, the Applicant must be in good standing with such TSO and provide written documentation of his/her current privileges.

**2.3.15 Collaboration or Supervisory Agreement.**

Advanced Practice Professionals must provide a copy of a written collaboration or supervisory agreement as requested by Medical Staff Services.

**2.3.16 TB and Immunization Status**.[36]

Each Applicant must provide documentation related to the Applicant's TB and immunization status as requested by Medical Staff Services (or the CVO) (not required for Telemedicine Medical Staff Applicants).

**2.3.17 Certification of Fitness; Physical and Psychological Examination.**[37]

Each Applicant must submit a statement that no health problems exist that would adversely affect the Applicant's ability to exercise requested Clinical Privileges and

---

[33] Wis. Stat. §§ 48.685 and 50.065 (2008) (Note: a caregiver background check is not required for Applicants who will not have direct contact with patients.).
[34] The background check may not be delegated to a TSO.
[35] JCS MS.06.01.05, EP 7 (Jan. 2009).
[36] JCS MS.06.01.05, EP 9 (Jan. 2009).
[37] JCS MS.06.01.05, EP 6 (Jan. 2009).

Current as of July 19, 2011
V.5 Oshkosh Medical Staff Bylaws
ADOPTED 7-19-2011.DOC

Aurora Health Care

Page 15 of 90

Case 1:13-cv-00152-WCG    Filed 03/29/13    Page 18 of 93    Document 10-2

otherwise care for patients. Upon the request of any member of the Credentials Committee, Medical Executive Committee or Governing Body, each Applicant agrees to undergo mental or physical examinations, tests and/or other evaluations deemed appropriate to evaluate the Applicant's ability to exercise Clinical Privileges. If there is a known mental or physical impairment, the Applicant will provide evidence that the impairment does not interfere with the Applicant's ability to exercise Clinical Privileges.

**2.3.18  Professional Liability Insurance**.

Each Applicant must submit a current Certificate of Insurance evidencing professional malpractice insurance coverage with limits not less than those specified in Wis. Stat. ch. 655 or successor statutes thereto and must maintain such insurance coverage.

**2.3.19  Claims, Lawsuits, Settlements and Judgments**.

Each Applicant must provide a listing and description of all claims, settlements, judgments and lawsuits pending or closed, which have been filed against the Applicant in the previous ten (10) years. Each Applicant shall provide the following information relating to any claims or actions for damages against the Applicant (pending or closed within the previous ten (10) years), regardless of whether there has been a final disposition: (a) the name of liability carrier at the time of the incident giving rise to the claim; (b) the docket number; (c) the name, address and age of claimant or plaintiff; (d) the nature and substance of the claim; (e) the date and place at which the claim arose; (f) amounts paid if any and the date and manner of disposition, judgment, settlement, or otherwise; (g) the date and reason for final disposition, if no judgment or settlement; and (h) any additional information requested by the Credentials Committee, Medical Executive Committee, or Governing Body.[38]

**2.3.20  Confirmation of Identity**.[39]

Each initial Applicant (not required at reappointment/renewal or for Telemedicine Medical Staff Applicants) must provide:

(a)  <u>Current Photo</u>. A head shot photo of the Applicant, minimum size of 2" x 2" taken within the past two (2) years, showing current appearance and full face with a light background, either in color or black and white. The photo must be on photo quality paper, not a copy. Note: The Applicant's photo is exclusively used to confirm the Applicant's identity and the Applicant's appearance on the photo is not otherwise considered during the credentialing and privileging process.

(b)  <u>Photo Identification</u>. A valid picture ID of the Applicant issued by a state or federal agency (e.g. driver's license or passport). The copy must be clear enough to compare it with the head shot photo described above.

Medical Staff Services (or the CVO) shall compare each initial Applicant to the Applicant's current valid picture ID issued by a state or federal agency (e.g. driver's license or passport.) A copy of the current photo shall also be sent to the Applicant's peer references to confirm the Applicant's identity.

---

[38] Wis. Admin. Code DHS § 124.12(4)(a)4. (2009); JCS MS.06.01.05, EP 9 (Jan. 2009).
[39] JCS MS.06.01.03, EP 5 (Jan. 2009).

Current as of July 19, 2011
V.5 Oshkosh Medical Staff Bylaws
ADOPTED 7-19-2011.DOC

Aurora Health Care

Page 16 of 90

Case 1:13-cv-00152-WCG  Filed 03/29/13  Page 19 of 93  Document 10-2

**2.3.21 Continuing Education.**[40]

Each Applicant must attest in writing that the Applicant has completed the required number of acceptable continuing education hours required under the Applicant's licenses and provide additional information about his/her participation in continuing education programs upon request.

**2.3.22 Change in Qualifications.**

Each Applicant seeking reappointment and/or modification of current Clinical Privileges must describe in writing any changes to the Applicant's qualifications for Staff Membership and/or Clinical Privileges.

**2.3.23 Alternative Coverage.**

Each Applicant must have alternate coverage available as required by the Policies Governing Medical Practices and applicable Departmental policies.

**2.3.24 Other Information.**

Each Applicant must provide other information requested and deemed by the Clinical Chairperson, Medical Executive Committee, and/or Governing Body to be relevant to the evaluation of the Applicant's ability to exercise Clinical Privileges.

## 2.4 Obtaining and Submitting an Application

**2.4.1 Obtaining an Application.**

Individuals seeking appointment, reappointment, Clinical Privileges (including initial or modified Clinical Privileges), and/or modification of Medical Staff category must submit a complete written Application.

(a) Initial Appointment and Clinical Privileges. An individual seeking initial appointment and/or Clinical Privileges may request an Application by contacting Medical Staff Services (or the CVO). Unless the Applicant is seeking Honorary Medical Staff membership, Medical Staff Services (or the CVO) personnel may contact the prospective Applicant to confirm that the prospective Applicant meets the following basic criteria:

    i. Possess a current, unrestricted license to practice his/her profession in Wisconsin;

    ii. Can provide peer recommendations as provided in Section 2.3 of these Bylaws;

    iii. Is eligible for participation in the state and federal reimbursement programs as provided in Section 2.3;

---

[40] JCS MS.12.01.01, EP 5 (Jan. 2009).

Current as of July 19, 2011
V.5 Oshkosh Medical Staff Bylaws
ADOPTED 7-19-2011.DOC

Aurora Health Care

Page 17 of 90

Case 1:13-cv-00152-WCG    Filed 03/29/13    Page 20 of 93    Document 10-2

iv. Can provide a current certificate of insurance evidencing professional liability coverage with limits not less than those specified in Wisconsin Statutes Chapter 655 or successor statutes thereto; and

v. Practices in a specialty that is open to new Applicants (In accordance with Section 2.1.5 certain specialties, may be closed to new Applicants if the Medical Center enters into an exclusive agreement to secure such specialty services.).

If the prospective Applicant confirms he/she meets such criteria, Medical Staff Services (or the CVO) shall send the appropriate Application to the potential Applicant, or make the Application accessible to the potential Applicant electronically. If a CVO or TSO will participate in the credentials verification process, the Application or a portion of the Application may be sent to the Applicant by the CVO or TSO. Applicants to the Honorary and Telemedicine Medical Staff may receive an abbreviated Application. If the prospective Applicant does not meet the basic qualifications above, Medical Staff Service personnel shall inform the Applicant that the Medical Center will not provide or process an Application unless all such criteria are met. The failure to meet the criteria above and the denial of an Application on that basis shall not entitle a prospective Applicant to hearing or appeals rights under these Bylaws.

(b) <u>Reappointment and Renewal of Clinical Privileges</u>. Medical Staff Services (or the CVO) will send to each Applicant for reappointment/renewal the appropriate Application at least twelve (12) weeks prior to the Applicant's reappointment/renewal date. Reappointment/renewal dates are defined as the Applicant's month of birth on the odd or even year of birth. If a CVO or a TSO will participate in the credentials verification process, the Application or a portion of the Application may be sent by the CVO or TSO. Honorary Medical Staff Members do not need to complete the reappointment application/review process.

(c) <u>Modification of Medical Staff Category or Clinical Privileges</u>. An individual seeking to modify his/her Medical Staff category or his/her current Clinical Privileges must request the appropriate Application from Medical Staff Services. Medical Staff Services shall send the appropriate Application to the potential Applicant, or make the Application accessible to the potential Applicant electronically, unless the particular Clinical Privileges sought are not available to the Applicant.

(d) <u>Honorary Medical Staff Members</u>. Refer to Section 3.7

(e) <u>Temporary, Emergency, and Disaster Privileges</u>. Refer to Section 2.7

(f) <u>Previously Denied or Terminated Applicants</u>. An individual who is subject to an Adverse Action regarding appointment, reappointment and/or Clinical Privileges, shall not be permitted to submit the same or a similar Application for at least two (2) years after notice of the Adverse Action, unless the Adverse Action provides

Current as of July 19, 2011
V.5 Oshkosh Medical Staff Bylaws
ADOPTED 7-19-2011.DOC

Aurora Health Care

Page 18 of 90

Case 1:13-cv-00152-WCG    Filed 03/29/13    Page 21 of 93    Document 10-2

otherwise. Applications submitted during this two (2) year period shall be returned to the Applicant, and no right of hearing or appellate review shall be available in connection with the return of such Application. An Application submitted subsequent to the two year period shall be processed as an initial Application.

**2.4.2   Application Submission**.

(a)   <u>Initial Appointment</u>.   Initial Applicants must submit a complete Application (including required supporting documentation specified in the Application) to Medical Staff Services (or the CVO) within ninety (90) days of the Applicant's receipt of the Application. If a complete Application is not submitted within ninety (90) days of the Applicant's receipt of the initial Application, the Application will be considered withdrawn, no further processing will take place, and the Applicant shall not be entitled to hearing and appellate review rights.

(b)   <u>Reappointment/Renewal</u>.   Reappointment/renewal Applicants must submit a complete Application (including required supporting documentation specified in the Application) to Medical Staff Services at least sixty (60) days prior to the expiration of the Applicant's then current term. An Applicant who fails to timely submit a reappointment/renewal Application will be deemed to have voluntarily relinquished his/her Staff Membership and all Clinical Privileges upon expiration of the Applicant's then current term. If the Applicant can show good cause for his/her failure to timely submit the Application, the Applicant may submit a written request to the Medical Executive Committee requesting that he/she be permitted to maintain his/her Staff Membership and Clinical Privileges for a limited period. Such a request may be reviewed and approved by the Medical Executive Committee and the Governing Body for a period not to exceed sixty (60) days. Refusal to consider or approve such request shall not entitle the reappointment/renewal Applicant to hearing or appellate review rights. If such a request is not approved, the Applicant must complete an initial Application, meet all of the requirements for initial appointment and Clinical Privileges, and pay any applicable Application fee.

(c)   <u>Modification of Medical Staff Category or Clinical Privileges</u>.   Requests for modification of Medical Staff category or current Clinical Privileges may be submitted at any time. However, such requests will not be accepted or considered within the twelve (12) month period following an Adverse Action regarding a similar request, unless the Adverse Action provides otherwise.

**2.4.3   Applicant's Burden**.

Each Applicant shall have the burden of producing complete, accurate and adequate information to allow a proper evaluation of and resolve any doubts related to his/her qualifications. This burden may include completion of a medical, psychiatric, or psychological examination, at the Applicant's expense, if deemed appropriate by the Medical Executive Committee, which may also select the examining physician. The Applicant's failure to sustain this burden or the provision of information containing misrepresentations or omissions may be grounds for denial of an Application.

Case 1:13-cv-00152-WCG   Filed 03/29/13   Page 22 of 93   Document 10-2

## 2.5    REVIEW AND EVALUATION PROCESS

### 2.5.1    Generally.

Prior to making a recommendation or decision regarding an Application, Medical Staff Services, the appropriate Clinical Chairperson, the Credentials Committee, the Medical Executive Committee, and the Governing Body will review all relevant information regarding the Applicant and verify that the Applicant meets the qualifications for Staff Membership and Clinical Privileges set forth in these Bylaws.  The Clinical Chairperson, the Credentials Committee, the Medical Executive Committee, and/or the Governing Body may contact any of the Applicant's peer references for additional information, and/or request an interview with the Applicant.

### 2.5.2    Anticipated Time Periods for Application Processing.[41]

All individuals and groups required to act on an Application shall do so in a timely and good faith manner[42] and, except for good cause (including without limitation a delay on the part of the Applicant), each Application should be processed within the time periods set forth below, measured from the receipt of a completed Application.  These time periods are deemed guidelines and do not create any right to have an Application processed within these precise periods.  If the provisions of the corrective action, or hearing and appellate review processes specified in these Medical Staff Bylaws are initiated, the time requirements provided therein shall govern the continued processing of the Application.

| Individual/Group | Time Period |
|---|---|
| Medical Staff Services (and CVO or TSO) | 60 days |
| Clinical Chairperson | Prior to next Credentials Committee Meeting |
| Credentials Committee | Next Scheduled Meeting |
| Medical Executive Committee | Next Scheduled Meeting |
| Governing Body | Next Scheduled Meeting |

### 2.5.3    Initial Review by Medical Staff Services.[43]

(a)    Initial Review.  Medical Staff Services shall maintain a separate credentials file for each individual Applicant.[44]  Medical Staff Services (and/or a designated CVO or TSO) will perform an initial review of each Applicant's credentials file to ensure that it includes: (a) a complete Application; (b) verification of the Applicant's credentials (including primary source verification of certain qualifications as set forth in Section 2.3); and (c) all other required documentation.  If the Applicant's credentials file is deemed complete, it will be forwarded to the appropriate Clinical Chairperson for review.

---

[41] JCS MS.06.01.05, EP11 (Jan. 2009).
[42] JCS MS.06.01.07, EP 3 (Jan. 2009).
[43] JCS MS.01.01.01, EP 16; JCS MS.06.01.03, EP 1-4, 6 (Jan. 2009).
[44] 42 C.F.R. § 482.22(a)(1)-(2) (Interpretive Guidelines, effective October 17, 2008).

Current as of July 19, 2011
V.5 Oshkosh Medical Staff Bylaws
ADOPTED 7-19-2011.DOC

Aurora Health Care

Page 20 of 90

Case 1:13-cv-00152-WCG    Filed 03/29/13    Page 23 of 93    Document 10-2

(b)    <u>Incomplete Credentials File</u>.  It is the sole responsibility of each Applicant to submit all the qualifying information and supporting documentation described in these Bylaws, or as otherwise requested by the Medical Staff, on the approved forms and in the manner requested.  The Medical Center is under no obligation to act on an Application until all such information and supporting documentation has been received (even if the missing information is to be provided by a third party).  If the required information and documentation have not been submitted, the Applicant's file will be deemed incomplete.  Medical Staff Services will notify the Applicant of the deficiencies and that the Applicant's failure to correct such deficiencies within thirty (30) days may be deemed a voluntary withdrawal of the Application.  The Applicant shall not be entitled to hearing or appellate review rights in connection with such voluntary withdrawal.

**2.5.4   Clinical Chairperson Review and Recommendation**.

The Clinical Chairperson shall determine whether the Applicant's peer recommendations and professional practice review data is sufficient to assess the Applicant's competence to perform the requested Clinical Privileges.  If not, the Clinical Chairperson shall refer the Applicant's credentials file back to Medical Staff Services and Medical Staff Services shall request that the Applicant provide additional information or peer recommendations.  If the Applicant's peer recommendations and professional practice review data are sufficient, the Clinical Chairperson shall complete the evaluation described in Section 2.5.1 and submit a written recommendation to the Credentials Committee that includes the following:

(a)    <u>Staff Membership</u>. Whether the Applicant's request should be approved or disapproved, the appropriate Medical Staff category (as applicable), and the appropriate Department.  If the recommendation regarding Staff Membership or Medical Staff category is adverse to the Applicant, the written recommendation shall clearly state the reason(s) for such Adverse Action.

(b)    <u>Clinical Privileges</u>.  Whether the Applicant's request should be approved or disapproved, in whole or in part, and whether there are any recommended conditions or restrictions.  If the Applicant seeks initial or modified Clinical Privileges, the written recommendation shall include a focused professional practice evaluation method to be instituted in accordance with the Medical Center's peer review policy.[45]  If the recommendation regarding Clinical Privileges is adverse to the Applicant, in whole or in part, the written recommendation shall clearly state the reason(s) for such Adverse Action.

**2.5.5   Credentials Committee Review and Recommendation**.

Upon completion of the evaluation described in Section 2.5.1 and review of the Clinical Chairperson's written recommendation, the Credentials Committee will submit a written recommendation to the Medical Executive Committee that includes the information set forth in Sections 2.5.4(a) and (b).  If the Credentials Committee disagrees with the recommendation of the Clinical Chairperson or the recommendation is adverse to the

---

[45] JCS MS.08.01.01, EP 1 (Jan. 2009).

Current as of July 19, 2011
V.5 Oshkosh Medical Staff Bylaws
ADOPTED 7-19-2011.DOC

Aurora Health Care

Page 21 of 90

Case 1:13-cv-00152-WCG   Filed 03/29/13   Page 24 of 93   Document 10-2

Applicant, in whole or in part, the Credentials Committee's written recommendation shall include the reason(s) for the alternative recommendation.

**2.5.6    Medical Executive Committee Review and Recommendation**.

Upon completion of the evaluation described in Section 2.5.1, and review of the written recommendations of the Clinical Chairperson and the Credentials Committee, the Medical Executive Committee will draft a written recommendation that includes the information set forth in Sections 2.5.4(a) and (b). If the Medical Executive Committee disagrees with the recommendations of the Clinical Chairperson or the Credentials Committee, in whole or in part, or the recommendation is adverse to the Applicant, the Medical Executive Committee's proposed recommendation shall include the reason(s) for the alternative recommendation. If the proposed recommendation is favorable to the Applicant, the Medical Executive Committee will submit its recommendation to the Governing Body. If the proposed recommendation is deemed an Adverse Action in accordance with the Medical Staff Bylaws, the Administrator (or his or her designee) will notify the Applicant of the proposed Adverse Action (including the reasons for such recommendation) and advise the Applicant of his/her hearing rights (if any) in accordance with these Medical Staff Bylaws. The Medical Executive Committee shall not submit the proposed Adverse Action to the Governing Body until the Applicant has had an opportunity to exercise his/her hearing rights (if any) in accordance with these Medical Staff Bylaws.

**2.5.7    Governing Body Review and Decision**.[46]

Upon completion of the evaluation described in Section 2.5.1, and review of the written recommendations of the Clinical Chairperson, the Credentials Committee, and the Medical Executive Committee, the Governing Body will issue a written decision that includes the information set forth in Section 2.5.4. The written decision may precondition appointment or reappointment, and granting or continued exercise of Clinical Privileges, upon the Applicant undergoing mental or physical examinations and/or such other evaluations as it may deem appropriate at that time or at any intervening time, to evaluate the Applicant's ability to exercise Clinical Privileges.

**2.5.8    Applicants to the Honorary Medical Staff**[47]

An Applicant to the Honorary Medical Staff need not meet the qualifications set forth in Section 2.3, nor complete the submission and review process set forth above. An Applicant to the Honorary Medical Staff must: (a) be recognized for his/her reputation and contributions to the health and medical sciences, as well as his/her contributions to the Medical Center; (b) continue to exemplify high standards of professional and ethical conduct; (c) complete the appropriate Application; (d) be recommended for Honorary Medical Staff Membership by at least two (2) Active Medical Staff appointees; and (e) be approved for membership on the Honorary Medical Staff by the Medical Executive Committee and the Governing Body.

---

[46] Wis. Admin. Code DHS § 124.12(4)(a)1. (2009).
[47] JCS MS.01.01.01, EPs 14, 26, and 27 (Jan. 2010);


Case 1:13-cv-00152-WCG    Filed 03/29/13    Page 25 of 93    Document 10-2

**2.6** **NOTIFICATION OF STAFF MEMBERSHIP AND CLINICAL PRIVILEGING DECISIONS**

**2.6.1 Notification of Applicant**.

(a) <u>Favorable Decision</u>. If the Governing Body's decision is favorable to the Applicant, the Administrator (or his or her designee) shall notify the Applicant in writing of the final decision of the Governing Body. The written notification will include, as applicable:

   i. that the Governing Body has approved the Applicant's request for appointment/reappointment or change in Medical Staff category;

   ii. the Medical Staff Category to which the Applicant is appointed or reappointed;

   iii. the Department assignment;

   iv. the delineation of Clinical Privileges granted;

   v. any special conditions or restrictions that apply; and

   vi. for all Applicants seeking initial or additional Clinical Privileges, a description of the focused professional practice evaluation method that will be used to evaluate the Applicant's ability to perform the privileges.[48]

(b) <u>Unfavorable Decision</u>. If Governing Body's decision is deemed an Adverse Action, the Administrator (or his or her designee) will provide the Applicant with Written Notice of the Adverse Action and advise the Applicant of his/her hearing rights in accordance with Section 5.3.1.

**2.6.2 Communication with Medical Center Departments**.
Medical Staff Services will ensure that the appropriate Departments and other Medical Center patient care areas are informed of the Clinical Privileges granted to an Applicant, as well as of any revisions or revocations of an Applicant's Clinical Privileges.[49]

**2.7** **TEMPORARY, EMERGENCY, AND DISASTER PRIVILEGES**

**2.7.1 Minimum Qualifications for Temporary Clinical Privileges**.[50]
All Applicants for temporary Clinical Privileges must meet the minimum qualifications set forth below:

(a) <u>License/Registration</u>. As described in Section 2.3 of these Bylaws. A Practitioner whose licensure or registration is or has been denied, limited, or challenged in any way is not eligible for temporary Clinical Privileges.[51]

---

[48] JCS MS.08.01.01, EP 1 (Jan. 2009).
[49] 42 C.F.R. § 482.22(a)(2) (Interpretive Guidelines, effective October 17, 2008); Wis. Admin. Code DHS § 124.12(4)(c)5. (2009).
[50] Wis. Admin. Code DHS § 124.12(4)(c)4. (2009).
[51] JCS MS.06.01.13, EP 3 (Jan. 2009).

Current as of July 19, 2011
V.5 Oshkosh Medical Staff Bylaws
ADOPTED 7-19-2011.DOC
Aurora Health Care
Page 23 of 90
Case 1:13-cv-00152-WCG    Filed 03/29/13    Page 26 of 93    Document 10-2

(b)     Board Status and Residency/Training Program.  As described in Section 2.3 of these Bylaws.

(c)     No Sanctions or Exclusion.  As described in Section 2.3 of these Bylaws.

(d)     DEA Registration.  As described in Section 2.3 of these Bylaws.

(e)     Signed Acknowledgement.  As described in Section 2.3 of these Bylaws.

(f)     Current and Past Affiliations.  As described in Section 2.3 of these Bylaws.  A Practitioner whose staff membership and/or clinical privileges have been involuntarily terminated, limited, reduced, or denied by the Medical Center or any other institution, organization, or entity is not eligible for temporary Clinical privileges.[52]

(g)     National Practitioner Data Bank Report.  As described in Section 2.3 of these Bylaws.

(h)     Professional Liability Insurance.  As described in Section 2.3 of these Bylaws.

(i)     Completed Background Disclosure Form.  As described in Section 2.3 of these Bylaws.  Temporary privileges may be granted while Medical Staff Services awaits the results of the background check.

(j)     Telemedicine Services Agreement.  As described in Section 2.3 of these Bylaws.

**2.7.2   Request for Temporary Clinical Privileges.**
The following Practitioners may request temporary Clinical Privileges by submitting a Clinical Privileges request to Medical Staff Services and providing the information necessary for verification of the minimum qualifications set forth in Section 2.7.1 of these Bylaws:

(a)     A Practitioner (including a locum tenens Practitioner) who has not submitted a complete Application for Staff Membership, but is seeking temporary Clinical Privileges in order to fulfill an important care, treatment or services need.

(b)     An Applicant (including a locum tenens Practitioner) who has submitted a complete Application that raises no concerns and is awaiting review and approval of the Medical Executive Committee and the Governing Body.[53]

**2.7.3   Granting of Temporary Clinical Privileges. [54]**

(a)     Credentials Verification.  Medical Staff Services (or a qualified CVS or TSO) will verify the Practitioner's credentials and forward the Clinical Privileges request and the credentials file to the Chief of Staff.

(b)     Review by Chief of Staff.  The Chief of Staff (or his/her designee) shall review the Clinical Privileges request and the credentials file.  If the Chief of Staff (or his/her designee) approves the request, he/she shall submit a written recommendation to

---

[52] JCS MS.06.01.13, EP 3 (Jan. 2009).
[53] JCS MS.06.01.13, Rationale (Jan. 2009).
[54] Wis. Admin. Code DHS § 124.12(5)(b)3. (2009).


Case 1:13-cv-00152-WCG   Filed 03/29/13   Page 27 of 93   Document 10-2

the Administrator (or his/her designee). If the Chief of Staff (or his/her designee) disapproves the request, Medical Staff Services shall notify the Practitioner of the denial.

(c)  <u>Review by Administrator</u>.  Upon receipt of a recommendation from the Chief of Staff, the Administrator (or his/her designee) shall review the Clinical Privileges request, the credentials file, and the Chief of Staff's recommendation.[55] The Administrator (or his/her designee) may grant temporary Clinical Privileges for a period of sixty (60) days, pending completion of the background check. Upon receipt of favorable background check results, the Practitioner may continue to exercise such temporary Clinical Privileges for an additional specified period not to exceed sixty (60) days (for a total of one hundred-twenty (120) days).[56] If the Administrator disapproves the request, Medical Staff Services shall notify the Practitioner of the denial.

### 2.7.4  Emergency Privileges.

In an emergency situation (defined as a circumstance in which immediate action is necessary to prevent serious harm or death), any Staff Member with Clinical Privileges may provide any type of patient care, treatment, or services necessary to prevent serious harm or death, regardless of his or her Medical Staff category or designated Clinical Privileges, as long as such care, treatment or services is within the scope of the Practitioner's license.[57] If time permits, such Practitioner, or other Medical Center staff members in attendance, shall attempt to locate an appropriately privileged Practitioner.

### 2.7.5  Disaster Privileges.

Disaster privileges may be granted to volunteer Practitioners only when the Medical Center's Emergency Operations Plan has been activated in response to a disaster and the Medical Center is unable to meet immediate patient needs.[58] Such disaster privileges may only be granted by the Administrator (or his/her designee) or the Chief of Staff (or his/her designee) in accordance with the Medical Center's policy regarding disaster privileges.[59]

### 2.7.6  Monitoring and Review.

Individuals exercising temporary or disaster Clinical Privileges shall act under the supervision and observation of the Clinical Chairperson of the Department to which he/she is assigned.[60] The Chief of Staff or the Administrator may impose special requirements in order to monitor and assess the quality of care rendered by the Practitioner exercising temporary or disaster Clinical Privileges.

[55] JCS MS.06.01.13, EP 4, 5 (Jan. 2009).
[56] Wis. Admin. Code DHS § 124.12(4)(c)4. (2009);  JCS.MS.06.01.13, EP 6 (Jan. 2009).
[57] JCS MS.06.01.13, Rationale (Jan. 2009).
[58] JCS MS.01.01.01, EP 17 (Jan. 2009); JCS EM.02.02.13, EP 1 (Jan. 2009); JCS EM.02.02.15, EP 1 (Jan. 2009).
[59] JCS EM.02.02.13, EP 2 (Jan. 2009);  JCS EM.02.02.15, EP 2 (Jan. 2009).
[60] JCS EM.02.02.13, EP 4, 6 (Jan. 2009); EM.02.02.15, EP 4, 6 (Jan. 2009).

Current as of July 19, 2011
V.5 Oshkosh Medical Staff Bylaws
ADOPTED 7-19-2011.DOC

 Aurora Health Care

Page 25 of 90

Case 1:13-cv-00152-WCG   Filed 03/29/13   Page 28 of 93   Document 10-2

**2.7.7 Termination of Temporary and Disaster Privileges**.

Temporary and disaster privileges shall automatically terminate at the end of the specific period for which they were granted. In addition, temporary and disaster privileges shall be immediately terminated by the Administrator (or his/her designee) upon notice of any failure by the Practitioner to comply with any special requirements. The Administrator (or his/her designee) may at any time, upon the recommendation of the Chief of Staff (or his/her designee), terminate a Practitioner's temporary or disaster privileges, effective upon the discharge of the Practitioner's patient(s) from the Medical Center. However, if the life or health of such patient(s) would be endangered by continued treatment by the Practitioner, any person authorized to impose a summary suspension in accordance with Section 4.2 of these Bylaws may terminate the Practitioner's temporary privileges, effective immediately. The Chief of Staff (or his/her designee) shall assign a Medical Staff appointee to assume responsibility for the care of such terminated Practitioner's patient(s) until discharge from the Medical Center. The wishes of the patient(s) shall be considered where feasible in selection of an alternative Practitioner.

**2.7.8 Hearing and Appellate Review Rights**.

An individual who has been granted temporary or disaster Clinical Privileges shall not be entitled to the hearing and appellate review rights afforded by these Bylaws as the result of his/her inability to obtain temporary or disaster Clinical Privileges and/or the termination of such temporary or disaster Clinical Privileges.

## 2.8 Ongoing Obligations

By signing and submitting an Application, or requesting temporary or disaster Clinical Privileges, each Applicant (or Staff Member, as applicable) signifies his/her agreement to the ongoing obligations set forth below:

**2.8.1 Maintain Qualifications.**

The Applicant agrees to maintain all necessary qualifications for Staff Membership and/or Clinical Privileges as set forth in Section 2.3 of these Bylaws.

**2.8.2 Appear for Interview**.

The Applicant agrees to appear for any requested interviews regarding his/her Application/request, or subsequent to appointment or the granting of Clinical Privileges, to appear for any requested interviews related to questions regarding the Applicant's qualifications, conduct or competence.

**2.8.3 Consultation and Review**.

The Applicant authorizes Medical Center representatives to consult with others who are or have been associated with the Applicant and who have information regarding the Applicant's competence and qualifications, and consents to the Medical Center's representatives' inspection of all records and documents evaluating the Applicant's professional qualifications and competence to carry out the Clinical Privileges requested by Applicant, as well as the Applicant's moral and ethical qualifications. The Applicant also agrees the Medical Center may obtain an evaluation of the Applicant's performance

Current as of July 19, 2011
V.5 Oshkosh Medical Staff Bylaws
ADOPTED 7-19-2011.DOC

Aurora Health Care

Page 26 of 90

Case 1:13-cv-00152-WCG    Filed 03/29/13    Page 29 of 93    Document 10-2

by a consultant selected by the Medical Center if the Medical Center considers it appropriate.

### 2.8.4  Provide Continuous Care.

Upon the granting of Staff Membership and Clinical Privileges, the Applicant agrees to: (a) provide or arrange for continuous care to his/her patients at the professional level of quality and efficiency established by the Medical Center; (b) delegate in his/her absence the responsibility for diagnosis and care of his/her patients to a qualified Practitioner who possesses the Clinical Privileges necessary to assume care of such patients; and (c) seek consultation with another Practitioner who possesses appropriate Clinical Privileges in any case when the clinical needs of the patient exceed the Clinical Privileges of the Practitioner(s) currently attending the patient, or as otherwise required by the Medical Center's policies regarding consultation.[61]

### 2.8.5  Comply with Ethical Guidelines.

The Applicant agrees to strictly abide by the Principles of Medical Ethics of the American Medical Association, the American Podiatric Medical Association, Inc., the American Osteopathic Association, the Code of Ethics of the American Dental Association, or other applicable ethical principles or codes for the appropriate professional association of the Practitioner, as if the same were appended to and made a part of these Bylaws.

### 2.8.6  Comply With Laws and Policies.

The Applicant agrees to strictly abide by: (a) these Bylaws, the Policies Governing Medical Practices, and all other rules, policies and procedures, guidelines, and other requirements of the Medical Staff and the Medical Center; and (b) all local, state and federal laws and regulations, TJC standards, and professional review regulations and standards, as applicable to the Applicant's professional practice.

### 2.8.7  Mandatory Self-Disclosure.[62]

The Applicant agrees to notify the Administrator in writing immediately after he/she becomes aware (in no event later than the end of the next business day) of any of the following:

(a)     Any circumstance or condition which would affect or result in a change in status of any of the Applicant's qualifications for Staff Membership and/or Clinical Privileges as set forth in these Bylaws;

(b)     Any disciplinary action or restriction related to the Applicant's professional practice by any entity (including but not limited to the Applicant's employer, other hospitals, health plans, and agencies);

(c)     Changes to the Applicant's participation in any health plan;

---

[61] JCS MS.03.01.03, EP 4, 5 (Jan. 2009).

[62] See Wisconsin Department of Health and Family Services, Office of Quality Assurance, OQA Memo 07-005, entitled *Anniversary of the Wisconsin Caregiver Law*, dated March 30, 2007.

Case 1:13-cv-00152-WCG    Filed 03/29/13    Page 30 of 93    Document 10-2

(d)     Discharge from any branch of the US Armed Forces, including any reserve component;

(e)     If the Applicant is admitted for, seeks, or is undergoing treatment for substance or alcohol abuse or a behavioral health problem. "Substance abuse" shall include but not be limited to, use or ingestion of illegal drugs, or use or ingestion of prescription medications not prescribed in the ordinary course of treatment of injury or disease. "Behavioral health problem" shall mean any condition or disease of a psychiatric or psychological nature which, in the opinion of a qualified psychiatrist, adversely affects the Practitioner's ability to care for patients or practice his profession in accordance with the applicable prevailing standard of care;

(f)     Changes in residency;

(g)     Any criminal or quasi-criminal (felony, misdemeanor or ordinance) proceedings against the Applicant, including arrest, charge, arraignment, or indictment, even if the charges against the Applicant were dropped, filed, dismissed, expunged or otherwise discharged.  Applicants must also report: convictions for felonies and misdemeanors; nolo contendere pleas; matters where sufficient facts of guilt were pled or found; matters that were continued without a finding even if they were ultimately dismissed; and any other disposition which emanated from the contact with law enforcement.  A charge of Driving Under the Influence is not a "minor traffic offense" and must also be reported.

(h)     The investigation of allegations, or a finding by any governmental or regulatory agency, that the Applicant committed any act, offense or omission related to the abuse or neglect of any person, or misappropriation (improperly taking or using) the property of a client or other person; and

(i)     Requests by the Applicant to participate in a rehabilitation review with the Wisconsin Department of Health Services (DHS), a county department, private child placing agency, school board, or DHS designated tribe.[63]

### 2.8.8   Immunity from Liability.

The Applicant agrees and acknowledges that the Medical Center and all Medical Center representatives shall have absolute immunity from civil liability for actions performed in good faith in connection with providing, obtaining or reviewing information, and evaluating or making recommendations or decisions, concerning the following: (a) any Professional Review Activity; (b) any Professional Review Action; (c) any Adverse Action, corrective action, hearing or appellate review; (e) any FPPE, OPPE, or other evaluation of patient care services; (f) any utilization review; and (g) other Medical Center, departmental or committee activities related to patient care services and professional conduct.[64]   For purposes of this Section 2.8.8, the term "Medical Center representative" shall include, without limitation, the Medical Center's Staff Members, the

---

[63] See Wisconsin Department of Health and Family Services, Office of Quality Assurance, OQA Memo 07-005, entitled Anniversary of the Wisconsin Caregiver Law, dated March 30, 2007.
[64] Wis. Admin. Code DHS § 124.12(4)(a)4. (2009).


Case 1:13-cv-00152-WCG   Filed 03/29/13   Page 31 of 93   Document 10-2

Governing Body and its members, the Medical Executive Committee and its members, the Administrator, and Medical Center Officers, employees, agents, and any outside reviewers who provide or evaluate information concerning any Applicant's qualifications, clinical competency, character, mental or emotional stability, health, ethics or any other matter that might have an effect on patient care. In furtherance of the foregoing, each Applicant shall, upon request of the Medical Center, execute releases in favor of the Medical Center, Medical Center representatives and third parties from whom information has been requested by the Medical Center or an authorized Medical Center representative.

**2.8.9    Refrain From Fee Splitting**.
The Applicant agrees that he/she will not receive from or pay to another individual, either directly or indirectly, any part of a fee received for professional services, including but not limited to the division of fees between Medical Staff Members, except as may be permitted by law.[65]

**2.8.10   Perform Administrative and Medical Staff Duties**.
The Applicant agrees to perform such Medical Staff, Department, Committee, and Medical Center functions for which he/she is responsible based upon appointment, election, assignment, or otherwise, including as appropriate, participating in quality improvement and other monitoring activities, serving on Medical staff committees, and providing on-call coverage for emergency care services within his/her clinical specialty, as required by the Medical Staff.

**2.8.11   Cooperate With Medical Center**.
The Applicant agrees to cooperate with the Medical Center in matters involving its fiscal responsibilities and policies, including matters relating to payment or reimbursement by governmental and third party payers.

**2.8.12   Participate in Quality Improvement and Other Initiatives**.
The Applicant agrees to participate in peer review (including OPPE and FPPE), quality assessment, performance improvement, risk management, case management/resource management, initiatives to promote the appropriate utilization of Medical Center resources, and other Medical Center review and improvement initiatives as requested.

**2.8.13   Exhaustion of Remedies**.
The Applicant agrees that if an Adverse Action is taken or recommended, the Practitioner will exhaust the remedies afforded by these Bylaws before resorting to legal action.

**2.8.14   Submission of Medical Staff Dues**.
The Applicant agrees to pay Annual Medical Staff dues, if any, upon request. Dues shall be governed by the most recent action of the Medical Executive Committee. Honorary and Telemedicine Medical Staff Members will not be required to pay dues. Failure to

---

[65] Wis. Stat. § 448.08(1m) (2008); Wis. Admin. Code DHS § 124.12(5)(b)5. (2009).

Case 1:13-cv-00152-WCG    Filed 03/29/13    Page 32 of 93    Document 10-2

pay dues shall be considered a voluntary resignation as specified in Section 2.9 of these Bylaws.

## 2.9 LEAVE OF ABSENCE; VOLUNTARY RESIGNATION

### 2.9.1 Leave of Absence.

(a) <u>Request for Leave</u>.  A Staff Member may obtain a leave of absence from the Medical Staff for a period not to exceed one (1) year by submitting a written request to the Medical Executive Committee.  A leave shall be granted if approved by the Medical Executive Committee and the Governing Body.  The Medical Executive Committee and Governing Body may, in their discretion, extend a Staff Member's leave of absence for a period not to exceed one (1) additional year.

(b) <u>Reinstatement</u>.

    i. *Request for Reinstatement*.  At least thirty (30) days prior to the termination of the leave of absence, or at any earlier time, the Staff Member may request reinstatement of Staff Membership and Clinical Privileges by submitting a written request to the Chief of Staff.  The written request for reinstatement shall include an attestation that no changes have occurred in the status of any of the Practitioner's qualifications for Staff Membership or Clinical Privileges, or if changes have occurred, a detailed description of the nature of the changes and any additional information requested by the Chief of Staff, Administrator, Clinical Chairperson, Credentials Committee, Medical Executive Committee, and/or the Governing Body.

    ii. *Review Process*.  The Chief of Staff will forward the request for reinstatement to the member's Clinical Chairperson for a recommendation. The Clinical Chairperson shall forward his/her recommendation to the Credentials Committee.  The Credentials Committee shall make a recommendation and forward it to the Medical Executive Committee.  The Medical Executive Committee shall make a recommendation and forward it to the Governing Body for approval.  The refusal to reinstate a Practitioner following an approved leave of absence shall entitle the Practitioner to hearing and appellate review rights as provided in these Bylaws.

(c) <u>Failure to Return</u>.  Failure of a Practitioner to request reinstatement shall constitute a voluntary resignation from the Medical Staff, and shall not entitle the Practitioner to hearing or appellate review rights.  A Practitioner who seeks to regain his/her Staff Membership or Clinical Privileges following such voluntary resignation must complete an initial Application, meet all of the requirements for initial appointment and Clinical Privileges, and pay any applicable Application fee.

### 2.9.2 Voluntary Resignation.

Resignations from the Medical Staff must be submitted in writing to Medical Staff Services and must state the date the resignation becomes effective.  The Practitioner's

Current as of July 19, 2011
V.5 Oshkosh Medical Staff Bylaws
ADOPTED 7-19-2011.DOC

Aurora Health Care

Page 30 of 90

Case 1:13-cv-00152-WCG   Filed 03/29/13   Page 33 of 93   Document 10-2

Clinical Chairperson, the Administrator, the Medical Executive Committee, and the Governing Body shall be informed of all resignations. A Practitioner who voluntarily resigns may not submit a new Application for Staff Membership for at least nine (9) months from the Practitioner's resignation date. In unusual circumstances, exceptions may be granted by the Medical Executive Committee.

## 2.10 MEDICO-ADMINISTRATIVE APPOINTMENTS

### 2.10.1 Appointment.
A Staff Member who is appointed, employed, or under contract to perform administrative duties and who also renders clinical care must meet the qualifications for Staff Membership and necessary Clinical Privileges.

### 2.10.2 Termination.
The Governing Body may terminate the administrative functions of any Practitioner serving in a medico-administrative capacity by giving prompt Written Notice to such Practitioner (or the entity with which the Medical Center contracts to provide such administrative services) and the Medical Executive Committee. Such termination shall not affect such Practitioner's Staff Membership or Clinical Privileges except as provided in these Bylaws and/or in any contract with the Practitioner (or the entity with which the Medical Center contracts to provide such administrative services). If the termination is deemed an Adverse Action, the Administrator (or his or her designee) will provide Practitioner with Written Notice of the Adverse Action in accordance with these Medical Staff Bylaws (except as otherwise provided in any contract between the Medical Center and such Practitioner, or the Medical Center and the entity with which the Medical Center contracts to obtain such administrative services).

## 2.11 CONTRACT TERMINATION

For a Staff Member whose Staff Membership and clinical privileges are covered fully by means of a contract with the Medical Center, the termination of such contract shall constitute an automatic and voluntary resignation by the Staff Member of the Staff Member's membership and clinical privileges, unless prior to such termination, the Staff Member requests and is granted other clinical privileges, in which case membership shall continue and the Staff Member shall have the right to exercise such other granted privileges. Unless specifically provided to the contrary in the contract, resignation in accordance with this section, shall not give rise to a hearing or further appeal or review in accord with these Bylaws.

For a Staff Member who has a portion of his or her clinical privileges exercisable pursuant to a contract with the Medical Center, the termination of such contract shall constitute an automatic and voluntary resignation of the specific privileges covered by the contract. Unless specifically provided to the contrary in the contract, such resignation shall not give rise to a hearing or further appeal or review in accord with these Bylaws.. The Staff Member's clinical privileges not covered by the contract shall not be affected

Case 1:13-cv-00152-WCG    Filed 03/29/13    Page 34 of 93    Document 10-2

by the termination of the contract, or by the resignation of the privileges provided for in the contract, unless specifically provided to the contrary in the contract.

Current as of July 19, 2011
V.5 Oshkosh Medical Staff Bylaws
ADOPTED 7-19-2011.DOC

Aurora Health Care

Page 32 of 90

Case 1:13-cv-00152-WCG   Filed 03/29/13   Page 35 of 93   Document 10-2

# ARTICLE 3.  STAFF CATEGORIES

## 3.1   GENERALLY

### 3.1.1   Designation; Modification.
Each Staff Member shall be designated as a member of one of the staff categories set forth below.  At the time of appointment and each reappointment, each Staff Member's staff category shall be recommended by the Medical Executive Committee and approved by the Governing Body.[66]  Requests for modification of staff category shall be submitted and reviewed as set forth in Article 2 of these Bylaws.

### 3.1.2   Medical Staff.
Each Practitioner shall be designated as a member of one of the following Medical Staff categories[67]:
- Active
- Associate
- Courtesy
- Telemedicine
- Consulting
- Honorary

### 3.1.3   Advanced Practice Professional Staff.
Each Advanced Practice Professional shall be designated as a member of the Advanced Practice Professional Staff.

## 3.2   ACTIVE MEDICAL STAFF

### 3.2.1   Composition.
The Active Medical Staff shall consist of Medical Staff Members who:

(a)   have completed at least one year of Associate Staff Membership, unless the Medical Staff Member was appointed to the Active Medical Staff on or before October 1, 2003.

(b)   are located closely enough to the Medical Center to provide continuous care to their patients;

(c)   assume all the functions and responsibilities of appointment to the Active Medical Staff[68]; and

---

[66] 42 C.F.R. § 482.22(c)(3).
[67] Wis. Admin. Code DHS § 124.12(3)(b). (2009).
[68] Wis. Admin. Code DHS § 124.12(3)(a) (2009).

Current as of July 19, 2011
V.5 Oshkosh Medical Staff Bylaws
ADOPTED 7-19-2011.DOC

  Aurora Health Care

Page 33 of 90

Case 1:13-cv-00152-WCG   Filed 03/29/13   Page 36 of 93   Document 10-2

(d)    regularly admit patients to the Medical Center. "Regularly admit" means the Active Medical Staff Member has more than twenty-four (24) Patient Encounters each Medical Staff year during the most current two (2) year reappointment period. In the event an Active Medical Staff Member does not regularly admit patients to the Medical Center, the Administrator (or his/her designee) shall notify the Practitioner, and the Practitioner shall be deemed to have voluntarily requested reassignment to the Courtesy Medical Staff.

**3.2.2   Rights and Obligations**.

(a)    Active Medical Staff appointees shall be:

    i.    eligible to apply for Clinical Privileges (including the privilege to admit, perform procedures, and/or write orders[69]);

    ii.    encouraged to attend Medical Staff and Department meetings;

    iii.    eligible to vote at Medical Staff and Department meetings;

    iv.    eligible to serve in a voting capacity on and as chairperson of one or more Medical Staff committees;

    v.    eligible to hold Medical Staff office; and

    vi.    eligible to serve as a Clinical Chairperson.

(b)    As may be required by the Medical Executive Committee or the Governing Body, Active Medical Staff appointees must actively participate in recognized functions of Medical Staff appointment, including but not limited to, participating in quality improvement and other monitoring activities, serving on Medical Staff committees, and discharging other functions as may be required from time to time.

(c)    Active Medical Staff appointees must participate in emergency department back-up call and other specialty coverage programs in accordance with the Policies Governing Medical Practices and/or as requested by the Medical Executive Committee. At the discretion of the Clinical Chairperson of the applicable Department, Active Medical Staff appointees who have attained the age of sixty (60) years may be released from the obligation and responsibility of providing emergency department back-up call service.

## 3.3   ASSOCIATE MEDICAL STAFF

### 3.3.1   Composition.

The Associate Medical Staff shall consist of Medical Staff Members who are:

(a)    new to the Medical Staff and being considered for advancement to the Active Medical Staff;

---

[69] Wis. Admin. Code DHS § 124.12(5)(b)11. (2009).

Current as of July 19, 2011
V.5 Oshkosh Medical Staff Bylaws
ADOPTED 7-19-2011.DOC

Aurora Health Care

Page 34 of 90

Case 1:13-cv-00152-WCG   Filed 03/29/13   Page 37 of 93   Document 10-2

(b)  located closely enough to the Medical Center to provide continuous care to their patients; and

(c)  assume all the functions and responsibilities of appointment to the Associate Medical Staff.

Associate Medical Staff appointees may be advanced to the Active Medical Staff after one (1) year, or may serve an additional one (1) year period on the Associate Medical Staff upon recommendation of the Clinical Chairperson of the applicable Department. Time served by a Practitioner as a member of the Associate Medical Staff shall not exceed two (2) years, at which time failure to advance a Practitioner from the Associate Medical Staff to another Medical Staff category shall terminate such Practitioner's Medical Staff appointment.  Associate Medical Staff appointees shall be observed by the appropriate Clinical Chairperson or designee to assess clinical and professional performance and eligibility for advancement to another Medical Staff category.

**3.3.2  Rights and Obligations**.

(a)  Associate Medical Staff appointees shall be:

    i.  eligible to apply for Clinical Privileges (including the privilege to admit, perform procedures, and/or write orders[70]);

    ii.  eligible to attend Medical Staff meetings in a non-voting capacity (an Associate Medical Staff Member who serves as a Clinical Chairperson may vote at Medical Staff meetings.);

    iii.  required to attend Medical Staff meetings in a non-voting capacity, if his/her presence is requested by the Chief of Staff;

    iv.  encouraged to attend Medical Staff and Department meetings in a non-voting capacity;

    v.  eligible to serve on one or more Medical Staff committees in a voting or non-voting capacity;

    vi.  eligible to serve as a Medical Staff committee chairperson, if the Medical Executive Committee determines that such appointee has expertise that is not otherwise available;

    vii.  eligible to serve as a Clinical Chairperson, if the Medical Executive Committee determines that such appointee has expertise that is not otherwise available; and

    viii.  eligible to hold Medical Staff office, if the Medical Executive Committee determines that such appointee has expertise that is not otherwise available.

(b)  As may be required by the Medical Executive Committee or the Governing Body, Associate Medical Staff appointees must actively participate in recognized functions of Medical Staff appointment, including but not limited to, participating

---

[70] Wis. Admin. Code DHS § 124.12(5)(b)11. (2009).

Case 1:13-cv-00152-WCG    Filed 03/29/13    Page 38 of 93    Document 10-2

in quality improvement and other monitoring activities, serving on Medical Staff committees, and discharging other functions as may be required from time to time.

(c)    Associate Medical Staff appointees must participate in emergency department back-up call and other specialty coverage programs in accordance with the Policies Governing Medical Practices and/or as requested by the Medical Executive Committee. At the discretion of the Clinical Chairperson of the applicable Department, Associate Medical Staff appointees who have attained the age of sixty (60) years may be released from the obligation and responsibility of providing emergency department back-up call service.

## 3.4    COURTESY MEDICAL STAFF

### 3.4.1  **Composition**.
The Courtesy Medical Staff shall consist of Medical Staff Members who:

(a)    are members of the active or associate staff of another medical center where they actively participate in a patient care evaluation program and other quality management activities similar to those required of the Active Medical Staff of this Medical Center. In the event a Practitioner does not have active staff or associate staff privileges at another medical center, the Medical Executive Committee may waive this requirement if additional quality assurance measures are established;

(b)    are located closely enough to the Medical Center to provide continuous care to their patients;

(c)    assume all the functions and responsibilities of appointment to the Courtesy Medical Staff; and

(d)    occasionally admit patients to the Medical Center. A Medical Staff Member occasionally admits patients if he/she has no more than twenty-four (24) Patient Encounters at the Medical Center during any Medical Staff year. If a Courtesy Medical Staff appointee has more than twenty-four (24) Patient Encounters in any Medical Staff year, the Administrator (or his/her designee) shall notify the Practitioner and the Practitioner shall be deemed to have voluntarily requested reassignment to the Active Medical Staff.

### 3.4.2  **Rights and Obligations**.

(a)    Courtesy Medical Staff appointees shall be eligible to:

    i.    apply for Clinical Privileges (including the privilege to admit, perform procedures, and/or write orders[71]);

    ii.    attend Medical Staff and Department meetings in a non-voting capacity;

    iii.    serve on one or more Medical Staff committees in a non-voting capacity; and

---

[71] Wis. Admin. Code DHS § 124.12(5)(b)11. (2009).

Current as of July 19, 2011
V.5 Oshkosh Medical Staff Bylaws
ADOPTED 7-19-2011.DOC

Aurora Health Care

Page 36 of 90

Case 1:13-cv-00152-WCG   Filed 03/29/13   Page 39 of 93   Document 10-2

    iv.    serve on one or more Medical Staff committees in a voting capacity, if the Medical Executive Committee determines that such appointee has expertise that is not otherwise available.

(b)    Courtesy Medical Staff appointees shall **not** be eligible to:

    i.    serve as a Clinical Chairperson; or

    ii.    hold Medical Staff office.

(c)    At the request of the Medical Executive Committee, Courtesy Medical Staff Members shall participate in emergency department back-up call under exigent circumstances including, but not limited to, gaps in coverage caused by the lack of a particular specialty on the active or associate Medical Staff.

## 3.5    TELEMEDICINE MEDICAL STAFF

### 3.5.1  **Composition**.
The Telemedicine Medical Staff shall consist of Medical Staff Members who:

(a)    have been granted telemedicine privileges as their only Clinical Privileges at the Medical Center;

(b)    provide medical services within the Practitioner's area of expertise through a telemedicine link from a remote location; and

(c)    assume all the functions and responsibilities of appointment to the Telemedicine Medical Staff.

### 3.5.2  **Rights and Obligations**.

(a)    Telemedicine Medical Staff appointees shall be eligible to:

    i.    apply for telemedicine Clinical Privileges only;

    ii.    attend Medical Staff and Department meetings in a non-voting capacity; and

    iii.    serve on one or more Medical Staff committees in a voting or non-voting capacity and/or serve as a Medical Staff committee chairperson if the Medical Executive Committee determines that such appointee has expertise that is not otherwise available; and

(b)    Telemedicine Medical Staff appointees shall **not** be eligible to:

    i.    serve as a Clinical Chairperson; or

    ii.    hold Medical Staff office.

Current as of July 19, 2011
V.5 Oshkosh Medical Staff Bylaws
ADOPTED 7-19-2011.DOC

Aurora Health Care

Page 37 of 90

Case 1:13-cv-00152-WCG   Filed 03/29/13   Page 40 of 93   Document 10-2

### 3.6 CONSULTING MEDICAL STAFF

**3.6.1 Composition**.

The Consulting Medical Staff shall consist of Medical Staff Members who:

(a) have been granted consulting privileges as their only Clinical Privileges at the Medical Center;

(b) come to the Medical Center solely to provide consultation services to Staff Members regarding subject matter that is within the Practitioner's area of expertise; and

(c) assume all the functions and responsibilities of appointment to the Consulting Medical Staff.

**3.6.2 Rights and Obligations**.

(a) Consulting Medical Staff appointees shall be eligible for consulting Clinical Privileges only.

(b) Consulting Medical Staff appointees are eligible to attend Medical Staff, Department, or Medical Staff committee meetings in a non-voting capacity.

(c) Consulting Medical Staff appointees shall **not** be eligible to:

    i. serve on Medical Staff committees;

    ii. hold Medical Staff office;

    iii. serve as a Clinical Chairperson; or

    iv. participate in emergency department back-up call.

### 3.7 HONORARY MEDICAL STAFF

**3.7.1 Composition**.

The Honorary Medical Staff shall consist of Practitioners who are recognized for their reputations and their contributions to the health and medical sciences, as well as their contributions to the Medical Center. Honorary Medical Staff Members must complete the appropriate Application as requested and:

(a) be recommended for Honorary Medical Staff Membership by at least one Active Medical Staff appointee; and

(b) be approved for membership on the Honorary Medical Staff by the Medical Executive Committee and the Governing Body.

**3.7.2 Rights and Obligations**.

(a) Honorary Medical Staff appointees shall **not** be eligible for Clinical Privileges.

Current as of July 19, 2011
V.5 Oshkosh Medical Staff Bylaws
ADOPTED 7-19-2011.DOC

Aurora Health Care

Page 38 of 90

Case 1:13-cv-00152-WCG    Filed 03/29/13    Page 41 of 93    Document 10-2

(b)     Honorary Medical Staff appointees shall be eligible to:

    i.      attend Medical Staff, Department, and Medical Staff committee meetings in a non-voting capacity with the approval of the Chief of Staff; and

    ii.     serve on one or more Medical Staff committees in a voting or non-voting capacity and/or serve as a Medical Staff committee chairperson if the Medical Executive Committee determines that such appointee has expertise that is not otherwise available.

## 3.8     ADVANCED PRACTICE PROFESSIONAL STAFF

### 3.8.1   Composition.
The Advanced Practice Professional Staff shall consist of Advanced Practice Professionals who:

(a)     are located closely enough to the Medical Center to provide continuous care to their patients; and

(b)     assume all the functions and responsibilities of appointment to the Advanced Practice Professional Staff.

### 3.8.2   Rights and Obligations.

(a)     Advanced Practice Professional Staff appointees shall be eligible to:

    i.      apply for Clinical Privileges;[72]

    ii.     attend Medical Staff, Department and Medical Staff committee meetings in a non-voting capacity:

    iii.    serve on one or more Medical Staff committees in a non-voting capacity; and ;

    iv.     serve on one or more Medical Staff committee in a voting capacity, if the Medical Executive Committee determines that such appointee has expertise that is not otherwise available.

(b)     Advanced Practice Professional Staff appointees shall **not** be eligible to:

    i.      apply for admitting privileges;

    ii.     serve as a Medical Staff Officer;

    iii.    serve as a Clinical Chairperson; or

    iv.     vote in elections for Medical Staff Officers and Clinical Chairpersons.

(c)     As may be required by the Medical Executive Committee or the Governing Body, Advanced Practice Professional appointees must actively participate in recognized functions of Staff appointment, including but not limited to, participating in quality

---

[72] Wis. Adm. Code DHS § 124.12(5)(b)11.

Case 1:13-cv-00152-WCG     Filed 03/29/13     Page 42 of 93     Document 10-2

improvement and other monitoring activities, serving on Medical Staff committees, and discharging other functions as may be required from time to time.

(d) At the request of the Medical Executive Committee, Advanced Practice Professional Staff Members shall participate in emergency department back-up call under exigent circumstances including, but not limited to, gaps in coverage caused by the lack of a particular specialty on the Active Medical Staff.

## 3.9 CHANGE IN MEDICAL STAFF CATEGORY

Except for the automatic reassignment processes specified in Sections 3.2 and 3.4, a Medical Staff Member seeking to change his/her current Medical Staff category must submit the appropriate Application to Medical Staff Services. Such requests shall be reviewed and approved or denied using the same process set forth for Medical Staff appointment/reappointment.

Current as of July 19, 2011
V.5 Oshkosh Medical Staff Bylaws
ADOPTED 7-19-2011.DOC

Aurora Health Care

Page 40 of 90

Case 1:13-cv-00152-WCG   Filed 03/29/13   Page 43 of 93   Document 10-2

# ARTICLE 4.  CORRECTIVE ACTIONS

## 4.1   CORRECTIVE ACTION PROCESS

### 4.1.1   Application.

The procedures set forth in this Article 4 are applicable to Medical Staff Members and Advanced Practice Professional Staff Members.[73]

### 4.1.2   Written Request for Corrective Action.

The Administrator, the appropriate Clinical Chairperson, the Chief of Staff, three (3) or more Medical Staff Members, and/or the Governing Body, may submit a written request for corrective action (including a request to suspend or terminate Staff Membership and/or Clinical Privileges) ("Corrective Action Request") to the Medical Executive Committee whenever information indicates that a Staff Member's acts, omissions, demeanor, conduct or professional performance may be:

(a)   Below the standards or aims of the Medical Staff, including applicable professional standards or;

(b)   Detrimental to patient safety or to the delivery of quality care;

(c)   Unethical, disruptive or harassing; and/or

(d)   Contrary to these Bylaws, the Policies Governing Medical Practices, the policies of the Medical Center, or applicable laws, regulations, or accreditation standards.

A Corrective Action Request must be based on a reasonable belief that the action is in furtherance of quality health care[74] and supported by reference to the specific acts or omissions which constitute the grounds for the request.  The Chief of Staff (or his/her designee) shall notify the Administrator in writing within seven (7) days of the Medical Executive Committee's receipt of a Corrective Action Request, and will continue to keep the Administrator fully informed of all action taken in connection therewith.

### 4.1.3   Written Notice of Corrective Action Request.

The Administrator (or his/her designee) shall provide the affected Staff Member with Written Notice of the Corrective Action Request.  The Written Notice shall:

(a)   Advise the Staff Member of the Corrective Action Request and the basis therefore; and

(b)   Advise the Staff Member that he/she may request a preliminary interview with the Medical Executive Committee.

### 4.1.4   Preliminary Interview.

The Staff Member may request a preliminary interview with the Medical Executive Committee prior to its taking action on a Corrective Action Request.  At such preliminary

---

[73] Wis. Admin. Code DHS § 124.12(4)(c)6. (2009).
[74] 42 U.S.C. § 11112(a)(1).

Current as of July 19, 2011
V.5 Oshkosh Medical Staff Bylaws
ADOPTED 7-19-2011.DOC

Aurora Health Care

Page 41 of 90

Case 1:13-cv-00152-WCG   Filed 03/29/13   Page 44 of 93   Document 10-2

interview, the Staff Member shall again be apprised of the general nature of the Corrective Action Request and be afforded the opportunity to discuss, explain or refute the allegations. This preliminary interview shall not constitute a hearing and none of the procedural rules provided in these Bylaws with respect to hearings shall apply. A record of such preliminary interview shall be made by the Medical Executive Committee.

### 4.1.5 Medical Executive Committee Review and Action.

The Medical Executive Committee (or its designee) shall investigate the concerns described in the Corrective Action Request (and any other concerns or issues that arise during the course of its review) and make a reasonable attempt to obtain the facts related to such concerns.[75] Following such investigation, the Medical Executive Committee's action on the Corrective Action Request may include, but is not limited to, one or more of the following:

(a)     Rejection or modification of the Corrective Action Request;

(b)     Issuance of a warning;

(c)     Issuance of a letter of reprimand;

(d)     Requirement to complete specific education;

(e)     Imposition of a term of probation or monitoring;

(f)     Requirement to seek consultations;

(g)     Recommendation for reduction, suspension or revocation of Clinical Privileges;

(h)     Recommendation that an existing summary suspension of Clinical Privileges be terminated, modified or sustained;

(i)     Recommendation that the Staff Member's Staff Membership be revoked; and/or

(j)     Any other action which may be appropriate under the circumstances.

### 4.1.6 Written Notice of Adverse Action.

Before any action of the Medical Executive Committee that may be deemed an Adverse Action is forwarded to the Governing Body, the Administrator shall notify the affected Staff Member of the Adverse Action and the Staff Member shall be provided an opportunity to exercise his or her hearing rights (if any), as set forth in Article 5.

### 4.1.7 Communication with Medical Center Departments.

Medical Staff Services will ensure that the appropriate Departments and other Medical Center patient care areas are informed of any Adverse Actions that affect a Staff Member's Clinical Privileges, including but not limited to summary suspension, automatic suspension, and automatic termination.[76]

---

[75] 42 U.S.C. § 11112(a)(2).
[76] 42 C.F.R. § 482.22(a)(2) (Interpretive Guidelines, effective October 17, 2008).


Case 1:13-cv-00152-WCG     Filed 03/29/13     Page 45 of 93     Document 10-2

**4.1.8** **Enforcement and Alternative Coverage**.
The Chief of Staff shall enforce all corrective actions with the assistance of the Administrator and the applicable Clinical Chairperson(s). Immediately upon the imposition of a summary suspension, automatic suspension, or automatic termination, the Chief of Staff (or his/her designee) shall have authority to appoint an alternative Staff Member to provide medical coverage for the suspended/terminated Staff Member's patients who remain at Medical Center at the time of such suspension or termination. Unless otherwise decided by the Chief of Staff, such alternative coverage shall be the responsibility of the Staff Member who agreed, by signing the applicable form, to serve as the suspended/terminated Staff Member's alternate for coverage. The wishes of the patients shall be considered in the selection of such alternative Staff Member. The suspended/terminated Staff Member shall confer with the alternative Staff Member to the extent necessary to ensure continuous quality care.

## 4.2 SUMMARY SUSPENSION

**4.2.1** **Authority and Indications**.
The Chief of Staff, the Chief of Staff Elect, the Administrator, a majority of the Medical Executive Committee, or a majority of the Governing Body, shall each have the authority to summarily suspend all or any portion of a Staff Member's Clinical Privileges if the failure to take such action may result in imminent danger to the health, safety or welfare of any individual.[77]

**4.2.2** **Written Notice of Summary Suspension**.
The Administrator (or his/her designee) shall provide the affected Staff Member with Written Notice of the summary suspension ("Summary Suspension Notice"). Such summary suspension shall become effective on the Delivery Date of the Summary Suspension Notice. A written report stating the reasons for the summary suspension shall be submitted to the Medical Executive Committee by the suspending agent within 24 hours.

**4.2.3** **Informal Interview**.
A Staff Member whose Clinical Privileges have been summarily suspended shall be entitled to request (in writing and received by the Administrator within ten (10) days of the Delivery Date of the Summary Suspension Notice) an informal interview with the Medical Executive Committee within such reasonable time period thereafter as the Medical Executive Committee shall determine. The informal interview shall include at least: (a) a review of the written report stating the reasons for the summary suspension, and (b) an opportunity for the Staff Member to discuss the matter with the Medical Executive Committee. During such interview, the Staff Member shall be invited to discuss, explain or refute the allegations against the Staff Member. The Medical Executive Committee may request further information as required to make a recommendation regarding the summary action. This informal interview shall be

---

[77] 42 U.S.C. § 11112(c)(2).

Current as of July 19, 2011
V.5 Oshkosh Medical Staff Bylaws
ADOPTED 7-19-2011.DOC

Aurora Health Care

Page 43 of 90

Case 1:13-cv-00152-WCG   Filed 03/29/13   Page 46 of 93   Document 10-2

preliminary in nature and none of the procedural rules provided in Article 5 with respect to hearings shall apply, except that a record of the interview shall be made by the Medical Executive Committee.

**4.2.4** **Medical Executive Committee Recommendation**.

The Medical Executive Committee may recommend modification, continuance or termination of the terms of the summary suspension. Before any action of the Medical Executive Committee that may be deemed an Adverse Action is forwarded to the Governing Body, the Administrator shall notify the affected Staff Member of the Adverse Action and the Staff Member shall be provided an opportunity to exercise his or her hearing rights (if any), as set forth in Article 5. The terms of the summary suspension as sustained or as modified by the Medical Executive Committee shall remain in effect pending completion of the hearing and appellate review process.

## 4.3 AUTOMATIC SUSPENSION AND VOLUNTARY RELINQUISHMENT

**4.3.1** **Failure to Complete Medical Records**.

(a) <u>Delinquency Notice / Opportunity to Cure</u>. Whenever a Staff Member fails to complete medical records in accordance with the standards set forth in the Policies Governing Medical Practices and within fifteen (15) days after a patient's discharge, or fifteen (15) days from the date the medical record was made available to the Staff Member, the Medical Records Manager (or his/her designee) shall: (i) send a Written Notice of delinquency ("Delinquency Notice") describing the medical record(s) deficiencies; and (ii) forward a copy of the Delinquency Notice to the Administrator. The Delinquency Notice shall inform the Staff Member that:

    i. If the Staff Member fails to correct the medical record deficiencies within fifteen (15) days after the Delivery Date of the Delinquency Notice, the Staff Member's Clinical Privileges shall be automatically **suspended** effective as of 11:59 p.m. on the fifteenth day after the Delivery Date, and remain suspended until the medical record is complete; and

    ii. If the Staff Member fails to correct the medical record deficiencies within thirty (30) days after the automatic suspension, the Staff Member's appointment and Clinical Privileges shall be deemed to be **voluntarily relinquished**, effective as of 11:59 p.m. on the thirtieth (30th) day after the automatic suspension (requiring the Staff Member to complete an initial Application, meet all of the requirements for initial appointment and Clinical Privileges, and pay any applicable Application fee).

(b) <u>Automatic Suspension / Suspension Notice</u>. If the Staff Member fails to correct the medical record deficiencies within fifteen (15) days after Delivery Date of the Delinquency Notice, the Medical Records Manager shall notify the Administrator and the Administrator (or his/her designee) shall send a Written Notice of suspension ("Suspension Notice") to the Staff Member. The Suspension Notice shall inform the Staff Member that:

Current as of July 19, 2011
V.5 Oshkosh Medical Staff Bylaws
ADOPTED 7-19-2011.DOC

Aurora Health Care

Page 44 of 90

Case 1:13-cv-00152-WCG   Filed 03/29/13   Page 47 of 93   Document 10-2

i. The Staff Member's general admitting, consulting and surgical Clinical Privileges have been automatically **suspended** effective as of 11:59 p.m. on the fifteenth (15th) day after the Delivery Date of the Delinquency Notice, and the Staff Member may exercise his/her admitting, consulting and surgical Clinical Privileges in emergency circumstances only;

ii. If the Staff Member fails to correct the medical record deficiencies within thirty (30) days after the Delivery Date of the Suspension Notice, the Staff Member's appointment and Clinical Privileges (in their entirety) shall be deemed to be **voluntarily relinquished** effective as of 11:59 p.m. on the thirtieth (30th) day after the Delivery Date of the Suspension Notice.

iii. The Staff Member is invited to attend the next Medical Executive Committee meeting to discuss his/her failure to complete medical records (The Suspension Notice should also include the date and time of the next Medical Executive Committee meeting.); and

iv. If during the thirty (30) day suspension period, the suspended Staff Member appears before the Medical Executive Committee and provides a justifiable reason for his/her inability to complete the deficient records during the suspension period, the Medical Executive Committee may extend the suspension period from thirty (30) to forty-five (45) days (after which the Staff Member's appointment and Clinical Privileges shall be deemed to be voluntarily relinquished).

(c) <u>Voluntary Relinquishment / Voluntary Relinquishment Notice</u>. If the Staff Member fails to correct the deficiencies in the medical record(s) within thirty (30) days of delivery of the Suspension Notice (or within such time period otherwise specified by the Medical Executive Committee), the Medical Records Manager shall notify the Administrator and the Administrator shall send a Written Notice of voluntary relinquishment ("Voluntary Relinquishment Notice") to the Staff Member. The Voluntary Relinquishment Notice shall inform the Staff Member that:

i. The Staff Member's Staff Membership and Clinical Privileges have been deemed **voluntarily relinquished** effective as of 11:59 p.m. on the thirtieth (30th) day after the Delivery Date of the Suspension Notice (or on such date specified by the Medical Executive Committee);

ii. The Staff Member may no longer exercise any Clinical Privileges at the Medical Center, even in emergency circumstances; and

iii. If the Staff Member seeks to regain his/her status, he/she must complete an initial Application, meet all of the requirements for initial appointment and Clinical Privileges, and pay any applicable Application fee.

(d) <u>Completion of Medical Records</u>. If the Staff Member corrects the medical record deficiencies at issue prior to the voluntary relinquishment of Staff Membership and Clinical Privileges, the Staff Member's Staff Membership and Clinical Privileges shall be automatically reinstated without further action on the part of the Staff

Case 1:13-cv-00152-WCG    Filed 03/29/13    Page 48 of 93    Document 10-2

Member or any Medical Staff committee. The Medical Records Manager (or his/her designee) shall notify the Administrator when all medical records which had previously been reported as delinquent have been completed.

**4.3.2 Adverse Change in Licensure or Certification**.

(a) <u>Revocation and Suspension</u>. A revocation or suspension of a Staff Member's license, certification or other credential authorizing practice in this State shall be deemed to be a voluntary relinquishment of such Staff Member's Staff Membership and Clinical Privileges as of the date such revocation or suspension becomes effective.

(b) <u>Restriction</u>. If a Staff Member's license, certification or other credential authorizing practice in this State is limited, restricted or made subject to certain conditions (including without limitation, probation) by the applicable licensing or certifying authority, any of the Staff Member's Clinical Privileges which are within the scope of the state's limitation, restriction, or condition, shall be automatically suspended, limited, restricted or conditioned by the Medical Center in a similar manner, as of the date such state action becomes effective and throughout its term.

**4.3.3 Exclusion from Health Care Program**.

A Staff Member's exclusion from participation in Medicare, Medicaid or any health care program funded in whole or in part by the federal or state government, shall be deemed to be a voluntary relinquishment of such Staff Member's Staff Membership and Clinical Privileges as of the date such exclusion becomes effective.

**4.3.4 Adverse Change in DEA Certification**.

If a Staff Member's Drug Enforcement Administration (DEA) certification is revoked, suspended or voluntarily relinquished, or whenever such certification is subject to probation, the Staff Member shall immediately and automatically be divested of the right to prescribe medications covered by such number. As soon as reasonably possible after such automatic suspension, the Medical Executive Committee shall convene to review and consider the facts under which the DEA number was revoked, suspended or relinquished. The Medical Executive Committee may then take such further corrective action as may be appropriate under the circumstances.

**4.3.5 Failure to Maintain Professional Liability Insurance**.

(a) If a Staff Member fails to maintain the amount of professional liability insurance required and/or fails to submit a Certificate of Insurance as required under these Bylaws or as otherwise requested, the Staff Member's Staff Membership and Clinical Privileges shall be immediately and automatically suspended.

(b) The failure of the Staff Member to submit a Certificate of Insurance within one (1) month after the automatic suspension shall be deemed to be a voluntary relinquishment of the Staff Member's Staff Membership and Clinical Privileges.

(c) If the Staff Member submits a Certificate of Insurance prior to the voluntary relinquishment of Staff Membership and Clinical Privileges, the Staff Member's

Current as of July 19, 2011
V.5 Oshkosh Medical Staff Bylaws
ADOPTED 7-19-2011.DOC

Aurora Health Care

Page 46 of 90

Case 1:13-cv-00152-WCG    Filed 03/29/13    Page 49 of 93    Document 10-2

Staff Membership and Clinical Privileges shall be automatically reinstated without further action on the part of the Staff Member or any Medical Staff committee. Medical Staff Services shall notify the Administrator when the Certificate of Insurance has been received.

**4.3.6    Failure to Pay Dues**.

If a Staff Member fails to pay required dues, after written warning of delinquency and a specified time frame not to exceed thirty (30) days, the Staff Member's Staff Membership and Clinical Privileges, , shall be automatically suspended and shall remain so suspended until the Staff Member pays the delinquent dues.  A failure to pay such dues within six (6) months after the date the automatic suspension became effective shall be deemed to be a voluntary relinquishment of the Staff Member's Staff Membership and Clinical Privileges.

**4.3.7    Conviction of Serious Crime**.

If a Staff Member is convicted of a "Serious Crime" as such term is defined in Section 50.065 of the Wisconsin Statutes, or any successor statute thereto, and the Staff Member has not received rehabilitation approval pursuant to Section DHS 12.12 of the Wisconsin Administrative Code, or any successor regulation thereto, the Staff Member shall be deemed to have voluntarily relinquished such Staff Member's Staff Membership and Clinical Privileges as of the date of such conviction.

**4.3.8    Failure to Maintain Collaborative or Supervisory Relationship**.

If an Advanced Practice Professional: (i) fails to maintain a required collaborative or supervisory relationship and written agreement with one or more Medical Staff Members (e.g., the Advanced Practice Professional's sole supervising physician's  Medical Staff membership is terminated, or the sole supervision physician terminates the supervisory relationship with the Advanced Practice Professional); or (ii) fails to comply with the terms of his/her collaborative or supervisory agreement, the Advanced Practice Professional's Clinical Privileges shall be automatically suspended and shall remain so suspended until the  Advanced Practice Professional provides Medical Staff Services with adequate evidence that an appropriate collaborative or supervisory relationship and agreement exists and that the Advanced Practice Professional is in compliance with the terms of such collaborative or supervisory agreement.  A failure to provide Medical Staff Services with adequate evidence that an appropriate collaborative or supervisory relationship and agreement exists and that the Advanced Practice Professional is in compliance with the terms of such collaborative or supervisory agreement, within one (1) month after the date the automatic suspension became effective, shall be deemed to be a voluntary relinquishment of the Advanced Practice Professional's Staff Membership and Clinical Privileges.

Current as of July 19, 2011
V.5 Oshkosh Medical Staff Bylaws
ADOPTED 7-19-2011.DOC

*Aurora Health Care*

Page 47 of 90

Case 1:13-cv-00152-WCG    Filed 03/29/13    Page 50 of 93    Document 10-2

# ARTICLE 5. HEARING AND APPELLATE REVIEW PROCEDURE

## 5.1 GENERAL PROVISIONS

### 5.1.1 Purpose.

The hearing and appellate review processes described herein are designed to ensure that: (1) Adverse Actions are issued or imposed in the furtherance of quality health care after full consideration and reconsideration of all quality and safety issues; and (2) any Staff Member who is subject to an Adverse Action has a fair opportunity to appeal such action.[78]

### 5.1.2 Application.

For purposes of this Article 5, the term "Staff Member" may include "Applicant," as may be applicable under the circumstances. In addition, the procedures and rights set forth in this Article 5 are applicable to Advanced Practice Professionals.[79]

### 5.1.3 Exhaustion of Remedies; Right to One Hearing / Appellate Review

If an Adverse Action is taken or recommended, the Staff Member must exhaust the remedies afforded by these Bylaws before resorting to legal action. No Staff Member shall be entitled to more than one hearing and one appellate review on any matter which shall have been the subject of an Adverse Action.

### 5.1.4 Construction of Time Periods; Waiver.

Failure by any Hearing Committee or Appellate Review Committee, the Medical Executive Committee, or the Governing Body, to comply with a time limit specified in this Article 5 shall not be deemed to invalidate their actions. Notwithstanding the above, where these Bylaws specifically provide that any right shall be waived as a result of the failure to act within a specified time period, such provisions shall be strictly applied.

## 5.2 GROUNDS FOR A HEARING OR APPELLATE REVIEW

### 5.2.1 Adverse Actions.

Except as otherwise specified in these Bylaws, any one or more of the following, if recommended or issued by the Medical Executive Committee or the Governing Body, shall be deemed an Adverse Action and shall constitute grounds for a hearing and/or appellate review:

(a) Denial of initial Medical Staff or Advanced Practice Professional Staff appointment;

(b) Denial of Medical Staff or Advanced Practice Professional Staff reappointment;

---

[78] 42 U.S.C. § 1112(a)(1-2); Wis. Adm. Code § DHS 124.12(5)(b)4.; JCS MS.10.01.01, Rationale (Jan. 2009).
[79] Wis. Admin. Code DHS § 124.12(4)(c)6. (2009).

Current as of July 19, 2011
V.5 Oshkosh Medical Staff Bylaws
ADOPTED 7-19-2011.DOC

 Aurora Health Care

Page 48 of 90

Case 1:13-cv-00152-WCG    Filed 03/29/13    Page 51 of 93    Document 10-2

(c)     Revocation of Staff Membership;

(d)     Refusal to reinstate a Staff Member following an approved leave of absence;

(e)     Involuntary change or denial of a requested change in Medical Staff category, if such involuntary change or denial results in the denial, reduction, or termination of Clinical Privileges;

(f)     Denial of requested Clinical Privileges;

(g)     Involuntary reduction or suspension of Clinical Privileges for a period of fifteen (15) days or more;

(h)     Termination of current Clinical Privileges; and/or

(i)     Imposition of a mandatory monitoring, supervision, proctoring, review or consultation requirement, but only if:  (i) the monitor/supervisor/proctor/reviewer/consultant must provide prior approval of the provision of medical care by the Staff Member, and (ii) the monitoring, supervision, proctoring, review or consultation is not imposed as part of the FPPE process for newly granted privileges..

## 5.2.2   Actions Which Do Not Entitle the Staff Member to Hearing/Appellate Review Rights.

The following shall not be deemed Adverse Actions and shall not constitute grounds for a hearing and/or appellate review rights (unless the action is reportable to the NPDB):

(a)     Any summary suspension of Clinical Privileges imposed in accordance with Section 4.2 of these Bylaws for a period of fourteen (14) days or less.[80]

(b)     Any automatic suspension or voluntary relinquishment in accordance with Section 4.3 of these Bylaws.

(c)     The revocation of Staff Membership and/or Clinical Privileges that results from the termination of a service contract, if the service contract provides for such revocation.

(d)     Involuntary change or denial of a requested change in Medical Staff category, if such involuntary change or denial does not result in the denial, reduction or termination of Clinical Privileges;

(e)     The denial, suspension or revocation of temporary, emergency or disaster privileges.

(f)     The denial or refusal to accept an incomplete Application.

(g)     Monitoring, supervision, proctoring, review or consultation conducted as part of the FPPE process for newly granted privileges, including, without limitation, routine assignment of a proctor to a recently appointed Staff Member, or to a Staff Member with newly granted privileges.

---

[80] 42 U.S.C. § 11112(c)(1)(B) (providing that a health care entity need not meet notice and hearing requirements in the case of a suspension or restriction of clinical privileges for a period not longer than 14 days);  See also 45 C.F.R. § 60.9(a)(i); Wis. Stat. 50.36(3)(c) (2008).


Case 1:13-cv-00152-WCG    Filed 03/29/13    Page 52 of 93    Document 10-2

(h)     The imposition of monitoring, supervision, proctoring, review or consultation requirements, where prior approval of the monitor/supervisor/proctor/reviewer/ consultant is not required prior to the provision of medical care by the Staff Member.

(i)     A recommendation that a Staff Member be directed to obtain retraining, additional training or continuing education.

(j)     Letters of warning, reprimand, censure or admonition.

(k)     Appointment, reappointment or Clinical Privileges which are granted for a period of less than two (2) years.

(l)     Failure to place a Staff Member on any on-call or interpretation roster, or removal of any Staff Member from any such roster.

(m)     Denial or revocation of membership on the Honorary Medical Staff.

(n)     The removal of a Staff Member from any medico-administrative position, including removal from a Medical Staff Member's position as a Medical Staff Officer or Clinical Chairperson.

(o)     The refusal to recommend or approve a waiver of board certification requirements.

## 5.3     PRE-HEARING PROCESS

### 5.3.1     Written Notice of Adverse Action.[81]

The Administrator shall be responsible for giving prompt Written Notice of any Adverse Action ("Adverse Action Notice") to any affected Staff Member who is entitled to a hearing.  The Adverse Action Notice shall:

(a)     Advise the Staff Member of the Adverse Action;

(b)     Contain a brief statement indentifying the acts and/or omissions upon which the Adverse Action is based;

(c)     Advise the Staff Member that he/she may request a hearing to review the Adverse Action by submitting a written hearing request ("Hearing Request") to the Administrator via personal/hand delivery or certified mail, return receipt requested within thirty (30) days of the Staff Member's receipt of the Adverse Action Notice;

(d)     State that the Staff Member's failure to submit a Hearing Request within the specified time, or to personally appear at the scheduled hearing, shall constitute a waiver of the Staff Member's right to the hearing and subsequent appellate review;

(e)     Advise the Staff Member that: (i) the Staff Member has the right to be represented at the hearing by a Medical Staff Member, legal counsel, or any other individual chosen by the Staff Member; (ii) if the Staff Member intends to be represented by legal counsel, the Staff Member's Hearing Request must indicate that the Staff

---

[81] 42 U.S.C. § 11112(b)(1)(A-B).

Case 1:13-cv-00152-WCG     Filed 03/29/13     Page 53 of 93     Document 10-2

Member will be so represented; and (iii) if the Staff Member's Hearing Request does not indicate that the Staff Member will be represented by legal counsel, the Staff Member shall be deemed to have waived the right to be so represented;

(f)   Advise the Staff Member that the Staff Member may: (i) call, examine and cross-examine witnesses, to present evidence deemed relevant by the Hearing Committee Chairperson or the Chairperson's designee (regardless of its admissibility in a court of law); and (ii) submit a written statement at the close of the hearing;

(g)   Advise the Staff Member that a record of the hearing, shall be made, and that the Staff Member has a right to receive a copy of such hearing record upon payment of reasonable charges for the preparation thereof; and

(h)   State that upon completion of the hearing procedure, the Staff Member will receive a copy of the Hearing Committee Report, which shall include its recommendations and the basis therefore.

**5.3.2   Hearing Request; Failure to Request Hearing.**

A Staff Member who is entitled to a hearing under these Bylaws shall have thirty (30) days following the Delivery Date of the Adverse Action Notice to submit a Hearing Request to the Administrator via personal/hand delivery or by certified mail, return receipt requested.[82]   The Staff Member's failure to submit a Hearing Request shall be deemed a waiver of the Staff Member's right to such hearing, and to any appellate review to which the Staff Member might otherwise have been entitled on the matter.   If the Adverse Action was *issued* by the Medical Executive Committee, it shall remain effective pending the Governing Body's action.  If the Adverse Action was *recommended* by the Medical Executive Committee, it shall not become effective until the Governing Body takes action on the matter.

**5.3.3   Appointment of Hearing Committee.**[83]

(a)   <u>Medical Executive Committee Review</u>.   When a hearing relates to an Adverse Action of the Medical Executive Committee, the Chief of Staff, in consultation with the Medical Executive Committee and the Administrator, shall provide the affected Staff Member with a list of seven (7) Active Medical Staff Members who would be able to serve on the Hearing Committee, none of whom may have participated in the underlying Adverse Action or be in direct economic competition with the Staff Member.[84]   The Staff Member shall then strike two (2) of the potential committee members resulting in a Hearing Committee composed of five (5) members.  The Chief of Staff shall designate one of the Hearing Committee members to serve as the Hearing Committee Chairperson.

(b)   <u>Governing Body Review</u>.   When a hearing relates to an Adverse Action of the Governing Body that is not based on a prior Adverse Action of the Medical Executive Committee, the Governing Body shall appoint a Hearing Committee of

---

[82] 42 U.S.C. § 11112(b)(1)(B)(i-ii).
[83] JCS MS.10.01.01, EP 4 (Jan. 2009).
[84] 42 U.S.C. § 11112(b)(3)(A)(iii).

Current as of July 19, 2011
V.5 Oshkosh Medical Staff Bylaws
ADOPTED 7-19-2011.DOC

 Aurora Health Care

Page 51 of 90

Case 1:13-cv-00152-WCG   Filed 03/29/13   Page 54 of 93   Document 10-2

no fewer than three (3) Active Medical Staff Members, none of whom may be in direct economic competition with the Staff Member.[85] The Governing Body shall designate one of the Hearing Committee members to serve as the Hearing Committee Chairperson.

### 5.3.4 Scheduling of Hearing; Postponement[86]

Within ten (10) days after receipt of a Hearing Request, the Medical Executive Committee or the Governing Body, as applicable, shall schedule and arrange for such hearing. The hearing date shall be not less than thirty (30) days, nor more than sixty (60) days, from the date of the Administrator's receipt of the Hearing Request, unless otherwise agreed by the Staff Member and the Hearing Committee Chairperson. The approval or disapproval of rescheduling requests made by the Staff Member is within sole discretion of the Hearing Committee Chairperson.

### 5.3.5 Written Notice of Hearing.[87]

The Administrator (or his/her designee) shall be responsible for giving prompt Written Notice of the hearing ("Hearing Notice") to the affected Staff Member. The Hearing Notice shall:

(a)     State the time, place and date of the hearing;

(b)     Provide a list of witnesses (if any) who may testify on behalf of the Medical Executive Committee or the Governing Body (depending on which body's action prompted the Hearing Request);

(c)     Inform the Staff Member that the Staff Member must provide the Hearing Committee with the following :

i.     a list of witnesses the Staff Member intends to call at the hearing (at least three (3) days prior to the hearing or as otherwise agreed by the parties);

ii.     access to written materials that the Staff Member intends to present at the hearing (at least three (3) days prior to the hearing or as otherwise agreed by the parties); and

iii.     the name and address of the Staff Member's legal counsel (if the Staff Member intends to be represented by legal counsel at the hearing).

### 5.3.6 Representation.

The Staff Member may appoint a Medical Staff Member, legal counsel, or any other individual chosen by the Staff Member to represent the Staff Member at the hearing, present facts in opposition to the Adverse Action, and cross-examine witnesses. The Medical Executive Committee, when its action has prompted the hearing, shall appoint one or more of its members, an Active Medical Staff appointee, and/or legal counsel, to represent it at the hearing, present facts in support of the Adverse Action, and examine witnesses. The Governing Body, when its action has prompted the hearing, shall appoint

---

[85] 42 U.S.C. § 11112(b)(3)(A)(iii).
[86] 42 U.S.C. § 11112(b)(2)(A); JCS MS.10.01.01, EP 2 (Jan. 2009).
[87] 42 U.S.C. § 11112(b)(2)(A-B).


Case 1:13-cv-00152-WCG     Filed 03/29/13     Page 55 of 93     Document 10-2

one or more of its members, and/or legal counsel to represent it at the hearing, present the facts in support of the Adverse Action, and examine witnesses. The Medical Executive Committee or Governing Body representative shall not simultaneously serve as the Presiding Officer of the hearing. If the Staff Member or the party that imposed the Adverse Action will be represented by legal counsel, that party shall inform the other party of the name and address of such counsel.

**5.3.7    Access to Information.**
The parties shall cooperate in good faith to (within a reasonable period prior to the hearing date): (a) exchange lists of expected witnessed and written materials to be presented at the hearing; and (b) inform the other party of any changes to the lists of expected witnesses, and/or the written materials to be presented at the hearing. The Staff Member shall have access to the written materials, favorable or unfavorable, that: (i) were considered by the Medical Executive Committee or the Governing Body in undertaking the Adverse Action; or (ii) will be considered by the Hearing Committee during the hearing. The Medical Executive Committee or Governing Body, as applicable, shall provide Written Notice of any subsequent modifications to the grounds for the Adverse Action.

## 5.4    HEARING PROCEDURE[88]

**5.4.1    Presiding Officer.**
The Hearing Committee Chairperson (or the Chairperson's designee), shall preside over the hearing to: (a) determine the order of procedure during the hearing, (b) assure that all participants in the hearing have a reasonable opportunity to present relevant oral and documentary evidence, and (c) maintain decorum.

**5.4.2    Robert's Rules of Order.**
The latest edition of ROBERT'S RULES OF ORDER shall prevail at the hearing, except that the Hearing Committee Chairperson may vote.

**5.4.3    Personal Presence Required.**
The Staff Member for whom the hearing has been scheduled must be personally present. A Staff Member who fails without good cause to appear and participate at such hearing shall be deemed to have waived such Staff Member's hearing and appellate review rights and to have accepted the Adverse Action, and the same shall thereupon become and remain in effect as provided.[89]

**5.4.4    Submission of Written Statements.**
Prior to or during the hearing, the Staff Member and the Medical Executive Committee or the Governing Body (as applicable) may submit written statements concerning any issue of procedure or of fact, and such written statements shall become a part of the hearing record. The Staff Member's written statement may be submitted to the Hearing

---

[88] JCS MS.10.01.01, EP 3 (Jan. 2009).
[89] 42 U.S.C.S § 11112(b)(3)(B).


Case 1:13-cv-00152-WCG    Filed 03/29/13    Page 56 of 93    Document 10-2

Committee through the Administrator by personal/hand delivery or by certified mail, return receipt requested, or brought to the hearing.

**5.4.5    Hearing Record**.
An accurate record of the hearing must be kept.  Participants in the hearing shall be informed of all matters noticed and those matters shall be noted in the hearing record. The mechanism by which the hearing is recorded shall be established by the Hearing Committee and may be accomplished by use of a court reporter, electronic recording unit, detailed transcription or by the taking of adequate minutes.  A Staff Member desiring an alternate method of recording the hearing shall bear the primary cost thereof.

**5.4.6    Evidence; Witnesses**.
The affected Staff Member and the Medical Executive Committee and/or Governing Body shall each have the right to: (a) call and examine witnesses, (b) introduce written evidence, (c) cross-examine any witness on any matter relevant to the issue of the hearing, (d) challenge any witness, and (e) rebut any evidence.  If the Staff Member does not testify on such Staff Member's own behalf, the Staff Member may be called and examined as if under cross-examination.  The Hearing Committee may order that oral evidence be taken only upon oath or affirmation administered by any person entitled to notarize documents in the State of Wisconsin.  The hearing need not be conducted strictly according to rules of law relating to the examination of witnesses or presentation of evidence.  Any relevant evidence may be considered, regardless of the existence of any common law or statutory rule which might make such evidence inadmissible in a civil or criminal action.

**5.4.7    Standard of Proof**.
It shall be the obligation of the Medical Executive Committee/Governing Body representative to present appropriate evidence in support of the Adverse Action, but the affected Staff Member shall thereafter be responsible for supporting such Staff Member's challenge to the Adverse Action by an appropriate showing that the charges or grounds involved lack any factual basis, or that such basis or any action based thereon is either unreasonable, arbitrary, or capricious.  The Staff Member for whom the hearing is being held shall be given the opportunity, on request, to refute the officially noticed matters by evidence or by written or oral presentation of authority, the manner of such refutation to be determined by the Hearing Committee.

**5.4.8    Recess; Conclusion; Deliberations**.
The Hearing Committee may, in it sole discretion and without special notice, recess the hearing and reconvene the same for the convenience of the participants or for the purpose of obtaining new or additional evidence or consultation.  Upon conclusion of the presentation of oral and written evidence, the hearing shall be closed.  Within ten (10) days after the hearing is closed, the Hearing Committee shall conduct its deliberations. The Hearing Committee may: (a) conduct its deliberations outside the presence of the Staff Member for whom the hearing was convened at a time convenient to itself; and (b) consider any pertinent information that was made available to the Staff Member prior to

Case 1:13-cv-00152-WCG    Filed 03/29/13    Page 57 of 93    Document 10-2

or during the hearing. A Hearing Committee member who failed to attend the hearing may not participate in deliberations or voting on the matter.

### 5.4.9 Hearing Committee Report.

Upon the conclusion of its deliberations, the Hearing Committee shall issue a written Hearing Committee Report, which (a) shall include the Hearing Committee's recommendations, including confirmation, modification, or rejection of the original Adverse Action and the basis therefore, and (b) may include the Hearing Committee's official notice of any generally accepted technical or scientific matter relating to the issues under consideration at the hearing and of any facts which may be judicially noticed by the courts of this state. Within fifteen (15) days after the hearing, the Hearing Committee shall: (a) submit the Hearing Committee Report, the hearing record, and all other documentation, to the Medical Executive Committee or the Governing Body, whichever appointed it, and (b) deliver a copy of the Hearing Committee Report to the Staff Member through the Administrator by personal/hand delivery or certified mail, return receipt requested.

## 5.5 MEDICAL EXECUTIVE COMMITTEE/GOVERNING BODY REVIEW AND RECOMMENDATION

### 5.5.1 Review.

The entity that appointed the Hearing Committee (the Medical Executive Committee or the Governing Body) shall review the Hearing Committee Report, the hearing record and all other documentation considered by the Hearing Committee, and shall make a recommendation.

### 5.5.2 Favorable Recommendation.

If the Medical Executive Committee's reconsidered recommendation is favorable to the Staff Member, the recommendation shall be forwarded to the Governing Body for action at its next regularly scheduled meeting. If the Governing Body's reconsidered recommendation is favorable to the Staff Member, it shall be the final decision in the matter and the Administrator shall provide the affected Staff Member with Written Notice of the Governing Body's decision.

### 5.5.3 Unfavorable Recommendation.

If the Medical Executive Committee's or Governing Body's reconsidered recommendation is an Adverse Action which would entitle the Staff Member to appellate review, the Administrator shall promptly provide Written Notice of the Adverse Action, as provided in Section 5.6.1 of these Bylaws.

Current as of July 19, 2011
V.5 Oshkosh Medical Staff Bylaws
ADOPTED 7-19-2011.DOC

*Aurora Health Care*

Page 55 of 90

Case 1:13-cv-00152-WCG   Filed 03/29/13   Page 58 of 93   Document 10-2

## 5.6 PRE-APPEAL PROCESS[90]

### 5.6.1 Written Notice of Adverse Action.[91]

The Administrator shall be responsible for giving prompt Written Notice of an Adverse Action to any affected Staff Member who is entitled to appellate review. The Written Notice shall:

(a) Advise the Staff Member of the Adverse Action;

(b) Contain a brief statement identifying the acts and/or omissions upon which the Adverse Action is based;

(c) Advise the Staff Member of the Staff Member's right to request an appellate review of the Adverse Action in accordance with this Article 5, and specify that the Staff Member shall have ten (10) days within which to submit a written Appellate Review Request to the Administrator via personal/hand delivery or certified mail, return receipt requested;

(d) Inform the Staff Member that unless the Staff Member's Appellate Review Request specifically requests the opportunity for oral argument, the appellate review shall be held only on the record on which the Adverse Action is based, supplemented by a written statement by the Staff Member if the Staff Member so desires;

(e) State that the Staff Member's failure to submit an Appellate Review Request within the specified time and/or to include a request for the opportunity to present an oral argument in such Appellate Review Request, shall constitute a waiver of the Staff Member's right to appellate review and/or the Staff Member's right to present an oral argument (as applicable);

(f) Advise the Staff Member that: (i) the Staff Member has the right to be represented at the appellate review by a Medical Staff Member, legal counsel, or any other individual chosen by the Staff Member; (ii) if the Staff Member intends to be represented by legal counsel, the Staff Member's Appellate Review Request must indicate that the Staff Member will be so represented; and (iii) if the Staff Member's Appellate Review Request does not indicate that the Staff Member will be represented by legal counsel, the Staff Member shall be deemed to have waived the right to be so represented;

(g) Advise the Staff Member of the Staff Member's right to submit a written statement at the close of the appellate review;

(h) Advise the Staff Member that a record of the appellate review shall be made, and of the Staff Member's right to receive a copy upon payment of reasonable charges for the preparation thereof; and

---

[90] JCS MS.10.01.01, EP 5 (Jan. 2009).
[91] 42 U.S.C. § 11112(b)(1)(A-B).

Current as of July 19, 2011
V.5 Oshkosh Medical Staff Bylaws
ADOPTED 7-19-2011.DOC

Aurora Health Care

Page 56 of 90

Case 1:13-cv-00152-WCG    Filed 03/29/13    Page 59 of 93    Document 10-2

(i)    State that upon completion of the appellate review the Staff Member shall receive a copy of the written recommendation of the Appellate Review Committee, including a statement of the basis of the recommendation.

**5.6.2**    **Appellate Review Request; Failure to Request Appellate Review**.
A Staff Member who is entitled to an appellate review under these Bylaws shall have ten (10) days following the Delivery Date of the Adverse Action Notice to submit an Appellate Review Request to the Administrator via personal/hand delivery or by certified mail, return receipt requested.  The Staff Member's failure to timely submit an Appellate Review Request shall be deemed a waiver of the Staff Member's right to such appellate review and the Adverse Action shall thereupon become and/or remain effective pending the Governing Body's final decision on the matter.  The Staff Member shall be notified of the Governing Body's final decision as set forth in Section 5.8.1 of these Bylaws.

**5.6.3**    **Appointment of Appellate Review Committee and Chairperson.**
The Governing Body shall appoint (a) an Appellate Review Committee, which shall consist of not less than three (3) Governing Body members, none of whom have been members of any committee which previously made a recommendation on the matter; and (b) one Governing Body member to act as the Appellate Review Committee Chairperson.

**5.6.4**    **Scheduling / Rescheduling of Appellate Review.**
Within ten (10) days after receipt of a Staff Member's written Appellate Review Request, the Appellate Review Committee shall schedule a date for such appellate review, including a time and place for oral argument (if requested).  The date of the appellate review shall not be less than fifteen (15) days, nor more than thirty (30) days, from the date of receipt of the affected Staff Member's Appellate Review Request, unless otherwise agreed by the affected Staff Member and the Appellate Review Committee Chairperson.  The approval or disapproval of rescheduling requests made by the Staff Member is within sole discretion of the Appellate Review Committee Chairperson.

**5.6.5**    **Written Notice of Appellate Review.**[92]
The Appellate Review Committee Chairperson shall, through the Administrator, be responsible for giving prompt Written Notice of the appellate review to the Staff Member.  The Written Notice shall:

(a)    State the time, place and date of the appellate review;

(b)    Contain a concise statement which identifies the acts, omissions or transactions upon which the Adverse Action is based;

(c)    Advise the Staff Member of the Staff Member's right to submit a written statement at the close of the appellate review;

(d)    If the Staff Member requested the opportunity for oral argument, the Written Notice shall inform the Staff Member that the Staff Member's failure to personally

---

[92] 42 U.S.C. § 11112(b)(2)(A-B).

Current as of July 19, 2011
V.5 Oshkosh Medical Staff Bylaws
ADOPTED 7-19-2011.DOC

Aurora Health Care

Page 57 of 90

Case 1:13-cv-00152-WCG   Filed 03/29/13   Page 60 of 93   Document 10-2

appear to present such oral argument shall constitute a waiver of the Staff Member's right to present an oral argument;

(e)  If the Staff Member has not requested the opportunity for oral argument, the Written Notice shall inform the Staff Member that the appellate review shall be held only on the record on which the Adverse Action is based, supplemented by a written statement by the Staff Member, if the Staff Member so desires. Such a written statement must be submitted by the Staff Member to the Administrator by personal/hand delivery or certified mail, return receipt requested at least five (5) days prior to the appellate review;

(f)  Advise the Staff Member that a record of the appellate review shall be made, and of the Staff Member's right to receive a copy upon payment of reasonable charges for the preparation thereof; and

(g)  State that upon completion of the appellate review the Staff Member shall receive a copy of the written recommendation of the Appellate Review Committee, including a statement of the basis of the recommendation.

**5.6.6  Representation**.
The Staff Member may appoint a Medical Staff Member, legal counsel, or any other individual chosen by the Staff Member to represent the Staff Member at the appellate review, present facts in opposition to the Adverse Action, and cross-examine witnesses. The Medical Executive Committee, when its action has prompted the appellate review, shall appoint one or more of its members, an Active Medical Staff appointee, and/or legal counsel, to represent it at the appellate review, present facts in support of the Adverse Action, and examine witnesses. The Governing Body, when its action has prompted the hearing, shall appoint one or more of its members, and/or legal counsel to represent it at the appellate review, present the facts in support of the Adverse Action, and examine witnesses. The Medical Executive Committee or Governing Body representative shall not simultaneously serve as the Presiding Officer of the appellate review. If the Staff Member or the party that imposed the Adverse Action will be represented by legal counsel, that party shall inform the other party of the name and address of such counsel.

**5.6.7  Access to Information**.
The parties shall cooperate in good faith (within a reasonable period prior to the appellate review) to exchange information and written materials that will be presented at the appellate review and any changes to the same. The Staff Member shall have access to:

(a)  the Hearing Committee Report;

(b)  the hearing record (and transcript, if any); and

(c)  all other written material, favorable or unfavorable, that: (i) was considered by the Hearing Committee in the development of the Hearing Committee Report; (ii) was considered by the Medical Executive Committee or the Governing Body in undertaking the Adverse Action; and (iii) will be considered by the Appellate Review Committee during the appellate review.

Current as of July 19, 2011
V.5 Oshkosh Medical Staff Bylaws
ADOPTED 7-19-2011.DOC

Aurora Health Care

Page 58 of 90

Case 1:13-cv-00152-WCG    Filed 03/29/13    Page 61 of 93    Document 10-2

## 5.7 APPELLATE REVIEW PROCEDURE

### 5.7.1 Presiding Officer.

The Appellate Review Committee Chairperson (or his/her designee) shall preside over the appellate review to: (a) determine the order of procedure during the appellate review, (b) assure that all participants in the appellate review have a reasonable opportunity to present relevant oral and documentary evidence, and (c) maintain decorum.

### 5.7.2 Robert's Rules of Order.

The latest edition of ROBERT'S RULES OF ORDER shall prevail at the hearing, except that the Appellate Review Committee Chairperson may vote.

### 5.7.3 Quorum; Personal Presence of Staff Member Not Required.

All Appellate Review Committee members must be present when the appellate review takes place and no member may vote by proxy. The personal presence of the Staff Member for whom the appellate review has been scheduled is not required, unless the Staff Member has requested the opportunity to present an oral argument. A Staff Member who requested the opportunity for an oral argument but fails without good cause to appear and participate, shall be deemed to have waived such Staff Member's right to present an oral argument.

### 5.7.4 Submission of Written Statements.

Prior to or during the appellate review, the Staff Member and the Medical Executive Committee or the Governing Body (as applicable) may submit written statements concerning any issue of procedure or of fact, and such written statements shall become a part of the appellate review record. The Staff Member's written statement may be submitted to the Appellate Review Committee through the Administrator by personal/hand delivery or by certified mail, return receipt requested, or brought to the appellate review.

### 5.7.5 Review of Records; Standard of Proof.

The Appellate Review Committee shall act as the appellate body for the purpose of determining whether the Adverse Action against the affected Staff Member was justified and was not arbitrary or capricious. It shall review and consider:

(a)     the Hearing Committee Report;

(b)     the hearing record (and transcript, if any);

(c)     all other material, favorable or unfavorable, that was considered by the Hearing Committee in the development of its report, or considered by the Medical Executive Committee or the Governing Body in undertaking the Adverse Action;

(d)     any written statements submitted pursuant to Section 5.7.4 of these Bylaws; and

(e)     any oral argument.

Current as of July 19, 2011
V.5 Oshkosh Medical Staff Bylaws
ADOPTED 7-19-2011.DOC

Aurora Health Care

Page 59 of 90

Case 1:13-cv-00152-WCG    Filed 03/29/13    Page 62 of 93    Document 10-2

New or additional matters not raised during the original hearing or in the Hearing Committee Report and not otherwise reflected in the hearing record may only be introduced at the appellate review with the approval of the Appellate Review Committee.

**5.7.6    Oral Argument**.

The Staff Member (or his/her representative) may present an oral argument against the Adverse Action and any member of the Appellate Review Committee may direct questions to the Staff Member.  The representative of the entity that imposed the Adverse Action (the Medical Executive Committee or the Governing Body) shall be permitted to speak in favor of the Adverse Action recommendation and any member of the Appellate Review Committee may direct questions to such representative.

**5.7.7    Record of Oral Argument**.

An accurate record of the appellate review oral argument (if any) must be kept. Participants in the oral argument shall be informed of all matters noticed and those matters shall be noted in the record.  The mechanism by which an oral argument is recorded shall be established by the Appellate Review Committee and may be accomplished by use of a court reporter, electronic recording unit, detailed transcription or by the taking of adequate minutes.  A Staff Member desiring an alternate method of recording the appellate review shall bear the primary cost thereof.

**5.7.8    Recess; Deliberations**.

The Appellate Review Committee may, in its sole discretion and without special notice, recess the appellate review and reconvene the same for the convenience of the participants or for the purpose of obtaining new or additional evidence or consultation. Upon conclusion of the presentation of oral and written evidence, the appellate review shall be adjourned (the "Adjournment Date").   Within ten (10) days after the Adjournment Date, the Appellate Review Committee shall complete its deliberations. The Appellate Review Committee may: (a) conduct its deliberations outside the presence of the Staff Member for whom the hearing was convened at a time convenient to itself; and (b) consider any pertinent information that was made available to the Staff Member prior to or during the hearing and appellate review process.

**5.7.9    Appellate Review Committee Report**.

Within fifteen (15) days after the Adjournment Date, the Appellate Review Committee shall issue a written Appellate Review Committee Report, which (a) shall include the Appellate Review Committee's recommendations, including confirmation, modification, or rejection of the original Adverse Action and the basis therefore, and (b) may include the Appellate Review Committee's official notice of any generally accepted technical or scientific matter relating to the issues under consideration at the appellate review and of any facts which may be judicially noticed by the courts of this state.  The Appellate Review Committee shall: (a) submit such Appellate Review Committee Report, the appellate review and hearing record, and all other documentation, to the Governing Body; and (b) deliver a copy of the Appellate Review Committee Report to the Staff Member through the Administrator by personal/hand delivery or certified mail, return receipt requested.

Current as of July 19, 2011
V.5 Oshkosh Medical Staff Bylaws
ADOPTED 7-19-2011.DOC

*Aurora Health Care*

Page 60 of 90

Case 1:13-cv-00152-WCG    Filed 03/29/13    Page 63 of 93    Document 10-2

## 5.8    FINAL DECISION BY GOVERNING BODY

**5.8.1    Final Decision**.

Within five (5) days of its receipt of the Appellate Review Committee Report and the other documentation described in Section 5.7.4 of these Bylaws, the Governing Body shall make a final decision in the matter and shall send notice thereof to the Medical Executive Committee and the Administrator. The Administrator shall send Written Notice of the Governing Body's final decision to the affected Staff Member and such decision shall become effective upon the Delivery Date of such Written Notice.

**5.8.2    Communication with Medical Center Departments.**

The Administrator will ensure that the appropriate Departments and other Medical Center patient care areas are informed of any revisions or revocations of a Staff Member's Clinical Privileges.[93]

---

[93] 42 C.F.R. § 482.22(a)(2) (Interpretive Guidelines, effective October 17, 2008).

Current as of July 19, 2011
V.5 Oshkosh Medical Staff Bylaws
ADOPTED 7-19-2011.DOC

Aurora Health Care

Page 61 of 90

Case 1:13-cv-00152-WCG    Filed 03/29/13    Page 64 of 93    Document 10-2

# ARTICLE 6. MEDICAL EXECUTIVE COMMITTEE

## 6.1 COMPOSITION

The Medical Executive Committee shall include the following voting members listed below.[94] A majority of Medical Executive Committee members must be Physicians.[95] Medical Executive Committee members serve ex officio with vote.[96] A Medical Executive Committee member may be removed from the Medical Executive Committee by removing him/her from the office/service identified below.[97]

  (a) Chief of Staff (The Chief of Staff shall serve as the Medical Executive Committee Chairperson.)

  (b) Chief of Staff Elect

  (c) Clinical Chairperson, Department of Medicine

  (d) Clinical Chairperson, Department of Emergency Medicine

  (e) Clinical Chairperson, Department of Anesthesia

  (f) Clinical Chairperson, Department of Radiology

  (g) Clinical Chairperson, Department of Obstetrics and Gynecology

  (h) Clinical Chairperson, Department of Surgical Services

  (i) Clinical Chairperson, Department of Pediatrics

  (j) Clinical Chairperson, Department of Family Practice

The following individuals shall be invited to attend Medical Executive Committee meetings, but are not eligible to vote at such meetings:

  (a) Chief Administrative Officer

  (b) Director, Patient Care Services

  (c) Director, Quality

  (d) Manager of Medical Staff Services

---

[94] JCS MS.01.01.01, EP 20 & 22 (March 2011).
[95] 42 C.F.R. § 482.22(b)(2) (Interpretive Guidelines, effective June 5, 2009).
[96] JCS MS.01.01.01, EP 20 & 21 (March 2011).
[97] JCS MS.01.01.01, EP 20 & 21 (March 2011).

Current as of July 19, 2011
V.5 Oshkosh Medical Staff Bylaws
ADOPTED 7-19-2011.DOC

 Aurora Health Care

Page 62 of 90

Case 1:13-cv-00152-WCG   Filed 03/29/13   Page 65 of 93   Document 10-2

## 6.2    DUTIES AND RESPONSIBILITIES

The Medical Executive Committee is authorized to represent and act on behalf of the Medical Staff, subject to such limitations as may be imposed by these Bylaws.[98]  The authority delegated to the Medical Executive Committee may be limited or removed by the Medical Staff by amending these Medical Staff Bylaws in accordance with Section 10.1.[99]   The duties and responsibilities of the Medical Executive Committee shall be to:[100]

   (a)    Coordinate the activities and general policies of the Departments;

   (b)    Receive, review and act upon Department and Medical Staff committee reports;

   (c)    Develop, implement, approve and monitor Medical Staff policies not otherwise the responsibility of the Departments;

   (d)    Provide liaison between the Medical Staff, the Administrator and the Governing Body;

   (e)    Make recommendations to the Administrator on matters of a medico-administrative nature;

   (f)    Make recommendations to the Governing Body or the Administrator on matters concerning the management of the Medical Center;

   (g)    Fulfill the Medical Staff's accountability to the Governing Body for the medical care rendered to patients in the Medical Center and participation in quality improvement activities;

   (h)    Ensure that the Medical Staff actively participates in the Medical Center's accreditation program and assists the Medical Center in maintaining its accreditation status;

   (i)    Review and act on the credentials of all Applicants and make recommendations to the Governing Body for staff appointment, assignments to Departments and delineation of Clinical Privileges;

   (j)    Review periodically all information available regarding the performance and clinical competence of Staff Members and other individuals with Clinical Privileges, and as a result of such reviews, make recommendations to the Governing Body for reappointments and renewal of or changes in Clinical Privileges;

   (k)    Take all reasonable steps to ensure professionally ethical conduct and competent clinical performance on the part of all appointees to the Medical Staff, including the initiation of and/or participation in Medical Staff corrective or review measures when warranted;

   (l)    Report at each general Medical Staff meeting;

---

[98] JCS MS.01.01.01, EP 23 (March 2011).

[99] JCS MS.01.01.01, EP 20 (March 2011).

[100] JCS MS.01.01.01, EP 20 (March 2011).

Current as of July 19, 2011
V.5 Oshkosh Medical Staff Bylaws
ADOPTED 7-19-2011.DOC

Aurora Health Care

Page 63 of 90

Case 1:13-cv-00152-WCG    Filed 03/29/13    Page 66 of 93    Document 10-2

(m)    Supervise and make recommendations regarding infection control practices in all phases of the Medical Center's activities;

(n)    Make recommendations relating to changes to the Medical Staff structure; and revisions to and updating of the Medical Staff Bylaws, policies, rules and regulations; and

(o)    Review, recommend, and support Medical Center sponsored educational activities that are relevant to the Medical Staff and to the nature and type of care offered by the Medical Center.  When applicable, these educational activities shall relate to performance improvement activities.

## 6.3    MEDICAL EXECUTIVE COMMITTEE MEETINGS

### 6.3.1    Scheduling and Notice.

(a)    <u>Regular Meetings</u>.  The Medical Executive Committee shall meet as often as necessary, but in no event less than quarterly, to fulfill its duties and responsibilities.

(b)    <u>Special Meetings</u>.  The Chief of Staff may call a special meeting of the Medical Executive Committee at any time.

(c)    <u>Telecommunication</u>.  Medical Executive Committee members may participate in regular or special Medical Executive Committee meetings by, or through the use of, any means of communication by which all participants may simultaneously hear each other, such as by teleconference.  Any participant in a meeting by such means shall be deemed present in-person at such meeting.

(d)    <u>Notice</u>.  Medical Staff Services shall send Written Notice of each regular and special Medical Executive Committee meeting to all Medical Executive Committee members.

### 6.3.2    Quorum and Voting Requirements.

A quorum shall consist of at least fifty percent (50%) of the Medical Executive Committee's voting members.  If a quorum exists, action on a matter shall be approved if the votes cast within the voting group favoring the action exceed the votes cast opposing the action, unless these Bylaws or any law, ordinance, or governmental rule or regulation requires a greater number of affirmative votes.

### 6.3.3    Attendance Requirements.

Medical Executive Committee members are expected to attend at least seventy percent (70%) of the meetings held.

### 6.3.4    Minutes.

Minutes of each regular and special Medical Executive Committee meeting shall be prepared and shall include a record of the attendance of Medical Executive Committee members and the vote taken on each matter.  The minutes shall be signed by the presiding

Current as of July 19, 2011
V.5 Oshkosh Medical Staff Bylaws
ADOPTED 7-19-2011.DOC

Aurora Health Care

Page 64 of 90

Case 1:13-cv-00152-WCG   Filed 03/29/13   Page 67 of 93   Document 10-2

officer.  Minutes of each Medical Executive Committee meeting shall be maintained in a permanent file.

**6.3.5**  **Robert's Rules of Order**.
The latest edition of ROBERT'S RULES OF ORDER shall prevail at all Medical Executive Committee meeting, except that the Chief of Staff may vote.

Current as of July 19, 2011
V.5 Oshkosh Medical Staff Bylaws
ADOPTED 7-19-2011.DOC
Aurora Health Care
Page 65 of 90
Case 1:13-cv-00152-WCG   Filed 03/29/13   Page 68 of 93   Document 10-2

# ARTICLE 7.  ORGANIZED MEDICAL STAFF

## 7.1  COMPOSITION

The Medical Center has a single, self-governing organized Medical Staff, composed of current Medical Staff Members.[101]

## 7.2  DUTIES AND RESPONSIBILITIES

The purposes and responsibilities of the organized Medical Staff are as described below. Provision shall be made in these Bylaws or by resolution of the Medical Executive Committee, approved by the Governing Body, either through assignment to Departments, to Medical Staff committees, to Medical Staff Officers or officials, or to interdisciplinary Medical Center committees, for the effective performance of the Medical Staff functions specified in this Section and described in the Policies Governing Medical Practices, and such other Medical Staff functions as the Medical Executive Committee or the Governing Body shall reasonably require.

**7.2.1  Administration and Enforcement of Bylaws and Policies**.
The organized Medical Staff develops, adopts, reviews, amends, monitors and enforces compliance with these Bylaws, the Policies Governing Medical Practices, and other Medical Staff policies necessary for the proper functioning of the Medical Staff and the integration and coordination of Staff Members with the functions of the Medical Center.[102]

**7.2.2  Communication With and Accountability to the Governing Body**.
The organized Medical Staff is accountable to the Governing Body for the quality of medical care provided to Medical Center's patients,[103] assists the Governing Body by serving as a professional review body,[104] and cooperates with the Governing Body, Administration, and Medical Center staff to resolve conflicts with regard to issues of mutual concern.

**7.2.3  Recommendations for Staff Membership and Clinical Privileges**.[105]
The organized Medical Staff: (i) develops criteria for Staff Membership and Clinical Privileges that are designed to assure the Medical Staff and the Governing Body that patients will receive quality care, treatment, and services;[106] (ii) utilizes the criteria to evaluate and recommend individuals for Staff Membership and Clinical Privileges;[107] and monitors and evaluates the ethical and professional practice of individuals with Clinical

---

[101] 42 C.F.R. § 482.22;  JCS LD.01.05.01, EP 1, 2 (Jan. 2009).
[102] 42 C.F.R. § 482.22(c);  Wis. Admin. Code DHS § 124.12(2)(b) (2009); JCS MS.01.01.01, EP 1-2, 4 (Jan. 2009);  JCS LD.01.05.01, EP 6 (Jan. 2009).
[103] 42 C.F.R. § 482.22(b) (Interpretive Guidelines, effective October 17, 2008); Wis. Adm. Code § DHS 124.12(2)(a).
[104] 42 C.F.R. § 482.12(a)(5).
[105] Wis. Admin. Code DHS § 124.12(5)(b)3. (2009); JCS MS.07.01.01 (Jan. 2009).
[106] JCS LD.01.05.01, EP 5 (Jan. 2009);  JCS MS.03.01.01 (Jan. 2009).
[107] JCS MS.03.01.01 (Jan. 2009); JCS MS.06.01.05 (Jan. 2009).

Current as of July 19, 2011
V.5 Oshkosh Medical Staff Bylaws
ADOPTED 7-19-2011.DOC

Aurora Health Care

Page 66 of 90

Case 1:13-cv-00152-WCG   Filed 03/29/13   Page 69 of 93   Document 10-2

Privileges[108] in order to make recommendations regarding such individuals' continued Staff Membership and Clinical Privileges.

**7.2.4    Quality Assurance and Performance Improvement**.
The organized Medical Staff provides leadership in, participates in, conducts, oversees, and/or coordinates Medical Center activities related to quality assurance, performance improvement, patient safety, patient satisfaction, risk management, case management, utilization review and resource management, including the following:[109]

(a)    Establishes and maintains patient care standards and ensures that all Medical Center patients receive care that is commensurate with applicable standards of care and available community resources;

(b)    Monitors the quality of care, treatment and services provided by individuals with Clinical Privileges, including the performance and appropriateness of medical record documentation, the performance of invasive procedures, blood usage, and drug usage;[110]

(c)    Measures, assesses, and improves processes that primarily depend on the activities of individuals credentialed and privileged through the Medical Staff process;[111]

(d)    Pursues corrective actions with respect to Staff Member's with Clinical Privileges when warranted;

(e)    Communicates findings, conclusions, recommendations, and actions to improve performance to the Medical Executive Committee and the Governing Body;

(f)    Assists the Medical Center in identifying community health needs and establishing services or programs to meet such needs and other institutional goals; and

(g)    Coordinates the care, treatment and services provided by individuals with Clinical Privileges with those provided by the Medical Center's nursing, technical, and administrative staff.

**7.2.5    Continuing Education**.
The organized Medical Staff: (a) provides continuing education opportunities to promote current best practices, encourage continuous advancement in professional knowledge, and complement quality assessment/improvement activities; and (b) supervises the Medical Center's professional library services.

**7.2.6    Compliance with Laws, Regulations, and Accreditation Standards**.
The organized Medical Staff assists the Medical Center in reviewing and maintaining Medical Center accreditation and ensuring compliance with applicable accreditation standards and federal, state, and local laws and regulations.[112]

---

[108] Wis. Admin. Code DHS § 124.12(2)(a) (2009).
[109] 42 C.F.R. § 482.22(b)(1);  42 C.F.R. § 482.22(c)(3);  JCS MS.03.01.01, Rationale, EP 4, 5 (Jan. 2009);  JCS MS.05.01.01, Introduction (Jan. 2009);  JCS MS.05.01.03 (Jan. 2009).
[110] JCS MS.03.01.01, Rationale (Jan. 2009);  JCS MS.05.01.01 (Jan. 2009).
[111] JCS MS.05.01.01, EP 1 (Jan. 2009); see also PI.03.01.01, EP 1-4) (Jan. 2009).


Case 1:13-cv-00152-WCG    Filed 03/29/13    Page 70 of 93    Document 10-2

**7.2.7** **Other**.

The organized Medical Staff:

(a) Monitors the Medical Center's infection control program and investigates and controls nosocomial infections;

(b) Participates in the development of a response plan for fire and other disasters;[113]

(c) Engages in other functions reasonably requested by the Medical Executive Committee or the Governing Body; and

(d) Implements a process to manage any conflicts that arise between the Medical Staff and the Medical Executive Committee.[114]

## 7.3 MEDICAL STAFF OFFICERS

**7.3.1** **Medical Staff Officers.[115]**

The officers of the Medical Staff shall be:

Chief of Staff

Chief of Staff Elect

**7.3.2** **Duties and Responsibilities**.

(a) <u>Chief of Staff</u>. The Chief of Staff shall serve as the organized Medical Staff's chief administrative officer and will fulfill those duties specified in the Policies Governing Medical Practices, and shall:

i. act in coordination and cooperation with the Administrator in all matters of mutual concern within the Medical Center;

ii. call, preside at, and be responsible for the agenda of all general meetings of the Medical Staff and Medical Executive Committee meetings;

iii. serve as a voting member on the Medical Executive Committee;

iv. serve as ex officio member of all other Medical Staff committees without vote;

v. be responsible for the enforcement of these Bylaws, the Policies Governing Medical Practices, and associated policies; for implementation of sanctions where these Bylaws are indicated; and for the Medical Staff's compliance with procedural safeguards in all instances where corrective action has been requested against an appointee to the Medical Staff;

---

[112] 42 C.F.R. § 482.11(a).

[113] JCS EM.02.01.01, EP 1 (Jan. 2009).

[114] JCS MS.01.01.01, EP 10 (March 2011).

[115] Wis. Admin. Code DHS § 124.12(6)(a) (2009).

Current as of July 19, 2011
V.5 Oshkosh Medical Staff Bylaws
ADOPTED 7-19-2011.DOC


Aurora Health Care

Page 68 of 90

Case 1:13-cv-00152-WCG   Filed 03/29/13   Page 71 of 93   Document 10-2

vi. appoint clinical service committee chairpersons and committee members to all standing, special, and multi-disciplinary Medical Staff committees except the Medical Executive Committee;

vii. present the views, policies, needs and grievances of the Medical Staff to the Governing Body and to the Administrator;

viii. receive, and interpret the policies of the Governing Body to the Medical Staff and report to the Governing Body on quality improvement review with respect to the Medical Staff's delegated responsibility to provide medical care;

ix. be responsible for the educational activities of the Medical Staff;

x. be the spokesperson for the Medical Staff in its external professional and public relations;

xi. ensure that attendance is taken at and accurate and complete minutes are kept of all Medical Executive Committee meetings; and

xii. attend to all correspondence and perform such other duties as ordinarily pertain to such office.

(b) <u>Chief of Staff Elect</u>. The Chief of Staff Elect shall:

i. be a voting member of the Medical Executive Committee;

ii. in the absence of the Chief of Staff, assume all the duties and have the authority of the Chief of Staff;

iii. automatically succeed the Chief of Staff upon the expiration of the Chief of Staff's term or when the Chief of Staff fails to serve for any reason; and

iv. attend to and perform such other duties as ordinarily pertain to such office.

**7.3.3 Qualifications; Nomination; Election, Term**.

(a) <u>Qualifications</u>.

i. At the time of nomination and election, and throughout his or her term of office, a Medical Staff Officer must:

- Be an Active Medical Staff Member,[116] or, if the Medical Executive Committee determines that such appointee has expertise that is not otherwise available, an Associate Medical Staff Member;

- Demonstrate an interest in maintaining quality patient care at the Medical Center; and

- Constructively participate in Medical Staff affairs, including active participation in peer review activities and on Medical Staff committees.

---

[116] Wis. Admin. Code DHS § 124.12(6)(b) (2009).

Current as of July 19, 2011
V.5 Oshkosh Medical Staff Bylaws
ADOPTED 7-19-2011.DOC

Aurora Health Care

Page 69 of 90

Case 1:13-cv-00152-WCG    Filed 03/29/13    Page 72 of 93    Document 10-2

ii.   Medical Staff Officers may <u>not</u>:

- Serve as a medical staff officer, department chairperson (except as an endowed department chairperson as part of a graduate medical education program), medical executive committee member, or member of a governing body or board, of any non-Aurora hospital or ambulatory surgery center that provides health care services in competition with the Medical Center; and/or

- Have an ownership interest in any non-Aurora hospital or ambulatory surgery center that provides health care services in competition with the Medical Center.

(b)   <u>Nomination</u>.  Medical Staff Officer nominees shall be set forth by a Nominating Committee.  The Nominating Committee shall consist of the Chief of Staff, the Chief of Staff Elect and the Administrator.  The Nominating Committee shall offer the Governing Body a slate of nominees with at least one candidate for each vacancy.   The Governing Body shall then approve or reject each nominee; <u>provided</u>, <u>however</u>, that in the event none of the nominees for a particular vacancy are acceptable to the Governing Body, the Nominating Committee shall submit new nominee(s) for that vacancy to the Governing Body for approval, and such process shall be repeated until the Governing Body has approved at least one candidate for each vacancy.  The nominees approved by the Governing Body shall go before the Medical Staff for election.

(c)   <u>Election</u>.  Medical Staff Officers shall be elected every other year at the annual meeting of the Medical Staff and shall be confirmed by the Governing Body.  Only appointees of the Active Medical Staff shall be eligible to vote.  Election by the Medical Staff for each office shall be by a ballot vote requiring a simple majority for election.  If, in voting, a candidate does not receive a simple majority to elect such candidate to office, successive balloting shall ensue with the name of the candidate receiving the fewest votes being omitted from each successive slate until a majority is obtained by one candidate.

(d)   <u>Term</u>.  All Medical Staff Officers shall serve a two (2) year term or until a successor is elected.  A Medical Staff Officer may not serve a third consecutive term in the same office unless two-thirds (2/3) of the Active Medical Staff present at a regular or special meeting of the Medical Staff at which the question is considered vote by ballot to approve such a third consecutive term, and such third consecutive term is approved by the Governing Body.  Such third consecutive term shall become effective when approved by the Governing Body.  Medical Staff Officers shall take office on the first day of the Medical Staff year.

**7.3.4   Vacancies in Office**.

Vacancies in office during a Medical Staff Officer's two (2) year term, except for the Chief of Staff, shall be filled by the Medical Executive Committee.  If there is a vacancy

Current as of July 19, 2011
V.5 Oshkosh Medical Staff Bylaws
ADOPTED 7-19-2011.DOC

Aurora Health Care

Page 70 of 90

Case 1:13-cv-00152-WCG   Filed 03/29/13   Page 73 of 93   Document 10-2

in the office of the Chief of Staff, the Chief of Staff Elect shall serve out the remaining term.

**7.3.5** **Removal from Office**.

(a) <u>Automatic Removal</u>**.** The Medical Executive Committee shall automatically remove from office any Medical Staff Officer upon verification of such Medical Staff Officer's: (i) revocation or suspension of license to practice medicine, podiatry or dentistry in the State of Wisconsin; or (ii) revocation or denial of Active or Associate Medical Staff Membership . There shall be no right of appellate review or hearing in connection with removal from a Medical Staff Officer position.

(b) <u>Discretionary Removal</u>.

i. *Suspension of Appointment*. Upon the suspension of any Medical Staff Officer's Medical Staff appointment, the Medical Executive Committee shall consider the removal of such Medical Staff Officer pending the results of the hearing and appellate review procedures provided in these Bylaws.

ii. *Request for Removal*. The Medical Executive Committee shall consider the removal of a Medical Staff Officer from office in the event:

- the Medical Executive Committee receives a written request to consider such removal signed by at least one-quarter (1/4) of the Active Medical Staff or signed by the Administrator (any such request shall include a list of the allegations or concerns precipitating the request of removal);

- the Medical Executive Committee receives written certification by two (2) physicians with special qualification in the appropriate medical field(s) that the Medical Staff Officer, to a reasonable medical certainty, cannot be expected to perform the duties of the office because of illness for a minimum of three (3) months;

- By a vote by ballot of two-thirds (2/3) of the Active Medical Staff present at a regular or special meeting of the Medical Staff at which the question is considered.

(c) <u>Removal Procedure</u>.

i. *Medical Executive Committee Meeting*. A meeting of the Medical Executive Committee shall be called within seven (7) days to consider the removal of the Medical Staff Officer. A quorum of the Medical Executive Committee must be present to act on the removal. The Medical Staff Officer in question shall have no vote on his or her removal, and may be excluded from the meeting except as provided in (ii) below.

ii. *Appearance of Officer*. The Medical Staff Officer in question shall be permitted to make an appearance before the Medical Executive Committee prior to the Medical Executive Committee taking a final vote on the Medical Staff Officer's removal.

Current as of July 19, 2011
V.5 Oshkosh Medical Staff Bylaws
ADOPTED 7-19-2011.DOC

Aurora Health Care

Page 71 of 90

Case 1:13-cv-00152-WCG    Filed 03/29/13    Page 74 of 93    Document 10-2

    iii.    *Vote*. A Medical Staff Officer may be removed by an affirmative vote by ballot of two-thirds (2/3) of the Medical Executive Committee members present at a meeting of the Medical Executive Committee at which there is a quorum present. The Medical Staff Officer who is subject to the removal process may not participate or be present during the vote.

    iv.    *Notification*. The Administrator shall provide the Medical Staff Officer with written notification of the Medical Executive Committee's final decision.

    v.    *Hearing and Appeal Rights.* There shall be no right of appellate review or hearing in connection with removal from a Medical Staff Officer position.

## 7.4    MEDICAL STAFF MEETINGS

### 7.4.1    Purpose.

The primary objective of Medical Staff meetings shall be to report on the activities of the Medical Staff and to conduct other business as may be on the agenda.[117]

### 7.4.2    Scheduling and Notice.

(a)    <u>Regular Meetings</u>. The Medical Staff shall meet as determined by the Medical Executive Committee, but no less than once every year.[118] Written Notice stating the time, place and purposes of each regular Medical Staff meeting shall be conspicuously posted and shall be sent to each member of the Medical Staff at least five (5) days before the date of such meeting. The attendance of a Medical Staff Member at a meeting shall constitute a waiver of notice of such meeting.

(b)    <u>Special Meetings</u>. The Chief of Staff may call a special meeting of the Medical Staff at any time. Written Notice stating the time, place and purposes of each special Medical Staff meeting shall be conspicuously posted and shall be sent to each member of the Medical Staff at least forty-eight (48) hours before the date of such meeting. No business shall be transacted at any special meeting, except that stated in the Written Notice of such special meeting. The attendance of a Medical Staff Member at a meeting shall constitute a waiver of notice of such meeting.

The Chief of Staff shall be required to call a special meeting within twenty (20) days after receipt of:

    i.    a written request signed by not less than one-fourth of the members of the Active Medical Staff which states the purpose of such special meeting; or

    ii.    a written Medical Executive Committee resolution which states the purpose of such special meeting.

The Chief of Staff shall designate the time and place of any special meeting.

---

[117] Wis. Admin. Code DHS § 124.12(7)(c) (2009).
[118] Wis. Admin. Code DHS §§ 124.12(5)(b)6. & 124.12(7)(a) (2009).

Current as of July 19, 2011
V.5 Oshkosh Medical Staff Bylaws
ADOPTED 7-19-2011.DOC
 Aurora Health Care
Page 72 of 90

Case 1:13-cv-00152-WCG    Filed 03/29/13    Page 75 of 93    Document 10-2

### 7.4.3 **Minutes**.

Written minutes of each Medical Staff meeting shall be prepared, recorded and maintained in a permanent file.[119]

### 7.4.4 **Attendance Requirements.**

Medical Staff Members are encouraged to attend Medical Staff meetings. Meeting attendance will not be used in evaluating members at the time of reappointment, however, it is expected that members of the Medical Staff will make every effort to attend Medical Staff meetings.[120]

### 7.4.5 **Quorum and Voting Requirements**.

For Medical Staff meetings, a quorum shall consist of those present and voting. If a quorum exists, action on a matter shall be approved if the votes cast within the voting group favoring the action exceed the votes cast opposing the action.

### 7.4.6 **Robert's Rules of Order**.

The latest edition of ROBERT'S RULES OF ORDER shall prevail at all Medical Staff, meetings, except that the Chief of Staff may vote.

---

[119] Wis. Admin. Code DHS § 124.12(7)(d) (2009).
[120] Wis. Admin. Code DHS § 124.12(7)(b) (2009).

Current as of July 19, 2011
V.5 Oshkosh Medical Staff Bylaws
ADOPTED 7-19-2011.DOC

 Aurora Health Care

Page 73 of 90

Case 1:13-cv-00152-WCG   Filed 03/29/13   Page 76 of 93   Document 10-2

# ARTICLE 8.  CLINICAL DEPARTMENTS

## 8.1  ORGANIZATION OF DEPARTMENTS AND SECTIONS

### 8.1.1  Organization.

Each Department shall be organized as a separate part of the Medical Staff and shall have a Clinical Chairperson who is: (a) elected by the Active Medical Staff Members of the applicable Department; and (b) has the authority, duties and responsibilities as specified in Section 8.3 of these Bylaws.  A Clinical Chairperson may establish Sections within his/her Department, and appoint Section Chairpersons, subject to approval by the Medical Executive Committee and the Governing Body.

### 8.1.2  Designation.

The current Departments are:

(a)  Medicine

(b)  Anesthesia

(c)  Emergency Medicine

(d)  Radiology

(e)  Obstetrics and Gynecology

(f)  Surgical Services

(g)  Pediatrics

(h)  Family Medicine

## 8.2  ASSIGNMENT TO DEPARTMENTS

### 8.2.1  Assignment.

The Medical Executive Committee will, after consideration of the recommendations of the Clinical Chairperson of the appropriate Department(s), recommend Department assignments for each Staff Member in accordance with the Staff Member's qualifications. Each Staff Member shall be assigned to at least one Department, but may also be assigned to and/or granted Clinical Privileges or specified services in one or more other Departments.  The exercise of Clinical Privileges or the performance of specified services within any Department shall be subject to the policies of that Department and the authority of that Department's Clinical Chairperson.

### 8.2.2  Multiple Departments.

A Staff Member who wishes to be assigned to more than one Department must declare which Department shall be designated as his/her major affiliation.  A Medical Staff Member who meets the qualifications in Section 8.3.1 of these Bylaws shall be eligible for nomination as Clinical Chairperson only in that Department which he/she has

Current as of July 19, 2011
V.5 Oshkosh Medical Staff Bylaws
ADOPTED 7-19-2011.DOC

Aurora Health Care

Page 74 of 90

Case 1:13-cv-00152-WCG    Filed 03/29/13    Page 77 of 93    Document 10-2

declared as his/her major Department affiliation.  Membership in Departments other than the declared major Department does not confer the privilege to be nominated for the position of Clinical Chairperson, but does confer all other privileges of discussion, voting and appointment to committees which may be established by the Department.

## 8.3   CLINICAL CHAIRPERSONS

**8.3.1   Qualifications, Nomination; Election; Term.**

(a)   <u>Qualifications</u>.

i.   At the time of nomination and election, and throughout his or her term of office, a Clinical Chairperson must:

- Be an Active Medical Staff Member in good standing, or, if the Medical Executive Committee determines that such appointee has expertise that is not otherwise available, an Associate Medical Staff Member in good standing;

- Be and remain board certified in his/her specialty;[121]

- Demonstrate an interest in maintaining quality patient care at the Medical Center; and

- Constructively participate in Medical Staff affairs, including active participation in peer review activities and on Medical Staff committees.

ii.   A Clinical Chairperson may <u>not</u>:

- Serve as a medical staff officer, department chairperson (except as an endowed department chairperson as part of a graduate medical education program), medical executive committee member, or member of a governing body or board, of any non-Aurora hospital or ambulatory surgery center that provides health care services in competition with the Medical Center; and/or

- Have an ownership interest in any non-Aurora hospital or ambulatory surgery center that provides health care services in competition with the Medical Center.

(b)   <u>Nomination</u>.   The Active Medical Staff Members of each Department shall nominate candidates for the position of Clinical Chairperson of such Department at the Departmental meeting held in October of each election year.  The Manager of Medical Staff Services shall contact each nominee and advise the nominee of the Clinical Chairperson's responsibilities and eliminate from consideration any nominee who does not indicate a willingness to fulfill such responsibilities.  Each Department shall offer the Governing Body a slate of nominees.  The Governing Body shall then approve or reject each nominee; provided, however, that in the event none of the Department's Clinical Chairperson nominees are acceptable to the Governing Body, the Department shall submit a new slate of nominee(s) to the

---

[121] JCS MS.01.01.01, EP 8 (Jan. 2009).

Current as of July 19, 2011
V.5 Oshkosh Medical Staff Bylaws
ADOPTED 7-19-2011.DOC

Aurora Health Care

Page 75 of 90

Case 1:13-cv-00152-WCG   Filed 03/29/13   Page 78 of 93   Document 10-2

Governing Body for approval, and such process shall be repeated until the Governing Body has approved at least one candidate for Clinical Chairperson.

(c) <u>Election</u>. The Clinical Chairperson of each Department shall be elected by a majority vote of all Active Medical Staff Members of the respective Department. Prior to October 31st of each election year, ballots containing the names of the nominees approved by the Governing Body for the position of Clinical Chairperson of the Department shall be mailed to the Active Medical Staff Members of the Department together with a return envelope and a request that the ballot be returned prior to November 15th. In the event no nominee receives a majority vote, the nominee receiving the fewest votes shall be eliminated on the next ballot and successive run-off elections shall be held until one (1) nominee receives a majority of the votes cast. The results of the election shall be announced at the next Medical Staff meeting.

(d) <u>Term</u>. Each Clinical Chairperson shall serve a two (2) year term, or until a successor is appointed by the applicable Department. Unless otherwise approved by the Governing Body, a Clinical Chairperson may not serve more than two (2) consecutive terms.

### 8.3.2 Duties and Responsibilities.[122]

The primary responsibility delegated to each Clinical Chairperson is to implement and conduct specific review and evaluation activities that contribute to the preservation and improvement of the quality and efficiency of patient care provided in the Department. To carry out this responsibility, each Clinical Chairperson shall:

(a) Serve as Chairperson of the Department meetings while providing leadership and guidance to the Medical Staff.

(b) Be a voting member of the Medical Executive Committee.

(c) Establish, when appropriate, sections within the Department, and appoint chairpersons thereof, subject to approval by the Medical Executive Committee and the Governing Body.

(d) Be responsible for the enforcement within the Department of actions taken by the Medical Executive Committee and the Governing Body.

(e) Be responsible for the enforcement within the Department of Medical Center policies, these Medical Staff Bylaws, and the Policies Governing Medical Practices.

(f) Establish guidelines for the granting of Clinical Privileges and the performance of specified services within the Department.

(g) Conduct or participate in, and make recommendations regarding the need for, continuing education programs based upon current best practices and the findings of review, evaluation and monitoring activities.

---

[122] Wis. Admin. Code DHS § 124.12(9)(b) (2009); JCS MS.01.01.01, EP 8 (Jan. 2009).

Current as of July 19, 2011
V.5 Oshkosh Medical Staff Bylaws
ADOPTED 7-19-2011.DOC

Aurora Health Care

Page 76 of 90

Case 1:13-cv-00152-WCG    Filed 03/29/13    Page 79 of 93    Document 10-2

(h)     Be responsible for all clinical and administrative activities of the Department (including maintaining the quality of the medical records), unless otherwise provided for by the Medical Center.

(i)     Maintain continuing surveillance of the professional performance of all individuals in the Department who have delineated Clinical Privileges, and report thereon to the Medical Executive Committee as part of the reappointment process and at other such times as may be indicated.

(j)     Recommend to the Medical Executive Committee the criteria for Clinical Privileges that are relevant to the care provided by the Department.

(k)     Make recommendations to the Medical Executive Committee regarding Staff Membership (e.g. appointment and reappointment) and Clinical Privileges for Department members.

(l)     Assess and recommend to the relevant Medical Center authority off-site sources for necessary patient care services not provided by the Department or the Medical Center.

(m)     Be responsible for the integration of the Department into the primary functions of the Medical Center and for the coordination and integration of interdepartmental and intradepartmental services.

(n)     Develop and implement policies and procedures to guide and support the provision of care, treatment and services within the Department.

(o)     Make recommendations for a sufficient number of qualified and competent Practitioners to provide care, treatment and services within the Department.

(p)     Make recommendation regarding the qualifications and competence of Department or service personnel who are not Practitioners and who provide care, treatment, and services.

(q)     Be responsible for the continuous assessment and improvement of the quality of care, treatment, and services provided within the Department.

(r)     Be responsible for the maintenance of quality control programs, as appropriate.

(s)     Be responsible for the orientation and continuing education of Department members, including but not limited to education on fire and other regulations designed to promote safety.

(t)     Make recommendations for space and other resources needed by the Department.

(u)     Report and recommend to management of the Medical Center when necessary with respect to matters affecting patient care in the Department such as personnel, budget planning, supplies, special regulations, standing orders and techniques.

(v)     Be responsible for arranging and securing appropriate Departmental emergency service on-call coverage in accordance with the needs of the Medical Center.

Current as of July 19, 2011
V.5 Oshkosh Medical Staff Bylaws
ADOPTED 7-19-2011.DOC

Aurora Health Care

Page 77 of 90

Case 1:13-cv-00152-WCG    Filed 03/29/13    Page 80 of 93    Document 10-2

(w) Monitor, on a continuing and concurrent basis, adherence to:

    i. Medical Center, Medical Staff and Department policies and procedures;

    ii. requirements for alternative coverage and for consultations;

    iii. sound principles of clinical practice; and

    iv. fire and other regulations designed to promote patient safety.

(x) Coordinate the patient care provided by the Department's appointees with nursing and ancillary patient care services and with administrative support services.

(y) Submit written reports to the Medical Executive Committee on a regularly scheduled basis concerning:

    i. findings of the Department's evaluation and monitoring of tissue review, medical records review, blood utilization review and utilization review, actions taken thereon, and the results of such action;

    ii. recommendations for maintaining and improving the quality of care provided in the Department and the Medical Center; and

    iii. such other matters as may be requested from time to time by the Medical Executive Committee.

(z) Promulgate Department policies addressing administrative and clinical procedures specific to the Department to be effective upon approval by the Medical Executive Committee. The Chief of Staff of the Medical Staff delegates authority to Clinical Chairpersons to sign appropriate policies as required.

(aa) Conduct quarterly meetings of the Department for the purpose of performing the functions described herein.

(bb) Establish Departmental committees or other mechanisms as are necessary and desirable to properly perform Department functions.

### 8.3.3 Removal of Clinical Chairperson.

Removal of a Clinical Chairperson may be initiated at any time upon a two-thirds (2/3) majority vote of all Active Medical Staff Members of the applicable Department, but such removal shall not be effective unless and until it has been ratified by the Medical Executive Committee and approved by the Governing Body. A Clinical Chairperson may also be removed at any time during his/her term of office by the Governing Body. The Chief of Staff shall appoint, subject to the approval of the Governing Body, an Active Medical Staff Member of the applicable Department to fill any vacancy in the position of Clinical Chairperson occurring during a Clinical Chairperson's term. Appointments by the Chief of Staff to fill a vacancy shall be for the unexpired term. There shall be no right of appellate review or hearing in connection with removal from a Clinical Chairperson position.

Current of as July 19, 2011
V.5 Oshkosh Medical Staff Bylaws
ADOPTED 7-19-2011.DOC

Aurora Health Care

Page 78 of 90

Case 1:13-cv-00152-WCG   Filed 03/29/13   Page 81 of 93   Document 10-2

## 8.4   DEPARTMENTAL MEETINGS

**8.4.1   Scheduling and Notice.**

(a)   <u>Regular Meetings</u>.  Each Department may set the time for holding the Department's regular meetings by resolution.  Departmental meetings shall be held at least quarterly.  Written Notice stating the time, place and purposes of each regular Department meeting shall be conspicuously posted and shall be sent to each member of the Department at least five (5) days before the date of such meeting.  The attendance of a Department member at a meeting shall constitute a waiver of notice of such meeting.

(b)   <u>Special Meetings</u>**.** A special meeting of a Department may be called at any time by or at the request of the Clinical Chairperson thereof, or by the Chief of Staff.  Written Notice stating the time, place and purposes of each special Department meeting shall be conspicuously posted and shall be sent to each member of the Department at least forty-eight (48) hours before the date of such meeting.  No business shall be transacted at any special meeting, except that stated in the Written Notice of such special meeting.  The attendance of a Department member at a meeting shall constitute a waiver of notice of such meeting.

(c)   <u>Telecommunication</u>.  Department members may participate in regular or special Departmental meetings by, or through the use of, any means of communication by which all participants may simultaneously hear each other, such as by teleconference.  Any participant in a meeting by such means shall be deemed present in-person at such meeting.

**8.4.2   Attendance Requirements**.
All Department members are encouraged to attend Departmental meetings.

**8.4.3   Participation by Administrator**.
The Administrator (or his/her designee) may attend any Medical Staff Department or section meeting.

**8.4.4   Minutes**.
Minutes of each regular and special Departmental meeting shall be prepared and shall include a record of the Department members in attendance and the vote taken on each matter.  The minutes shall be signed by the Clinical Chairperson (or his/her designee) and copies thereof shall be submitted to the Medical Executive Committee.  Minutes of Departmental meetings shall be maintained in a permanent file.

**8.4.5   Quorum and Voting Requirements**.
For Departmental meetings, a quorum shall consist of those present and voting.  If a quorum exists, action on a matter shall be approved if the votes cast within the voting group favoring the action exceed the votes cast opposing the action.

Current as of July 19, 2011
V.5 Oshkosh Medical Staff Bylaws
ADOPTED 7-19-2011.DOC

Aurora Health Care

Page 79 of 90

Case 1:13-cv-00152-WCG   Filed 03/29/13   Page 82 of 93   Document 10-2

**8.4.6** **Robert's Rules of Order**.

The latest edition of ROBERT'S RULES OF ORDER shall prevail at all Departmental meetings, except that the Clinical Chairperson may vote.

Current as of July 19, 2011
V.5 Oshkosh Medical Staff Bylaws
ADOPTED 7-19-2011.DOC

Aurora Health Care

Page 80 of 90

Case 1:13-cv-00152-WCG   Filed 03/29/13   Page 83 of 93   Document 10-2

# ARTICLE 9.  MEDICAL STAFF COMMITTEES

## 9.1  FORMATION, COMPOSITION, AND DISSOLUTION

The Medical Executive Committee may, without amendment of these Bylaws: (a) establish Medical Staff committees to perform one or more Medical Staff functions[123], (b) appoint Medical Staff committee members and chairpersons; and (c) dissolve or rearrange Medical Staff committee structure or composition, provided no such action taken with respect to items (a)-(c) is inconsistent with these Bylaws.  The actions taken by the Medical Executive Committee with respect to items (a)-(c) are subject to Governing Body approval.

## 9.2  DUTIES AND RESPONSIBILITIES

The Medical Executive Committee shall, without amendment of these Bylaws, describe the duties and responsibilities of each Medical Staff committee (except the Medical Executive Committee).   Such duties and responsibilities shall be set forth in the Policies Governing Medical Practices.  Medical Staff committees (other than the Medical Executive Committee) shall confine their activities to the purposes for which they are appointed, and shall report to the Medical Executive Committee.

## 9.3  MEDICAL STAFF COMMITTEE MEETINGS

### 9.3.1  Scheduling and Notice.

(a)  Regular Meetings.  Each Medical Staff committee may set the time for holding the committee's regular meetings by resolution.

(b)  Special Meetings.  A special meeting of a Medical Staff committee may be called at any time by or at the request of the chairperson thereof, or by the Chief of Staff.

(c)  Notice.  Written Notice stating the place, day, and hour of any special meeting or of any regular meeting of a Medical Staff committee not held pursuant to resolution shall be delivered or sent to each committee member not less than two (2) business days before the time of such meeting.  The attendance of a member at a meeting shall constitute a waiver of notice of such meeting.

### 9.3.2  Participation by Administrator.
The Administrator (or his/her designee) may attend any Medical Staff committee meetings.

---

[123] Wis. Admin. Code DHS § 124.12(8)(a) (2009).

Current as of July 19, 2011
V.5 Oshkosh Medical Staff Bylaws
ADOPTED 7-19-2011.DOC

Aurora Health Care

Page 81 of 90

Case 1:13-cv-00152-WCG   Filed 03/29/13   Page 84 of 93   Document 10-2

### 9.3.3 Minutes.

Minutes of each regular and special Medical Staff committee meeting shall be prepared and shall include a record of the committee members in attendance and the vote taken on each matter. The minutes shall be signed by the Medical Staff committee chairperson (or his/her designee) and copies thereof shall be submitted to the Medical Executive Committee. Minutes of Medical Staff committee meetings shall be maintained in a permanent file.

### 9.3.4 Quorum and Voting Requirements.

The quorum and voting requirements for each Medical Staff committee shall be set forth in the Policies Governing Medical Practices.

### 9.3.5 Robert's Rules of Order.

The latest edition of ROBERT'S RULES OF ORDER shall prevail at all Medical Staff, committee meetings, except that the Medical Staff committee chairperson may vote.

Current as of July 19, 2011
V.5 Oshkosh Medical Staff Bylaws
ADOPTED 7-19-2011.DOC

Aurora Health Care

Page 82 of 90

Case 1:13-cv-00152-WCG   Filed 03/29/13   Page 85 of 93   Document 10-2

# ARTICLE 10.  MEDICAL STAFF BYLAWS AND POLICIES

## 10.1  MEDICAL STAFF BYLAWS

### 10.1.1  Adoption of Medical Staff Bylaws. [124]

These Medical Staff Bylaws have been developed by the organized Medical Staff, shall be adopted at any regular or special meeting of the Active Medical Staff, and shall become effective when approved by the Governing Body.

### 10.1.2  Required Processes:  Basic Steps and Associated Details

These Medical Staff Bylaws contain the basic steps of the processes listed below.[125] Associated Details may be placed in these Medical Staff Bylaws, a Policy Governing Medical Practice, or a Medical Center Policy approved by the Medical Executive Committee.[126]

(a)  Privileging/Credentialing/Appointment
    i.   Medical Staff appointment and reappointment.
    ii.  Credentialing and re-credentialing of Staff Members.
    iii. Privileging and re-privileging of Staff Members.

(b)  Adverse Actions
    i.   Automatic suspension of Staff Membership and/or Clinical Privileges.
    ii.  Summary suspension of Staff Membership or Clinical Privileges.
    iii. Recommending termination or suspension of Staff Membership and/or termination, suspension, or reduction of Clinical Privileges.
    iv.  Fair hearing and appeal process, including the process for scheduling and conducting hearings and appeals.

(c)  Medical Staff / Medical Executive Committee
    i.   Selection and removal of Medical Staff officers.
    ii.  How the Medical Executive Committee's authority is delegated or removed.
    iii. Selection and removal of Medical Executive Committee members.

(d)  Adoption and Amendment of Certain Documents
    i.   Adopting and amending these Medical Staff Bylaws.
    ii.  Adopting and amending Medical Staff Policies.

### 10.1.3  Periodic Review of Medical Staff Bylaws.[127]

These Bylaws shall be reviewed no less frequently than biennially by the Medical Executive Committee or other committee appointed by the Chief of Staff for such purpose ("Bylaws Committee").

---

[124] JCS MS.01.01.01, EPs 1, 2, 3 & 24 (March 2011).

[125] JCS MS.01.01.01, EP 3 (March 2011).

[126] JCS MS.01.01.01, EP 3 (March 2011).

[127] JCS MS.01.01.01, EP 24 (March 2011)

Current as of July 19, 2011
V.5 Oshkosh Medical Staff Bylaws
ADOPTED 7-19-2011.DOC

 Aurora Health Care

Page 83 of 90

Case 1:13-cv-00152-WCG    Filed 03/29/13    Page 86 of 93    Document 10-2

**10.1.4  Amendment of Medical Staff Bylaws.**

Neither the Medical Staff nor the Governing Body may unilaterally amend these Medical Staff Bylaws.  All amendments to these Bylaws must be approved by both the Medical Staff and the Governing Body.[128]   The Medical Executive Committee will ensure that approved amendments are communicated to the Medical Staff.

(a)  <u>Amendments Proposed by a Medical Staff Member, Committee or Department</u>. Any Medical Staff Member, Medical Staff committee (including the Medical Executive Committee), or Department, may submit a proposed amendment to these Medical Staff Bylaws to the Chief of Staff.  The Chief of Staff shall determine whether to forward the proposed amendment to the Medical Executive Committee and/or the Bylaws Committee (if one has been appointed) for its review and comment; and (ii) shall submit the proposed amendment to the Medical Staff at the next regular Medical Staff meeting, or at a special Medical Staff meeting called for such purpose.  An amendment so presented shall require a two-thirds (2/3) vote of the Active Medical Staff Members present for Medical Staff approval.   An amendment approved by the Medical Staff shall be forwarded to the Governing Body for its approval and shall become effective if and when it is approved by the Governing Body.[129]

(b)  <u>Amendments Proposed by the Governing Body</u>.  Amendments proposed by the Governing Body shall be submitted to the Chief of Staff. The Chief of Staff shall submit the proposed amendment to the Medical Staff at the next regular Medical Staff meeting, or at a special Medical Staff meeting called for such purpose.  To be approved by the Medical Staff, an amendment proposed by the Governing Body shall require a majority (51%) vote of the Active Medical Staff Members present. An amendment approved by the Medical Staff shall be returned to the Governing Body for its final approval and shall become effective if and when it is approved by the Governing Body

(c)  <u>Amendment to Comply with Law or Regulations</u>.  The professional conduct of Staff Members shall at all times be governed by applicable state and federal statutes and regulations.  In the event the provisions of these Medical Staff Bylaws are not consistent with any applicable state or federal statute or regulation, the Medical Executive Committee may provisionally adopt an amendment to such documents without prior notification to the Medical Staff or the Governing Body.  In such a circumstance, the Medical Executive Committee will immediately notify the Medical Staff and the Governing Body, and the provisional amendment shall be submitted to the Medical Staff at the next regular Medical Staff meeting, or at a special Medical Staff meeting called for such purpose.  An amendment so presented shall require a majority (51%) vote of the Active Medical Staff Members present for Medical Staff approval.  An amendment approved by the Medical Staff

---

[128] JCS MS.01.01.03, EP 1 (July 2010).

[129] JCS MS.01.01.01, EP 8 (March 2011).



shall be forwarded to the Governing Body for its approval and shall become effective if and when it is approved by the Governing Body.

**10.1.5 Technical Modifications of Medical Staff Bylaws**.
Modifications that do not materially change any Bylaw provision, such as reorganization, reformatting, renumbering, correction of grammatical, spelling, or punctuation errors, or correction of statutory, regulatory, or accreditation standard citations contained in a footnote reference, shall not be considered an amendment of the Medical Staff Bylaws and shall not require approval as described above.

## 10.2 POLICIES GOVERNING MEDICAL PRACTICES

**10.2.1 Adoption of Policies Governing Medical Practices**.

(a) <u>Generally</u>. The Medical Executive Committee may adopt Policies Governing Medical Practices as may be necessary to implement more specifically the general principles found within these Medical Staff Bylaws and guide and support the provision of care, treatment and services at the Medical Center, subject to the approval of the Governing Body.[130] The Policies Governing Medical Practices must be consistent with these Medical Staff Bylaws, Medical Center policies, and applicable statutes and regulations.[131] The Medical Executive Committee will ensure that all approved Policies are communicated to the Medical Staff.[132]

(b) <u>Adoption Process</u>. Any Medical Staff Member, Medical Staff committee (including the Medical Executive Committee), or Department, may submit a proposal to adopt a Policy Governing Medical Practices to the Chief of Staff. The Chief of Staff shall submit the proposed Policy to the Medical Executive Committee for approval at the next regular Medical Executive Committee meeting, or at a special Medical Executive Committee meeting called for such purpose. To be approved by the Medical Executive Committee, a proposed Policy must be approved by a majority (51%) vote of the Medical Executive Committee. A Policy approved by the Medical Executive Committee shall be forwarded to the Governing Body for its approval and shall become effective if and when it is approved by the Governing Body. If a proposed Policy is not approved by the Medical Executive Committee, the Medical Staff may submit the proposed Policy directly to the Governing Body if (2/3) of the Active Medical Staff Members vote to submit such proposed Policy directly to the Governing Body. Such a proposed Policy shall become effective if and when it is approved by the Governing Body.[133]

**10.2.2 Amendment of Policies Governing Medical Practices**.
The Policies Governing Medical Practices may be amended or repealed upon recommendation of the Medical Executive Committee, subject to the approval of the Governing Body. The Medical

---

[130] JCS LD.04.01.07, EP 1 (July 2010); JCS MS.01.01.01, EP 25 (July 2010).

[131] JCS MS.01.01.01, EP 4 (July 2010).

[132] JCS MS.01.01.01, EP 9 (March 2011).

[133] JCS MS.01.01.01, EPs 7-9 (March 2011).

Current as of July 19, 2011
V.5 Oshkosh Medical Staff Bylaws
ADOPTED 7-19-2011.DOC


Aurora Health Care

Page 85 of 90

Case 1:13-cv-00152-WCG    Filed 03/29/13    Page 88 of 93    Document 10-2

Executive Committee will ensure that all approved amendments are communicated to the Medical Staff.

(a) <u>Amendments Proposed by the Medical Executive Committee</u>.  An amendment to the Policies Governing Medical Practices proposed and approved by the Medical Executive Committee shall be forwarded to the Governing Body for its approval and shall become effective if and when it is approved by the Governing Body.

(b) <u>Amendments Proposed by a Medical Staff Member, Committee, or Department</u>.  Any Medical Staff Member, Medical Staff committee, or Department, may submit a proposed amendment to the Policies Governing Medical Practices to the Chief of Staff.  The Chief of Staff shall submit the proposed amendment to the Medical Executive Committee for approval at the next regular Medical Executive Committee meeting, or at a special Medical Executive Committee meeting called for such purpose.  To be approved by the Medical Executive Committee, an amendment shall require a majority (51%) vote of the Medical Executive Committee.  An amendment approved by the Medical Executive Committee shall be forwarded to the Governing Body for its approval and shall become effective if and when it is approved by the Governing Body.  If a proposed amendment to the Policies Governing Medical Practices is not approved by the Medical Executive Committee, the Medical Staff may submit the proposed amendment directly to the Governing Body if (2/3) of the Active Medical Staff Members vote to submit such proposed amendment directly to the Governing Body.[134]  Such a proposed amendment shall become effective if and when it is approved by the Governing Body.[135]

(c) <u>Amendments Proposed by the Governing Body</u>.  An amendment to the Policies Governing Medical Practices proposed by the Governing Body shall be submitted to the Chief of Staff for consideration by the Medical Executive Committee at the next regular Medical Executive Committee meeting, or at a special Medical Executive Committee meeting called for such purpose.  To be approved by the Medical Executive Committee, an amendment proposed by the Governing Body shall require a majority (51%) vote of the Medical Executive Committee.  An amendment approved by the Medical Executive Committee shall be returned to the Governing Body for its final approval and shall become effective if and when it is approved by the Governing Body.

(d) <u>Amendment to Comply with Law or Regulations</u>.  The professional conduct of Staff Members shall at all times be governed by applicable state and federal statutes and regulations.  In the event the provisions of the Policies Governing Medical Practices are not consistent with any applicable state or federal statute or regulation, the Chief of Staff may provisionally adopt an amendment to such documents without prior notification to the Medical Executive Committee or the Governing Body.  In such a circumstance, the Chief of Staff will immediately notify the Medical Executive Committee and the Governing Body and the

---

[134] JCS MS.01.01.01, EP 9 (March 2011).

[135] JCS MS.01.01.01, EP 8 (March 2011).


Case 1:13-cv-00152-WCG    Filed 03/29/13    Page 89 of 93    Document 10-2

provisional amendment shall be submitted to the Medical Executive Committee at the next regular Medical Executive Committee meeting, or at a special Medical Executive Committee meeting called for such purpose. An amendment so presented shall require a majority (51%) vote of the Medical Executive Committee members for approval. An amendment approved by the Medical Executive Committee shall be forwarded to the Governing Body for its approval and shall become effective if and when it is approved by the Governing Body.

### 10.2.3 Technical Modifications of Policies Governing Medical Practices.

Modifications that do not materially change any provision contained in the Policies Governing Medical Practices, such as reorganization, reformatting, renumbering, correction of grammatical, spelling, or punctuation errors, or correction of statutory, regulatory, or accreditation standard citations contained in a footnote reference, shall not be considered an amendment of the Policies Governing Medical Practices and shall not require approval as described above.

## 10.3 DEPARTMENTAL POLICIES

Each Department may develop and propose amendments to policies intended to guide and support the provision of care, treatment and services in such Department, or govern the administration of such Department. Such policies or proposed amendments must: (1) be consistent with these Medical Staff Bylaws, the Policies Governing Medical Practices, and applicable Medical Center policies; and (2) be approved by the Medical Executive Committee. If the Medical Executive Committee declines to approve a Department policy or proposed amendment recommended by the relevant Clinical Chairperson, the Medical Executive Committee shall provide a written explanation of its action to the Clinical Chairperson.

## 10.4 HISTORY AND PHYSICAL EXAMINATIONS

A medical history and physical examination (H&P) must be performed and documented by a Physician, Oral Surgeon, or other qualified licensed individual (as identified in the Policies Governing Medical Practices), no more than thirty (30) days before or twenty-four (24) hours after admission or registration, but in all cases prior to surgery or a procedure requiring anesthesia services.[136] If the H&P is performed within thirty (30) days prior to the patient's admission or registration, a Physician, Oral Surgeon, or other qualified licensed individual (as identified in the Policies Governing Medical Practices) must complete and document an updated examination of the patient, including any changes in the patient's condition, within 24 hours after the patient's admission or registration, but in all cases prior to surgery or a procedure requiring

---

[136] 42 C.F.R. § 482.22(c)(5)(i) (Interpretive Guidelines, effective October 17, 2008); Wis. Admin. Code DHS § 124.12(5)(b)8. (June 5, 2009). ) (The Conditions of Participation provide that H & P documentation requirements must be included in the Medical Staff Bylaws.); Wis. Admin. Code DHS § 124.12(5)(b)8. (2010); JCS MS.01.01.01, EP 16 (July 2010); JCS PC.01.02.03, EPs 4 & 5 (July 2010); JCS RC.02.01.03, EP 3 (July 2010).

Current as of July 19, 2011
V.5 Oshkosh Medical Staff Bylaws
ADOPTED 7-19-2011.DOC

Aurora Health Care

Page 87 of 90

Case 1:13-cv-00152-WCG   Filed 03/29/13   Page 90 of 93   Document 10-2

anesthesia services.[137]    Please refer to the Policies Governing Medical Practices for more information regarding H&P documentation requirements.

---

[137] 42 C.F.R. § 482.22(c)(5)(ii) (Interpretive Guidelines, effective October 17, 2008June 5, 2009); Wis. Admin. Code DHS § 124.12(5)(b)8. (2009).  The Conditions of Participation provide that H & P documentation requirements must be included in the Medical Staff Bylaws.  (2010).

Current as of July 19, 2011
V.5 Oshkosh Medical Staff Bylaws
ADOPTED 7-19-2011.DOC

Aurora Health Care

Page 88 of 90

Case 1:13-cv-00152-WCG   Filed 03/29/13   Page 91 of 93   Document 10-2

# ARTICLE 11.  MISCELLANEOUS

## 11.1  COMPLIANCE WITH LAWS AND REGULATIONS.

Any act or omission that may be considered inconsistent with the provisions set forth in these Medical Staff Bylaws, but which was undertaken in order to comply with applicable federal or state statutes or regulations, shall not be considered in violation of these Medical Staff Bylaws.  In the event these Medical Staff Bylaws are inconsistent with such statutes or regulations, the Medical Executive Committee shall initiate in a timely manner the amendment process set forth in Section 10.1.2(d) or Section 11.2.2(c), as applicable.

## 11.2  GOVERNING LAW.

The validity, construction, and enforcement of these Bylaws shall be construed and enforced solely in accordance with the laws of the State of Wisconsin.  The parties agree that jurisdiction and venue for any dispute shall be in Milwaukee County, Wisconsin and no party or person may object to personal jurisdiction in, or venue of such courts or assert that such courts are not a convenient forum.  Both parties waive trial by jury in any action hereunder.

## 11.3  ELECTRONIC RECORD KEEPING.

Whenever these Bylaws call for maintenance of written records, such records may be recorded and/or maintained in an electronic format.

## 11.4  HEADINGS.

The captions or heading used in these Medical Staff Bylaws are for convenience only and are not intended to limit or otherwise define the scope of effects of any provisions of these Medical Staff Bylaws.

## 11.5  IDENTIFICATION.

Although the masculine gender and singular are generally used throughout these Bylaws and associated policies for simplicity, words which import one gender may be applied to any gender and words which import the singular or plural may be applied to the plural or the singular, all as a sensible construction of the language so requires.

Current as of July 19, 2011
V.5 Oshkosh Medical Staff Bylaws
ADOPTED 7-19-2011.DOC

Aurora Health Care

Page 89 of 90

Case 1:13-cv-00152-WCG   Filed 03/29/13   Page 92 of 93   Document 10-2

## 11.6  SEVERABILITY.

In the event that any provision of these Bylaws shall be determined to be invalid, illegal, or unenforceable, the validity, enforceability of the remaining provisions shall not in any way be affected or impaired by such a determination.

Current as of July 19, 2011
V.5 Oshkosh Medical Staff Bylaws
ADOPTED 7-19-2011.DOC

Aurora Health Care

Page 90 of 90

Case 1:13-cv-00152-WCG   Filed 03/29/13   Page 93 of 93   Document 10-2