

1 of 1 DOCUMENT

**JEANNE M. SEDLACEK, PLAINTIFF-APPELLANT, v. D. MARK GROUP, INC., D/B/A MANPOWER, DEFENDANT-RESPONDENT.**

Appeal No. 2010AP195

COURT OF APPEALS OF WISCONSIN, DISTRICT THREE

*2011 WI App 75*; *334 Wis. 2d 146*; *799 N.W.2d 928*; *2011 Wisc. App. LEXIS 285*

**April 12, 2011, Decided**
**April 12, 2011, Filed**

**NOTICE:** SEE RULES OF APPELLATE PROCEDURE, RULE 809.23(3), REGARDING CITATION OF UNPUBLISHED OPINIONS. NOTE: THIS OPINION WILL NOT APPEAR IN A PRINTED VOLUME. THE DISPOSITION WILL APPEAR IN A REPORTER TABLE.

**PRIOR HISTORY:** [*1]
   APPEAL from a judgment of the circuit court for Chippewa County: STEVEN R. CRAY, Judge. Cir. Ct. No. 2009CV233.

**DISPOSITION:**   Affirmed.

**JUDGES:** Before Hoover, P.J., Peterson and Brunner, JJ.

**OPINION**

   P1 PER CURIAM. Jeanne Sedlacek appeals a summary judgment dismissing her wrongful termination and tortious interference with prospective employment claims against D. Mark Group, Inc., d/b/a Manpower. We conclude Sedlacek's wrongful termination claim is barred by the employment-at-will [S1] doctrine. We also conclude Sedlacek has failed to create a genuine issue of material fact on her tortious interference claim. Accordingly, we affirm.

**BACKGROUND**

   P2 Manpower, a staffing firm, hired Sedlacek in 2002 and placed her at Kell Container, where she worked as a production associate. In 2008, Kell advised Manpower that bill rates were too high, and Manpower began an investigation. Manpower discovered that, instead of a $.50 raise, Sedlacek had mistakenly received a $2.00 raise in 2007 and had been overpaid $934.73.

   P3 Manpower unsuccessfully attempted to recover the amount of the overpayment. Sedlacek declined to sign a payroll deduction authorization form seeking to recoup $701.05 of the overpaid amount. Later, Sedlacek's attorney [*2] made clear in a letter that Sedlacek would not consent to reimburse Manpower for the overpayment:

> Please be advised that I have been contacted by Jeanne Sedlacek regarding your demand that allegedly overpaid wage payments be reimbursed. She will NOT be doing so nor will she be signing any documents relative to this matter.

Counsel also asserted the voluntary payment doctrine barred any claim for reimbursement. [1] Manpower again presented a payroll deduction form, this time for $467.36. Sedlacek again refused and was terminated.

Page 2

2011 WI App 75; 334 Wis. 2d 146;
799 N.W.2d 928; 2011 Wisc. App. LEXIS 285, *2

> 1 "The voluntary payment doctrine places upon a party who wishes to challenge the validity or legality of a bill for payment the obligation to make the challenge either before voluntarily making payment, or at the time of voluntarily making payment." ***Putnam v. Time Warner Cable of SE Wis., Ltd.***, *2002 WI 108, ¶13, 255 Wis. 2d 447, 649 N.W.2d 626*.

P4 Sedlacek applied for several other positions but was not able to locate work other than at McDonalds. Sedlacek asked a social friend, Dr. Kristina Nyhus, whether any work was available in Nyhus' chiropractic business. Nyhus thought there might be three or four hours of extra filing, but was not actively looking for a new [*3] employee. Nyhus decided not to hire Sedlacek because the office manager wanted the overtime hours.

P5 During this time, Sedlacek became curious about what Manpower was telling prospective employers and asked Nyhus to contact Manpower. Manpower initially refused to discuss Sedlacek's work history or performance with Nyhus. When Nyhus persisted, the Manpower representative stated that Sedlacek was not welcome back at Manpower. 2

> 2 At her deposition, Nyhus could not recall the exact words Manpower's representative used.

P6 Sedlacek brought suit, alleging wrongful termination and tortious interference with prospective employment. The circuit court dismissed both claims on summary judgment. Sedlacek appeals.

**DISCUSSION**

P7 We review a grant of summary judgment de novo, using the same methodology as the circuit court. ***Hocking v. City of Dodgeville***, *2009 WI 70, ¶7, 318 Wis. 2d 681, 768 N.W.2d 552*. A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." WIS. STAT. § 802.08(2). [*4] 3 We construe all facts and reasonable inferences in the nonmoving party's favor. ***Strozinsky v. School Dist. of Brown Deer***, *2000 WI 97, ¶32, 237 Wis. 2d 19, 614 N.W.2d 443*.

> 3 All references to the Wisconsin Statutes are to the 2009-10 version unless otherwise noted.

**I. Wrongful Discharge**

P8 Employment relations in Wisconsin are governed by the employment-at-will doctrine. *Id*., ¶33. This common-law doctrine provides that when the terms of employment are indefinite, the employer may discharge an employee "for good cause, for no cause, or even for cause morally wrong, without being thereby guilty of legal wrong." ***Tatge v. Chambers & Owen, Inc***., *219 Wis. 2d 99, 112-13, 579 N.W.2d 217 (1998)* (citation omitted). Thus, at-will employees generally cannot pursue legal claims stemming from an employer's unjustified decision to terminate the employment relationship. ***Strozinsky***, *2000 WI 97, 237 Wis. 2d 19, ¶33, 614 N.W.2d 443*.

P9 Our supreme court has recognized that, if taken to its logical limits, the employment-at-will doctrine potentially produces excessively harsh or unjust results. Consequently, it has carved out a narrow exception for terminations against public policy. ***Bammert v. Don's Super Valu, Inc***., *2002 WI 85, ¶3, 254 Wis. 2d 347, 646 N.W.2d 365*. [*5] The public policy exception permits at-will employees to sue for wrongful discharge "if they are fired for fulfilling, or refusing to violate, a fundamental, well-defined public policy or an affirmative legal obligation established by existing law." *Id*.; see also ***Brockmeyer v. Dun & Bradstreet***, *113 Wis. 2d 561, 573, 335 N.W.2d 834 (1983)* (employee may recover if termination "clearly contravenes the public welfare and gravely violates paramount requirements of public interest"). In essence, "[e]mployers will be held liable for those terminations that effectuate an unlawful end." ***Brockmeyer***, *113 Wis. 2d at 573*.

P10 The plaintiff bears the burden of proving that the dismissal violates a clear mandate of public policy. *Id. at 574*. The public policy must be embodied within the spirit, if not the letter, of a constitutional, statutory, or administrative provision. *See* ***Strozinsky***, *2000 WI 97, 237 Wis. 2d 19, ¶33, 614 N.W.2d 443*; ***Brockmeyer***, *113 Wis. 2d at 573*. The question of whether the plaintiff has asserted a well-defined and fundamental public policy is one of law. ***Brockmeyer***, *113 Wis. 2d at 574*. "Courts should proceed cautiously when making public policy determinations." *Id. at 573*.

P11 Sedlacek invokes the fundamental [*6] and well-defined policy underlying WIS. STAT. *§ 103.455*. As relevant here, the statute generally prohibits an employer

Page 3

2011 WI App 75; 334 Wis. 2d 146;
799 N.W.2d 928; 2011 Wisc. App. LEXIS 285, *6

from deducting from an employee's wages for certain types of work-related loss:

> No employer may make any deduction from the wages due or earned by any employee, who is not an independent contractor, for defective or faulty workmanship, lost or stolen property or damage to property, unless the employee authorizes the employer in writing to make that deduction or unless the employer and a representative designated by the employee determine that the defective or faulty workmanship, loss, theft or damage is due to the employee's negligence, carelessness, or willful and intentional conduct, or unless the employee is found guilty or held liable in a court of competent jurisdiction by reason of that negligence, carelessness, or willful and intentional conduct.

WIS. STAT. 103.455. The statute is based on the principle that an employee who does not perform required services, or causes the employer to suffer a loss, is not entitled to full compensation. *Wandry v. Bull's Eye Credit Union*, 129 Wis. 2d 37, 45, 384 N.W.2d 325 (1986). At the same time, the statute prevents the employer [*7] from arbitrarily deducting hard-earned wages at its prerogative. *Farady-Sultze v. Aurora Med. Ctr. of Oshkosh, Inc*., 2010 WI App 99, ¶9, 327 Wis. 2d 110, 787 N.W.2d 433.

P12 Our supreme court has twice considered whether WIS. STAT. § 103.455 evinces a sufficiently well-defined and fundamental public policy to create a basis for a wrongful termination claim. In *Wandry*, the court determined that § 103.455 "articulates a fundamental and well-defined public policy proscribing economic coercion by an employer upon an employee to bear the burden of a work-related loss when the employee has no opportunity to show that the loss was not caused by the employee's carelessness, negligence, or wilful misconduct." *Wandry*, 129 Wis. 2d at 47. Although the court confirmed that public policy in *Batteries Plus, LLC v. Mohr*, 2001 WI 80, ¶¶3, 39, 244 Wis. 2d 559, 628 N.W.2d 364, it also concluded that the policy does not apply to a "situation in which an employer claims that it overpaid its employee by mistake and the employee gives the employer no choice but to go to court to recover the money." We conclude the *Batteries Plus* decision controls our analysis in this case.

P13 The facts in *Batteries Plus* were [*8] remarkably similar to the facts of the present case. Batteries Plus accidentally overpaid Mohr approximately $11,500 for mileage expenses. *Batteries Plus*, 2001 WI 80, 244 Wis. 2d 559, PP1, 5, 628 N.W.2d 364. Mohr refused to allow Batteries Plus to deduct the overpayment from future wages, and Mohr was terminated. . Batteries Plus was forced to institute a collection action against Mohr to recover the alleged overpayment. *Id*., ¶6. Mohr counter-claimed, alleging, among other things, wrongful discharge. *Id*. Following a jury trial, both the circuit court and this court concluded that in citing WIS. STAT. § 103.455, Mohr identified a fundamental and "well-defined public policy prohibit[ing] an employer from extracting repayment of expenses from employees by means of economic duress." *Id.*, ¶¶11, 32 (citation omitted).

P14 The supreme court reversed. It concluded that WIS. STAT. § 103.455 "does not reach every potential deduction by an employer from an employee's wages." *Id.*, ¶33. The public policy against economic coercion embodied by § 103.455 is limited to work-related losses involving "defective or faulty workmanship, lost or stolen property or damage to property." *Id.*, ¶35 (citing § 103.455). Disagreement [*9] about an alleged overpayment of expenses is "in essence a dispute about compensation," not business losses. *Id*. Further, a discharge under "highly strained circumstances, in which the employer is given no option except to sue the employee for what the employer believes is an overpayment of expenses, is not a wrongful discharge that violates the spirit of WIS. STAT. § 103.455." *Id.*, ¶36. In short, the court concluded the public policy embodied by § 103.455 is quite limited:

> We can foresee situations in which an employer is entitled legitimately to use its leverage to recoup money from an employee because of the overpayment of wages or expenses, or because of an employee's overextension of a monthly draw. Requiring an employer to go to court in every situation in which an employee disputes the alleged overpayment would undercut the employer's position and foster instability in the workplace. The employer cannot

Page 4

2011 WI App 75; 334 Wis. 2d 146;
799 N.W.2d 928; 2011 Wisc. App. LEXIS 285, *9

always be faulted for self-help when it attempts to settle a dispute with the employee and, failing that, takes action.

*Id., ¶33*.

P15 Sedlacek's claim implicates both of our supreme court's rationales in ***Batteries Plus*** for rejecting application of WIS. STAT. § 103.455's public policy [*10] against economic coercion. Sedlacek was informed she was overpaid approximately $934 in wages. She refused to voluntarily repay any of those wages, and made clear her position that Manpower was not legally entitled to reimbursement for the overpayment. At its core, Sedlacek's termination is the result of a dispute over compensation. Her communications left no doubt that Manpower would have to initiate legal proceedings to recover the overpayment. Consequently, we conclude Sedlacek's termination does not violate any fundamental and well-defined public policy embodied within *§ 103.455*. [4]

> 4   Manpower also asserts a recent case from this court bars Sedlacek's wrongful termination claim, but we do not rely on that decision. In ***Farady-Sultze v. Aurora Medical Center of Oshkosh, Inc***., *2010 WI App 99, ¶10, 327 Wis. 2d 110, 787 N.W.2d 433*, the terminated employee was fired for keeping wages she never earned; a situation not contemplated by WIS. STAT. § *103.455*, which protects unauthorized deductions from *earned* wages. Sedlacek appears to concede she did not earn the overpaid amount, but that is potentially a fact issue that would make summary judgment inappropriate. Because we have concluded that [*11] Sedlacek's claim is barred as a matter of law by ***Batteries Plus, LLC v. Mohr***, *2001 WI 80, 244 Wis. 2d 559, 628 N.W.2d 364*, there is no need to consider whether *Farady-Sultze* also bars her claim.

P16 Sedlacek alternatively argues that Manpower's demand for repayment violated the fundamental public policy requiring accurate reporting of tax information. She relies on ***Strozinsky***, *2000 WI 97, 237 Wis. 2d 19, ¶2, 14 N.W.2d 443*, in which a payroll clerk resigned after she and her supervisors disagreed about tax withholdings from a bonus check. Based on advice from the IRS and information from the American Payroll Association, Strozinsky believed her supervisors requested illegal withholdings for which she might be held personally liable. *Id., ¶61*. In this context, our supreme court concluded, "The spirit and the letter of the tax laws are designed to ensure that parties file accurate tax information." *Id., ¶63*.

P17 Sedlacek's tax argument misses the mark. Manpower never demanded that Sedlacek evade federal or state tax requirements. Sedlacek was not terminated for refusing to violate tax laws. We also reject Sedlacek's public policy argument to the extent that she suggests Manpower should have affirmatively addressed [*12] the tax implications of its repayment demand. That argument is wholly speculative. Manpower's failure to discuss the tax consequences in its demand for repayment does not mean it would have skirted federal law had Sedlacek repaid the disputed amount. [5] Accordingly, we conclude Sedlacek's termination did not violate any fundamental and well-defined public policy regarding the tax laws.

> 5   In any event, the duty to amend tax filings appears to be a matter of some controversy. *See **Badaracco, Sr. v. Commissioner of Internal Revenue**, 464 U.S. 386, 393, 104 S. Ct. 756, 78 L. Ed. 2d 549 (1984)* ("[T]he Internal Revenue Code does not explicitly provide either for a taxpayer's filing, or for the Commissioner's acceptance, of an amended return; instead, an amended return is a creature of administrative origin and grace."); Judson L. Temple, *Rethinking Imposition of a Legal Duty to Correct Material Tax Return Errors*, *76 NEB. L. REV. 223, 225 (1997)* (procedural rules governing federal taxation do not unambiguously require an amended return for erroneous filings); Kenneth L. Harris, *On Requiring the Correction of Errors Under the Federal Tax Law*, 42 TAX LAW 515, 516-17 (1989) ("[T]here is no general statutory provision that explicitly [*13] mandates or permits the filing of amended returns. Moreover, the Treasury, to date, has not issued regulations ... requiring the filing of amended returns on the discovery of prior errors.").

## II. Intentional Interference with Prospective Employment

P18 Sedlacek also contends the circuit court improperly dismissed her claim for tortious interference with prospective employment. To succeed on a claim for tortious interference, the plaintiff must prove the

Page 5

2011 WI App 75; 334 Wis. 2d 146;
799 N.W.2d 928; 2011 Wisc. App. LEXIS 285, *13

following elements: (1) a prospective contractual relationship on behalf of the plaintiff; (2) knowledge by the defendant of the existence of the relationship; (3) intentional acts on the part of the defendant to disrupt the relationship; (4) actual disruption of the relationship causing damages; and (5) lack of privilege or justification for the defendant's interference. *See* **Burbank Grease Servs., LLC v. Sokolowski**, *2006 WI 103, ¶44, 294 Wis. 2d 274, 717 N.W.2d 781*; **Anderson v. Regents of the Univ. of Cal**., *203 Wis. 2d 469, 490, 554 N.W.2d 509 (Ct. App. 1996)*.

P19 Sedlacek states that since being terminated, she "has applied for many, many jobs for which she was more than qualified," but only McDonalds has offered her a position. She [*14] speculates the lack of job offers must be because Manpower has informed prospective employers that she is not welcome back at Manpower. Sedlacek supports this argument with Nyhus' testimony that a Manpower representative stated Sedlacek was not welcome back.

P20 The circuit court properly dismissed Sedlacek's tortious interference claim. Sedlacek has offered no proof that any prospective employer other than Nyhus contacted Manpower, nor that Manpower told any other prospective employer that she was ineligible for rehire. Even if Nyhus' testimony could be considered circumstantial proof that Manpower similarly advised other prospective employers, Sedlacek has not shown those statements were the reason she was not offered a position. In addition, Nyhus testified that Manpower was reluctant to discuss the details of Sedlacek's employment, and only did so at Nyhus' insistence. There is no evidence suggesting other prospective employers would have been so persistent.

P21 As to Nyhus, Sedlacek has failed to show that Manpower's statement interfered with her prospective employment. Nyhus refused to hire Sedlacek not because of Manpower's statement, but because another employee sought the additional [*15] hours.

*By the Court*.--Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE *809.23(1)(b)5*.